1   Michael F. Ram, SBN #104805
    mram@rocklawcal.com
2   Matt Malone, SBN #221545
    mjm@rocklawcal.com
3   Susan Brown, SBN #287986
    RAM, OLSON, CEREGHINO
4    & KOPCZYNSKI LLP
5   101 Montgomery Street, Suite 1800
    San Francisco, California 94104
6   Telephone:  (415) 433-4949
    Facsimile:  (415) 433-7311
7
8   [Additional Counsel Listed On Signature Page]

9   *Attorneys for Plaintiff and Proposed Classes*

10                UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| IN RE: YAHOO! INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 16-MD-02752-LHK |
| ————————————————/ | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| EDWARD MCMAHON, MICHELLE GRECO, AND JONATHAN LEVY, individually and on behalf of all others similarly situated, | **1) Breach of Implied Contract** |
| Plaintiff, | **2) Violation of the California Unfair Competition Law, Business & Professions Code § 17200,** *et seq.* |
| v. | |
| YAHOO! INC. | **3) Negligence** |
| Defendant. | |
| N.D. CA Case No.: 5:16-cv-05466-LHK | **JURY TRIAL DEMAND** |

23          Plaintiffs Edward McMahon, Michelle Greco and Jonathan Levy bring this Class

24   Action Complaint against Yahoo! Inc., ("Yahoo" or "Defendant") on behalf of themselves and

25   all others similarly situated, and allege, upon personal knowledge as to their own actions and

26

27

1

their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Yahoo for its failure to secure and safeguard its users' personally identifiable information ("PII") such as users' names, email addresses, telephone numbers, dates of birth, passwords and, in some cases, security questions and answers, which Yahoo collected from its users (collectively, "Private Information"), and for failing to provide timely, accurate, and adequate notice to Plaintiffs and other Class members that their Private Information had been stolen and failing to provide timely, accurate and adequate  notice of precisely what types of information were stolen. When users establish accounts at Yahoo, Yahoo electronically collects and stores this information, making it a treasure trove of useful information attractive to hackers who can use the information to profit and cause damage, as was done here, to consumers.

2.      This class action involves two separate data breaches, each believed to be the largest in history.

3.      Beginning in late 2014, hackers stole copies of 500 million Yahoo users' Private Information (the "2014 Data Breach"). While copied, Plaintiff's and other users' information remains in the possession of Yahoo.

4.      On September 22, 2016, Yahoo announced it sustained the 2014 Data Breach.

5.      On September 22, 2016, Yahoo confirmed that a copy of certain user account information was stolen from its systems in late 2014 by what it believes was a state-sponsored actor.  Yahoo conceded that pilfered Private Information included users' names, email addresses, telephone numbers, dates of birth, passwords and, in some cases, security questions and answers. Yahoo likewise stated that the stolen information did not include payment card data, or bank account information; as payment card data and bank account information were

1    not stored in the system that its investigation had found to be affected.  Yahoo further believes

2    that the hacker is not currently in Yahoo's network.

3         6.    On September 22, 2016, Yahoo gave notice to users whose Private Information

4    was compromised.

5         7.    On December 14, 2016, nearly three months after this litigation commenced,

6    Yahoo disclosed that a second, unrelated, and larger data breach had been discovered (the 2013

7    Data Breach). Yahoo reported that this second data breach occurred in August of 2013, but was

8    not discovered until November of 2016, when law enforcement brought it to Yahoo's attention.

9         8.    Yahoo further reported that the 2013 Data Breach may have included names,

10   email addresses, telephone numbers, dates of birth, "hashed" passwords, and encrypted or

11   unencrypted security questions.

12        9.    On December 4, 2016, Yahoo gave notice of the 2013 Data Breach to users

13   whose Private Information was compromised.  At that time, Yahoo had not identified the

14   source of the intrusion into users' accounts.

15        10.   At this early stage, it is unknown to Plaintiffs whether Yahoo's description of

16   the breadth of either of the Data Breaches is accurate.  However, given that two years passed

17   before Yahoo discovered the 2014 Data Breach and more than three years passed before law

18   enforcement alerted Yahoo to the 2013 Data Breach, Plaintiffs are rightfully skeptical of

19   Yahoo's self-serving statements.

20        11.   Yahoo disregarded Plaintiffs' and Class members' rights by intentionally,

21   willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure

22   that its data systems were protected, failing to take available steps to prevent and stop the

23   breach from ever happening, and failing to disclose to its users the material facts that it did not

24   have adequate computer systems and security practices to safeguard users' Private Information.

25   Plaintiffs are informed and believe that Plaintiffs' and Class members' Private Information was

26

27

3

improperly handled and stored, was unencrypted or inadequately encrypted, and was not kept in accordance with applicable, required, and appropriate cyber-security protocols, policies, and procedures. As a result, Plaintiffs' and Class members' Private Information was compromised and stolen. However, as this same information remains stored in Yahoo's computer systems, Plaintiffs and class members have an interest in ensuring that their information is safe, and they should be entitled to seek injunctive and other equitable relief, including independent oversight of Yahoo's security systems.

## PARTIES

12.     Plaintiff Edward McMahon is an individual and resident of New York. Plaintiff has maintained a Yahoo email account since about 2012.  Since 2014, Plaintiff has detected unusual activity on his Yahoo email accounts, such as losing access to some of his accounts.  He is informed and believes that his account was breached as he has been locked out and is unable to access his account.   He has very important and sensitive information in his emails that he is informed and believes have been accessed.   He is informed and believes that the hackers have changed his password, which is why he cannot access his account.

13.     Plaintiff Jonathan Levy does business as Brimstone & Company, Attorneys and Solicitors in Washington DC. He and his associated colleagues work on a variety of legal matters with an international focus, including company law, securities, international law and human rights. These include highly confidential matters involving human rights claims, criminal defense, and asset protection as well as trade secrets and confidential information regarding public companies. Plaintiff Levy has paid fees to Yahoo for, and used, Yahoo! Small Business (recently renamed Yahoo! Aabaco Small Business) for web hosting and email since 2009.

14.     Plaintiff Levy's accounts, and all Yahoo! Aabaco Small Business accounts, are in reality Yahoo accounts and are function no differently from other Yahoo accounts except

4

that they bear the legend "Yahoo! Small Business" on the email interface.

15.     Mr. Levy received notice from Yahoo of the two Data Breaches in September and December of 2016.  As a result, he must now conduct a forensic analysis involving hundreds of labor hours to determine the extent of the breaches' effects.  To date, he has uncovered missing data and will need to take remedial client measures up to and including personally advising clients of the Data Breaches' potential consequences, particularly considering the Yahoo's statement that a state actor was behind at least one, and possibly both, of the Data Breaches.

16.     Plaintiff Michelle Greco, is an individual and resident of the State of new Jersey. Plaintiff Greco has maintained a Yahoo email account since about 2001.  On or about December 14, 2016, Yahoo notified Plaintiff Greco that her information had been stolen from Yahoo in or about August 2013.  As a result of the breach, and the increased risk of identity theft caused by the breach, Plaintiff Greco enrolled in identity theft protection services at a cost of approximately 109.89 annually.

17.     Yahoo! Inc. is a Delaware corporation with its principle place of business in Sunnyvale, California.  Yahoo is a technology company, primarily deriving its revenues by connecting advertisers with target audiences through streamlined advertising technology. It is a guide to digital information discovery, focused on informing, connecting, and entertaining its users through its search, communications, and digital content products.  It creates value for advertisers with a streamlined, simple advertising technology stack that leverages Yahoo's data, content, and technology to connect advertisers with their target audiences. Advertisers can build their businesses through advertisements targeted to audiences on Yahoo's online properties and services ("Yahoo Properties") and a distribution network of third-party entities ("Affiliates") who integrate Yahoo's advertising offerings into their websites or other offerings ("Affiliate sites"). Yahoo's revenue is generated principally from display and search

advertising.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000.00, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Yahoo, on the other, are citizens of different states.

19.     This Court has jurisdiction over Yahoo as it maintains its corporate headquarters in this District and for the following reasons: Yahoo makes decisions regarding overall corporate governance and management, including the security measures to protect its users' Private Information, in this District; it is authorized to conduct business throughout the United States, including California; and it advertises in a variety of media throughout the United States, including California. Via its business operations throughout the United States, Yahoo intentionally avails itself of the markets within this state to render the exercise of jurisdiction by this Court just and proper.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District and because Yahoo is headquartered in this District.

## FACTUAL BACKGROUND

**A.  Yahoo and Its Private Information Collection Practices**

21.     Yahoo's primary driver of engagement across its user offerings is its email service, Yahoo Mail.  *See* Yahoo Inc., Form 10-K for 2015 at 6.  Yahoo also offers a messaging service, Yahoo Messenger, as well as news, financial reporting, and sports content, and a microblogging and social networking website, Tumblr.  *Id.* at 6–7.  To utilize these offerings, users must setup user account(s), which requires users to provide Yahoo with Private

Information.

22.     When setting up their accounts, users are required to agree to Additional Terms of Service ("ATOS") that state:

> "the substantive law of the State of California governs the interpretation of this ATOS and applies to all claims related to it, regardless of conflict of laws principles. You and Yahoo! Inc. irrevocably consent to the exclusive jurisdiction and venue of the state courts located in Santa Clara County, California or in the Federal Courts located in the Northern District of California, USA for all disputes arising out of or relating to this ATOS or arising out of or relating to the relationship between you and Yahoo regardless of the type of claim."[1]

**B.  Consumers Rely On Yahoo's Private Information Security Practices**

23.     Yahoo maintains a privacy policy available on its website ("Privacy Policy"). It provides, among other things, that Yahoo is "committed to ensuring your information is protected and [it] applies safeguards in accordance with applicable law."[2] The Privacy Policy further provides:

> **Yahoo collects personal information[3] when you register with Yahoo**, when you use Yahoo products or services, when you visit Yahoo pages or the pages of certain Yahoo partners, and when you enter promotions or sweepstakes. Yahoo may combine information about you that we have with information we obtain from business partners or other companies.
>
> **When you register we ask for information such as your name, email address, birth date, gender, ZIP code, occupation, industry, and personal interests. For some financial products and services we might also ask for your address, Social Security number, and information about your assets**. When you register with Yahoo and sign in to our services, you are not anonymous to us.
>
> Yahoo collects information about your transactions with us and with some of our business partners, including information about your use of financial

---

[1] *See* Yahoo!, *Additional Terms of Service,* https://policies.yahoo.com/xw/en/yahoo/terms/product-atos/comms/index.htm (last visited December 15, 2016).

[2] *See* Yahoo!, *Yahoo Privacy Center*, https://policies.yahoo.com/us/en/yahoo/privacy/index.htm (Aug. 30, 2016) (last visited December 14, 2016).

[3] "Personal information is information about you that is personally identifiable like your name, address, email address, or phone number, and that is not otherwise publicly available." *Id.*

products and services that we offer.

**Yahoo analyzes and stores all communications content, including email content from incoming and outgoing email.**

**Yahoo automatically receives and records information from your computer and browser, including your IP address, Yahoo cookie information, software and hardware attributes, and the page you request**.

Yahoo uses information for the following general purposes: to customize the advertising and content you see, fulfill your requests for products and services, improve our services, contact you, conduct research, and provide anonymous reporting for internal and external clients.

….

**Yahoo does not rent, sell, or share personal information about you with other people or non-affiliated companies except to provide products or services you've requested, when we have your permission, or under the following circumstance**s:

- We provide the information to trusted partners who work on behalf of or with Yahoo under confidentiality agreements. These companies may use your personal information to help Yahoo communicate with you about offers from Yahoo and our marketing partners. However, these companies do not have any independent right to share this information.

- We have a parent's permission to share the information if the user is a child under age 13. See Children's Privacy & Family Accounts for more information about our privacy practices for children under 13.

- We respond to subpoenas, court orders, or legal process (such as law enforcement requests), or to establish or exercise our legal rights or defend against legal claims.

- We believe it is necessary to share information in order to investigate, prevent, or take action regarding illegal activities, suspected fraud, situations involving potential threats to the physical safety of any person, violations of Yahoo's terms of use, or as otherwise required by law.

- We transfer information about you if Yahoo is acquired by or merged with another company. In this event, Yahoo will notify

you before information about you is transferred and becomes subject to a different privacy policy.

**Yahoo displays targeted advertisements based on personal information**. Advertisers (including ad serving companies) may assume that people who interact with, view, or click targeted ads meet the targeting criteria—for example, women ages 18-24 from a particular geographic area.

- **Yahoo does not provide any personal information to the advertiser** when you interact with or view a targeted ad. However, by interacting with or viewing an ad you are consenting to the possibility that the advertiser will make the assumption that you meet the targeting criteria used to display the ad.
- Yahoo advertisers include financial service providers (such as banks, insurance agents, stock brokers and mortgage lenders) and non-financial companies (such as stores, airlines, and software companies).

Yahoo works with vendors, partners, advertisers, and other service providers in different industries and categories of business.

…

**We limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.**

**We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you**.

24.     Thus, Yahoo collects and stores massive amounts of PII on its servers and utilizes this information to maximize its profits.

25.     Consumers place value in data privacy and security, and they consider it when making decisions regarding their online behavior, including their choice of email provider. Plaintiffs would not have become Yahoo user had they known that Yahoo does not take all necessary precautions to secure the personal data given to it by consumers.

26.     Yahoo failed to disclose its negligent and insufficient data security practices and

consumers relied on or were misled by this omission into using Yahoo.

27.     Yahoo is no stranger to threats against its users' Private Information.  In addition to the two Data Breaches at issue in this litigation, in 2012, over 400,000 unencrypted Yahoo usernames and passwords were stolen and posted on a public website.[4]  In 2013 Yahoo Japan was compromised, exposing 22 million Yahoo Japan email addresses.[5]

28.     Likewise the technology industry is rife with similar examples of hackers targeting users' PII, including the hacks at Adobe,[6] LinkedIn, eHarmony,[7] and Snapchat,[8] among many others, all of which pre-date the timeframe Yahoo has identified regarding the 2014 Data Breach (late 2014), and some of which pre-date the 2013 Data Breach.

## C.  Stolen Private Information Is Valuable to Hackers and Thieves

29.     It is well known and the subject of many media reports that PII data is highly coveted and a frequent target of hackers. PII data is often easily taken because it may be less protected and regulated than payment card data. Especially in the technology industry, the issue of data security, and threats thereto, is well known, as noted above.  Several other online companies have experienced data breaches resulting in the disclosure of users' PII, and as identified earlier, a large number of technology companies were the targets of data breaches. Despite well-publicized litigation and frequent public announcements of data breaches by retailers and technology companies, Yahoo opted to maintain an insufficient and inadequate

---

[4] *See, e.g.*, Charles Arthur, *Yahoo Voice Hack Leaks 450,000 Passwords*, THE GUARDIAN (July 12, 2012), *available at* https://www.theguardian.com/technology/2012/jul/12/yahoo-voice-hack-attack-passwords-stolen; Chenda Ngak, *Yahoo Confirms Email Hack In Statement*, CBS NEWS (July 12, 2012), available at http://www.cbsnews.com/news/yahoo-confirms-email-hack-in-statement/.
[5] Graham Cluley, *22 Million User Ids May Be In The Hands Of Hackers, After Yahoo Japan Security Breach*, NAKED SECURITY (May 20, 2013), *available at* https://nakedsecurity.sophos.com/2013/05/20/yahoo-japan-hack/; BBC Technology, *Millions Hit By Yahoo Japan Hack Attac*k, BBC (May 20, 2013), *available at* http://www.bbc.com/news/technology-22594136.
[6] *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014).
[7] CBS News Staff, eHarmony Suffers Password Breach on Heels of LinkedIn, CBS News (June 7, 2012), *available at* http://www.cbsnews.com/news/eharmony-suffers-password-breach-on-heels-of-linkedin/.
[8] Nancy Blair & Brett Molina, *Snapchat, Skype Have Security Breach*, USA Today (Jan. 2, 2014), available at http://www.usatoday.com/story/tech/2014/01/01/snapchat-user-names-leak/4277789/.

system to protect the PII of Plaintiffs and class members.

30.    Legitimate organizations and the criminal underground alike recognize the value of PII. Otherwise, they wouldn't aggressively seek or pay for it. For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million users, they also took registration data from 38 million users."[9] Similarly, in the Target data breach, in addition to PCI data pertaining to 40,000 credit and debit cards, hackers stole PII pertaining to 70,000 users.

31.    Biographical data is also highly sought after by data thieves. "Increasingly, criminals are using biographical data gained from multiple sources to perpetrate more and larger thefts." *Id.* PII data has been stolen and sold by the criminal underground on many occasions in the past, and the accounts of theft and unauthorized access have been the subject of many media reports. One form of identity theft, branded "synthetic identity theft," occurs when thieves create new identities by combining real and fake identifying information and then use those identities to open new accounts. "This is where they'll take your Social Security number, my name and address, someone else's birthday and they will combine them into the equivalent of a bionic person," said Adam Levin, Chairman of IDT911, which helps businesses recover from identity theft. Synthetic identity theft is harder to unravel than traditional identity theft, experts said: "It's tougher than even the toughest identity theft cases to deal with because they can't necessarily peg it to any one person." In fact, the fraud might not be discovered until an account goes to collections and a collection agency researches the Social Security number.

32.    Unfortunately, and as is alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands of third parties, such as technology companies, Yahoo's approach at maintaining the privacy of Plaintiffs' and Class

---

[9] Verizon 2014 PCI Compliance Report, available at <http://www.nocash.info.ro/wp-content/uploads/2014/02/Verizon_pci-report-2014.pdf> (hereafter "2014 Verizon Report"), at 54 (last visited Sept. 24, 2014).

1   members' PII was lackadaisical, cavalier, reckless, or at the very least, negligent.

2

3   **D.  The Data Breaches Will Result In Additional Identity Theft and Identify Fraud**

4       33.     Yahoo failed to implement and maintain reasonable security procedures and

5   practices appropriate to the nature and scope of the Private Information compromised in both

6   Data Breaches.

7       34.     The ramifications of Yahoo's failure to keep Plaintiffs' and Class members' data

8   secure are severe.

9       35.     The information Yahoo compromised, including Plaintiffs' identifying

10  information is "as good as gold" to identity thieves, in the words of the Federal Trade

11  Commission ("FTC").[10] Identity theft occurs when someone uses another's personal identifying

12  information, such as that person's name, address, credit card number, credit card expiration

13  date, and other information, without permission, to commit fraud or other crimes. The FTC

14  estimates that as many as 10 million Americans have their identities stolen each year.

15      36.     As the FTC recognizes, once identity thieves have personal information, "they

16  can drain your bank account [as occurred to Plaintiff here], run up your credit cards, open new

17  utility accounts, or get medical treatment on your health insurance."[11]

18      37.     According to Javelin Strategy and Research, "1 in 4 notification recipients

19  became a victim of identity fraud."[12] Nearly half (46%) of consumers with a breached debit

20  card became fraud victims within the same year.

21      38.     Identity thieves can use personal information such as that of Plaintiffs and Class

22

23  _____

[10] FTC Interactive Toolkit, Fighting Back Against Identity Theft, *available at* http://www.dcsheriff.net/community/documents/id-theft-tool-kit.pdf (last visited Sept. 24, 2014).

24  [11] FTC, Signs of Identity Theft, available at <http://www.consumer.ftc.gov/articles/ 0271-signs-identity-theft> (last visited Sept. 24, 2014).

25  [12] See 2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters, available at <www.javelinstrategy.com/brochure/ 276> (last visited Sept. 24, 2014) (the "2013 Identity Fraud Report").

26

27

members, which Yahoo failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund. Some of this activity may not come to light for years. The IRS paid out $43.6 billion in potentially fraudulent returns in 2012, and the IRS identified more than 2.9 million incidents of identity theft in 2013. The IRS described identity theft as the number one tax scam for 2014.

39.     Among other forms of fraud, identity thieves may get medical services using consumers' compromised personal information or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

40.     It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[13] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

**E.  Annual monetary losses from identity theft are in the billions of dollars.**

41.     Javelin Strategy and Research reports that those losses increased to $21 billion in 2013.[14]

42.     There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

---

[13] Victims of Identity Theft, 2012 (Dec. 2013) at 10, *available at* http://www.bjs.gov/content/pub/pdf/vit12. pdf (last visited Sept. 24, 2014).
[14] *See* 2013 Identity Fraud Report.

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

43.    Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

**F.  Plaintiffs and Class Members Suffered Damages**

44.    The Data Breaches were a direct and proximate result of Yahoo's failure to properly safeguard and protect Plaintiffs' and Class members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Yahoo's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

45.    Plaintiffs' and Class members' PII is private and sensitive in nature and was left inadequately protected by Yahoo. Yahoo did not obtain Plaintiffs' and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

46.    As a direct and proximate result of Yahoo's wrongful action and inaction and the resulting Data Breaches, Plaintiffs (as was addressed above)  and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential

---

[15]    GAO, Report to Congressional Requesters, at p.33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf (emphases added) (last visited Sept. 24, 2014).

impact of the Data Breaches on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

47.     Yahoo's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

      a.  theft of their personal and financial information;

      b.  the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal information being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class members' information on the Internet black market;

      c.  the untimely and inadequate notification of both Data Breaches;

      d.  the improper disclosure of their Private Information;

      e.  loss of privacy;

      f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of both Data Breaches;

      g.  ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

      h.  overpayments to Yahoo for products and services purchased during both Data Breaches in that a portion of the price paid for such products and services by Plaintiffs and Class members to Yahoo was for the costs of reasonable and adequate safeguards and security measures that would

protect users' Private Information, which Yahoo did not implement and, as a result, Plaintiffs and Class members did not receive what they paid for and were overcharged by Yahoo;

    i.   deprivation of rights they possess under the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200);

48.    While the Private Information of Plaintiffs and members of the Class has been stolen, the same or a copy of the Private Information continues to be held by Yahoo. Plaintiffs and members of the Class have an undeniable interest in insuring that this information is secure, remains secure, and is not subject to further theft.

## CLASS ACTION ALLEGATIONS

49.    Plaintiffs seek relief in their individual capacities and as representatives of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of two Nationwide classes:

**The 2013 Data Breach National Class:** all persons residing in the United States whose personal information was disclosed in the Data Breach affecting Yahoo in 2013 and disclosed on December 14, 2016. Excluded from each of the above Classes are Yahoo, including any entity in which Yahoo has a controlling interest, is a parent or subsidiary, or which is controlled by Yahoo, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Yahoo. Also excluded are the judges and court personnel in this case and any members of their immediate families.

**The 2014 Data Breach National Class:** all persons residing in the United States whose personal information was disclosed in the Data Breach affecting Yahoo in 2014 and disclosed on September 22, 2016. Excluded from each of the above Classes are Yahoo, including any entity in which Yahoo has a controlling interest, is a parent or subsidiary, or which is controlled by Yahoo, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Yahoo. Also excluded are the judges and court personnel in this case and any members of their immediate families.

50.    Numerosity. Fed. R. Civ. P. 23(a)(1). The members of the Class are so

16

numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Yahoo has acknowledged that the Personal Information of 500 million users was affected by the 2014 Data Breach and preliminary reports indicate that as many as 1 billion accounts were affected by the 2013 Data Breach.

51.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a.   Whether Yahoo violated the California's  Unfair Competition Law by failing to implement reasonable security procedures and practices;

b.   Whether Yahoo violated common and statutory law by failing to promptly notify class members their personal information had been compromised;

c.   Whether class members may obtain injunctive relief against Yahoo under California's privacy laws to require that it safeguard or destroy, rather than retain, the Private Information of Plaintiffs and Class members;

d.   Which security procedures and which data-breach notification procedure should Yahoo be required to implement as part of any injunctive relief ordered by the Court;

e.   Whether Yahoo has an implied contractual obligation to use reasonable security measures;

f.   Whether Yahoo has complied with any implied contractual obligation to use reasonable security measures;

g.   What security measures, if any, must be implemented by Yahoo to comply with its implied contractual obligations;

h.   Whether Yahoo violated California's privacy laws  in connection with the actions described here; and

i.   What the nature of the relief should be, including equitable relief, to which Plaintiffs and the Class members are entitled.

52.   All members of the proposed Classes are readily ascertainable. Yahoo has access to addresses and other contact information for millions of members of the Classes, which can be used for providing notice to many Class members.

53.   Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Yahoo.

54.   Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation.

55.   Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

56.   Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Yahoo's violations of law inflicting substantial damages in the aggregate would go un-remedied.

57.   Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Yahoo has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

**<u>COUNT I</u>**

18

1

**Breach of Implied Contract**
(On Behalf of Plaintiffs and the Nationwide Class)

2

3

58.     Plaintiffs incorporate the substantive allegations contained in Paragraphs 1 through 48.

4

5

59.     Yahoo solicited and invited Plaintiffs and Class Members to use its services. Plaintiffs and Class members accepted Yahoo's offers and created user accounts requiring the provision of Private Information with Yahoo during the periods of each of the two Data Breaches.

6

7

8

9

60.     When Plaintiffs and Class Members used Yahoo services and products, they provided their Private Information. In so doing, Plaintiffs and Class Members entered into implied contracts with Yahoo pursuant to which Yahoo agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised.

10

11

12

13

61.     Each use of a Yahoo service or product made by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Yahoo under which Yahoo agreed to safeguard and protect Plaintiffs' and Class Members' Private Information and to timely and accurately notify them if such information was compromised or stolen.

14

15

16

17

62.     Plaintiffs and Class Members would not have provided and entrusted their Private Information to Yahoo in the absence of the implied contract between them and Yahoo.

18

19

63.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Yahoo.

20

21

64.     Yahoo breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect the Private Information of Plaintiffs and Class Members and by failing to provide timely and accurate notice to them that their Private Information was compromised in and as a result of the Data Breaches.

22

23

24

25

65.     As a direct and proximate result of Yahoo's breaches of the implied contracts

26

27

between Yahoo and Plaintiffs and Class Members, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## COUNT II
### Negligence
(On Behalf of Plaintiffs and the Nationwide Class)

66.     Plaintiffs repeat and fully incorporate the allegations contained in paragraphs 1 through 48.

67.     Upon accepting and storing Plaintiffs' and Class Members' Private Information in their respective computer database systems, Yahoo undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so. Yahoo knew, acknowledged, and agreed that the Private Information was private and confidential and would be protected as private and confidential.

68.     The law imposed an affirmative duty on Yahoo to timely discover and disclose the unauthorized access and theft of the Private Information to Plaintiffs and the Class so that Plaintiffs and Class Members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

69.     Yahoo breached its duty to discover and to notify Plaintiffs and Class Members of the unauthorized access by failing to discover and notify Plaintiffs and Class Members of the breach until September 2016. To date, Yahoo has not provided sufficient information to Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

70.     Yahoo also breached its duty to Plaintiffs and the Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information. Furthering its dilatory practices, Yahoo failed to provide

adequate supervision and oversight of the Private Information with which it is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to gather Plaintiffs' and Class Members' Private Information, misuse the Private Information, and intentionally disclose it to others without consent.

71.     Through Yahoo's acts and omissions described in this Complaint, including Yahoo's failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' Private Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Yahoo unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs' and Class Members' Private Information during the time it was within Yahoo's possession or control.

72.     Further, through its failure to timely discover and provide clear notification of the Data Breaches to consumers, Yahoo prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their Private Information, including other online accounts.

73.     Upon information and belief, Yahoo improperly and inadequately safeguarded the Private Information of Plaintiffs and Class Members in deviation from standard industry rules, regulations, and practices at the time of the Data Breaches.

74.     Yahoo's failure to take proper security measures to protect Plaintiffs' and Class Members' sensitive Private Information as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class Members' Private Information.

75.     Yahoo's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately protect the Private Information; failing to conduct adequate regular security audits; failing to provide adequate and appropriate supervision of persons having access to Plaintiffs' and Class Members' Private Information; and failing to provide Plaintiffs and Class Members with timely and sufficient

notice that their sensitive Private Information had been compromised.

76.     Neither Plaintiffs nor the other Class Members contributed to the Data Breaches and subsequent misuse of their Private Information as described in this Complaint.

77.     As a direct and proximate cause of Yahoo's conduct, Plaintiffs and the Class suffered damages including, but not limited to: damages from identity theft, which may take months, if not years, to discover and detect, given the far-reaching, adverse, and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

## COUNT III
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §17200 – Unlawful Business Practices
(On Behalf of Plaintiffs and the Nationwide Class)

78.     Plaintiffs repeat and fully incorporates the allegations contained in the preceding paragraphs.

79.     Yahoo has violated Cal. Bus. and Prof. Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200 with respect to the hotel services provided to the Class.

80.     Yahoo engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class Members' Private Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Yahoo to take reasonable methods of safeguarding the Private Information of Plaintiffs and the Class Members.

81.     In addition, Yahoo engaged in unlawful acts and practices with respect to the its services by failing to discover and then disclose the Data Breaches to Class Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82. To date, Yahoo has still not provided such sufficient information to Plaintiffs and the Class Members.

82.     As a direct and proximate result of Yahoo's unlawful practices and acts, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the price received by Yahoo for the hotel services, the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

83.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard Class Members' Private Information and that the risk of a data breach or theft was highly likely. Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

84.     Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Yahoo may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Yahoo because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

**COUNT IV**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §17200 – Unfair Business Practices**
(On Behalf of Plaintiffs and the Nationwide Class)

85.     Plaintiffs repeat and fully incorporate the allegations contained in the preceding paragraphs.

23

86.     Yahoo engaged in unfair acts and practices with respect to the hotel services by establishing the sub-standard security practices and procedures described here; by soliciting and collecting Plaintiffs' and Class Members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and Class Members' Private Information in an unsecure electronic environment. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members.   They were likely to deceive the public into believing their Private Information was securely stored, when it was not.  The harm these practices caused to Plaintiffs and the Class Members outweighed their utility, if any.

87.     Yahoo engaged in unfair acts and practices with respect to the provision of its services by failing to take proper action following either of the Data Breaches to enact adequate privacy and security measures and protect Class Members' Private Information from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members.  They were likely to deceive the public into believing their Private Information was securely stored, when it was not.  The harm these practices caused to Plaintiffs and the Class Members outweighed their utility, if any.

88.     As a direct and proximate result of Yahoo's acts of unfair practices and acts, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

89.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard Class Members' Private Information and that the risk of a data breach or theft was highly likely. Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless

1   with respect to the rights of members of the Class.

2        90.    Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq.,

3   including, but not limited to, restitution to Plaintiffs and Class Members of money or property

4   that the Yahoo may have acquired by means of its unfair business practices, restitutionary

5   disgorgement of all profits accruing to Yahoo because of its unfair business practices,

6   declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and

7   injunctive or other equitable relief.

8                         **COUNT IV**
**Violation of California's Unfair Competition Law**

9   **Cal. Bus. & Prof. Code §17200 – Fraudulent/Deceptive Business Practices**
(On Behalf of Plaintiffs and the Nationwide Class)

10

11        91.    Plaintiffs repeat and fully incorporate the allegations contained in the preceding

12   paragraphs.

13        92.    Yahoo engaged in fraudulent and deceptive acts and practices with regard to the

14   hotel services provided to the Class by representing and advertising that it would maintain

15   adequate data privacy and security practices and procedures to safeguard Class Members'

16   Private Information from unauthorized disclosure, release, data breaches, and theft; and

17   representing and advertising that it did and would comply with the requirements of relevant

18   federal and state laws pertaining to the privacy and security of Class Members' Private

19   Information.  These representations were likely to deceive members of the public, including

20   Plaintiffs and the Class Members, into believing their Private Information was securely stored,

21   when it was not, and that Yahoo was complying with relevant law, when it was not.

22        93.    Yahoo engaged in fraudulent and deceptive acts and practices with regard to the

23   hotel services provided to the Class by omitting, suppressing, and concealing the material fact

24   of the inadequacy of the privacy and security protections for Class Members' Private

25   Information. At the time that Class members were using Yahoo's services, Yahoo failed to

26   disclose to Class Members that its data security systems failed to meet legal and industry

27

standards for the protection of their Private Information. Plaintiffs would not have selected Yahoo to its services if they had known about its substandard data security practices.  These representations were likely to deceive members of the public, including Plaintiffs and the Class Members, into believing their Private Information was securely stored, when it was not, and that Yahoo was complying with relevant law and industry standards, when it was not.

94.     As a direct and proximate result of Yahoo's deceptive practices and acts, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Information, and additional losses described above.

95.     Yahoo knew or should have known that its computer systems and data security practices were inadequate to safeguard Class Members' Private Information and that the risk of a data breach or theft was highly likely. Yahoo's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

96.     Class Members seek relief under Cal. Bus. & Prof. Code § 17200, et. seq., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that the Yahoo may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Yahoo because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Yahoo as follows:

a.   For an Order certifying the Nationwide Classes as defined here, and

1      appointing Plaintiffs and his Counsel to represent the Nationwide Classes;

2      b.   For equitable relief enjoining Yahoo from engaging in the wrongful conduct

3           complained of here pertaining to the misuse and/or disclosure of Plaintiffs

4           and Class members' Private Information, and from refusing to issue prompt,

5           complete, and accurate disclosures to the Plaintiffs and Class members;

6      c.   For equitable relief compelling Yahoo to utilize appropriate methods and

7           policies with respect to consumer data collection, storage, and safety and to

8           disclose with specificity to Class members the type of PII compromised.

9      d.   For equitable relief requiring restitution and disgorgement of the revenues

10          wrongfully retained as a result of Yahoo's wrongful conduct;

11     e.   For an award of actual damages and compensatory damages, in an amount to

12          be determined;

13     f.   For restitution of fees paid to Yahoo for email and/or web hosting services;

14     g.   For an award of costs of suit and attorneys' fees, as allowable by law; and

15     h.   Such other and further relief as this court may deem just and proper.

16                          **<u>JURY TRIAL DEMAND</u>**

17     Plaintiff demands a jury trial on all issues so triable.

18  Dated: December 16, 2016              Respectfully submitted,

19                                        RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

20                                        By:   /s/ Michael F. Ram, SBN #104805

21                                            Michael F. Ram, SBN #104805
                                              mram@rocklawcal.com
22                                            Matt Malone, SBN #221545
                                              mjm@rocklawcal.com
23                                            Susan Brown, SBN #287986
                                              sbrown@rocklawcal.com
24                                            RAM, OLSON, CEREGHINO &
                                              KOPCZYNSKI LLP
25                                            101 Montgomery Street, Suite 1800

26

27

1
2

San Francisco, California 94104
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

3
4
5
6
7
8
9
10
11
12
13

John A. Yanchunis
*[To be admitted Pro Hac Vice]*
Florida Bar No. 324681
jyanchunis@ForThePeople.com
MARCIO W. VALLADARES
*[To be admitted Pro Hac Vice]*
Florida Bar No. 986917
mvalladares@ForThePeople.com
PATRICK A. BARTHLE II
*[To be admitted Pro Hac Vice]*
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

14
15
16
17
18
19

Michael A. Galpern, Esq.
mgalpern@lockslaw.com
Andrew P. Bell, Esq.
abell@lockslaw.com
James A. Barry, Esq.
jbarry@lockslaw.com
LOCKS LAW FIRM, LLC
801 Kings Hwy. N.
Cherry Hill, NJ 08034
Tel.: (856) 663-8200

20

*Attorneys for Plaintiff and Proposed Classes*

21
22
23
24
25
26
27

28