Ann Marie Mortimer (SBN 169077)
amortimer@hunton.com
Jason J. Kim (SBN 221476)
kimj@hunton.com
Kirk A. Hornbeck (SBN 241708)
khornbeck@hunton.com
**HUNTON & WILLIAMS LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

Samuel A. Danon (admitted *pro hac vice*)
sdanon@hunton.com
John J. Delionado (admitted *pro hac vice*)
jdelionado@hunton.com
**HUNTON & WILLIAMS LLP**
1111 Brickell Avenue, Suite 2500
Miami, Florida 33143
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendants
Yahoo! Inc. and
Aabaco Small Business, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: YAHOO CUSTOMER DATA SECURITY BREACH LITIGATION | CASE NO.:  16-MD-02752 LHK<br><br>**REPLY IN SUPPORT OF DEFENDANTS YAHOO! INC. AND AABACO SMALL BUSINESS, LLC'S MOTION TO DISMISS**<br><br>Date:          August 24, 2017<br>Time:          1:30 p.m.<br>Courtroom:   8, 4th Floor<br>Judge:        Hon. Lucy H. Koh |

**Hunton & Williams LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 2

    A.   Plaintiffs Fail To Allege Facts That Support Article III Standing .............................. 2

    B.   Plaintiffs Fail To State UCL Claims ................................................................ 3

        1.   Plaintiffs have not pled harm caused by a UCL violation. ............................. 3

        2.   Unlawful, unfair, or fraudulent conduct cannot be inferred ............................ 4

        3.   Plaintiffs fail to allege actionable fraud on which they relied ......................... 4

        4.   Plaintiffs fail to demonstrate eligibility for injunctive relief. ........................ 5

    C.   Plaintiffs Fail To State A CLRA Claim ............................................................ 6

    D.   Plaintiffs Fail To State A CRA Claim ............................................................. 6

        1.   Non-Californians cannot bring CRA claims. ............................................ 6

        2.   The CRA did not mandate notice for the 2013 or Forged Cookie Breaches. ............................................................................................ 7

        3.   Plaintiffs do not allege appropriate CRA delay damages. .............................. 8

    E.   Plaintiffs Fail To State An SCA Claim ............................................................ 8

    F.   Plaintiffs Fail To State An OPPA Claim ........................................................... 9

    G.   Plaintiffs Fail To State An Express Contract Claim ............................................. 9

    H.   Plaintiffs Fail To State An Implied Contract Claim ............................................ 11

    I.   Plaintiffs Fail To State An Implied Covenant Claim ........................................... 12

    J.   Plaintiff Neff Fails To State A Fraudulent Inducement Claim ................................ 12

    K.   The Foreign Plaintiffs Cannot Bring A Negligence Claim .................................... 13

    L.   Plaintiffs Cannot Pursue Declaratory Relief ..................................................... 14

III. CONCLUSION ................................................................................................ 15

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Sup. Ct.*,
    24 Cal. 4th 627 (2000) ............................................................................... 14

*Attias, et al. v. CareFirst, Inc., et al.*,
    2017 WL 3254941 (D.C. Cir. Aug. 1, 2017) ............................................... 1

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................ 1, 2, 6

*Agape Family Worship Ctr., Inc. v. Gridiron*,
    2016 WL 633864 (C.D. Cal. Feb. 16, 2016) ............................................. 14

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ...................................................................... 7

*In re Anthem, Inc. Data Breach Litig. ("Anthem I")*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................. *passim*

*Anthony v. Kelsey-Hayes Co.*,
    25 Cal. App. 3d 442 (1972) ....................................................................... 14

*Antman v. Uber Techs., Inc.*,
    2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ............................................. 3

*Avidity Partners, LLC v. State*,
    221 Cal. App. 4th 1180 (2013) .................................................................. 12

*In re Barnes & Noble Pin Pad Litig.*,
    2016 WL 5720370 (N.D. Ill. Oct. 3, 2016) ................................................. 8

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ...................................................................... 6

*Berry v. Am. Exp. Publ'g, Inc.*,
    147 Cal. App. 4th 224 (2007) ...................................................................... 6

*Brunette v. Humane Soc'y of Ventura Cty.*,
    40 F. App'x 594 (9th Cir. 2002) ............................................................... 15

*Buena Vista, LLC v. New Res. Bank*,
    2010 WL 3448561 (N.D. Cal. Aug. 31, 2010) ............................................ 4

*Bugna v. Fike*,
    80 Cal. App. 4th 229 (2000) ..................................................................... 13

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal. 4th 342 (1992) ................................................................................ 12

*Castillo v. Seagate Tech., LLC*,
    2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016) ....................... 11

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
   964 F. Supp. 2d 1128 (N.D. Cal. 2013) ................................................................ 4

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
   77 F. Supp. 3d 887 (N.D. Cal. 2014) ................................................................... 14

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ................................................................... 6

*Columbus Univ. v. Tummala*,
   2014 WL 12675010 (C.D. Cal. July 15, 2014) .................................................... 13

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ................................................................................. 4

*Corona v. Sony Pictures Entm't, Inc.*,
   2015 WL 3916744 (C.D. Cal. June 15, 2015) ....................................................... 8

*Cotter v. Lyft, Inc.*,
   60 F. Supp. 3d 1059 (N.D. Cal. 2014) ................................................................... 7

*Davidson v. Apple, Inc.*,
   2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ....................................................... 10

*Doe I v. AOL LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ................................................................. 6

*Doe v. John F Kennedy Univ.*,
   2013 WL 4565061 (N.D. Cal. Aug. 27, 2013) ..................................................... 11

*Doe v. Schwarzenegger*,
   2007 WL 601977 (N.D. Cal. Feb. 22, 2007) ......................................................... 7

*Dubbs v. Glenmark Generics Ltd.*,
   2014 WL 1878906 (C.D. Cal. May 9, 2014) ....................................................... 14

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ..................................................... 5, 6

*Fabozzi v. StubHub, Inc.*,
   2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ......................................................... 9

*Fred Briggs Distrib. Co. v. Cal. Cooler, Inc.*,
   2 F.3d 1156 (9th Cir. 1993) ................................................................................... 6

*Frezza v. Google Inc.*,
   2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ..................................................... 11

*Giroux v. Essex Prop. Trust, Inc.*,
   2017 WL 1549477 (N.D. Cal. May 1, 2017) ......................................................... 2

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
   323 F.3d 1219 (9th Cir. 2003) ............................................................................... 6

*Greystone Homes, Inc. v. Midtec, Inc.*,
   168 Cal. App. 4th 1194 (2008).................................................................................. 14

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013)................................................................... 10

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007)................................................................................... 13

*Interworld Network Int'l, Inc. v. VWR Int'l, Inc.*,
   2012 WL 78738 (N.D. Cal. Jan. 10, 2012)............................................................. 14

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013)......................................................................... 5

*J'Aire Corp. v. Gregory*,
   24 Cal. 3d 799 (1979)............................................................................................. 14

*Long v. Insight Commc'ns of Cent. Ohio, LLC*,
   804 F.3d 791 (6th Cir. 2015)..................................................................................... 8

*Lovell v. P.F. Chang's China Bistro, Inc.*,
   2015 WL 4940371 (W.D. Wash. Mar. 27, 2015).................................................... 11

*Low v. LinkedIn Corp.*,
   2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)........................................................... 3

*Munning v. Gap, Inc.*,
   2017 WL 733104 (N.D. Cal. Feb. 24, 2017).............................................................. 3

*Muskovich v. Crowell*,
   1996 WL 707008 (S.D. Iowa Aug. 30, 1996)............................................................ 8

*New Image Labs., Inc. v. Stephan Co.*,
   34 F. App'x 338 (9th Cir. 2002)................................................................................ 7

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)........................................................... 11

*Ott v. Alfa-Laval Agri, Inc.*,
   31 Cal. App. 4th 1439 (1995).................................................................................. 14

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014)....................................................................... 5

*Phillips v. Apple Inc.*,
   2016 WL 1579693 (N.D. Cal. Apr. 19, 2016)........................................................... 5

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017)................................................................................. 15

*Principal Life Ins. Co. v. Robinson*,
   394 F.3d 665 (9th Cir. 2005)................................................................................... 15

**Hunton & Williams LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iv

*R Power Biofuels, LLC v. Chemex LLC*,
  2016 WL 6663002 (N.D. Cal. Nov. 11, 2016)................................................................10, 14

*Ramos v. Citimortgage, Inc.*,
  2009 WL 86744 (E.D. Cal. Jan. 8, 2009) ................................................................. 10

*Rhynes v. Stryker Corp.*,
  2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................................................. 5

*Seely v. White Motor Co.*,
  63 Cal. 2d 9 (1965) ................................................................................................ 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I")*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................. 5, 12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony II")*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................. 8

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
  589 F. Supp. 2d 221 (E.D.N.Y. 2008) ................................................................. 15

*Strougo v. Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015) ................................................................. 4

*Strumlauf v. Starbucks Corp.*,
  192 F. Supp. 3d 1025 (N.D. Cal. 2016) ................................................................. 13

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................. 11

*Walters v. Kimpton Hotel & Rest. Grp., LLC*,
  2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) ................................................................. 11

*Welborn v. IRS*,
  2016 WL 6495399 (D.D.C. Nov. 2, 2016) ................................................................. 3

*Willingham v. Glob. Payments, Inc.*,
  2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ................................................................. 11

**Statutes**

18 U.S.C. § 2702 ................................................................................................ 8, 9

Cal. Bus. & Prof. Code § 17204 ................................................................. 3

Cal. Bus. & Prof. Code § 22577 ................................................................. 9

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In colorful language and sweeping broad statements, Plaintiffs equate Yahoo's inability to achieve an impenetrable security system—something Yahoo never promised and expressly disclaimed—with an automatic breach of legal duty and resulting legal harm.  But the size and fact of the breaches are not proof that Yahoo's security measures were inadequate, or even if they were, that Plaintiffs suffered actual and compensable injury traceable to the breaches.  A causal connection between the purported data stolen and the injuries alleged is the lynchpin of standing.  Here it is missing.  Although Plaintiffs attempt to camouflage their inferential logical leaps and pleading holes with frequent references to *Anthem* and *Adobe*,[1] this case is starkly different.  In those cases, it was undisputed that the Social Security numbers and credit card information necessary to perpetrate the claimed identity theft and financial injuries were ***actually stolen in the breach***.  By contrast, *all* of the harms alleged here—from fraudulent tax returns, to purloined disability checks and unauthorized credit card purchases—require access to specific data elements that were never collected or stored by Yahoo or allegedly disclosed over Yahoo email by or to Plaintiffs.

Each of Plaintiffs' claims fails for other, independent reasons.  Plaintiffs abandoned their UCL restitution claim for non-paying users, injunctive relief is not warranted for a past breach, and Plaintiffs have not pled sufficient facts that satisfy the required showing of "unlawful," "unfair," or "fraudulent" conduct resulting in causally-related harm.  Further, Plaintiffs' CLRA claim fails because business users and free subscribers are not "purchasers," and "services" is a statutory term of art that does not apply to the Yahoo email platform.  Additionally, nonresidents do not have

---

[1] In their "Statement of Recent Decision" (ECF No. 120), Plaintiffs seek to align their case with *Attias, et al. v. CareFirst, Inc., et al.*, 2017 WL 3254941 (D.C. Cir. Aug. 1, 2017).  Rather than prop up Plaintiffs' deficient Complaint, however, *Attias* serves only to highlight the deficiencies therein.  Distinguishing *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), the *Attias* court noted the plaintiffs in that case failed to establish standing because their claimed injuries turned on a "series of contingent events, none of which was alleged to have occurred by the time of the lawsuit." *Id.* at *6.  Like *Anthem* and *Adobe*, the *Attias* plaintiffs overcame *Clapper* by making "specific allegations in the complaint that [the defendant] collected and stored … ***credit card and social security numbers***" and "***subscriber ID numbers***" that indisputably could be used to commit "identity theft."  *Id.*  None of those data elements are alleged to have been stolen in the Yahoo data breaches.  Like *Anthem* and *Adobe*, *Attias* does not aid Plaintiffs' cause.

1   statutory standing under the CRA even where a California choice-of-law provision exists, Plaintiffs

2   concede they are not entitled to statutory damages (Opp. at n.27), and no damages can be attributed

3   to any delay in notification.  Lastly, Yahoo's expressed goals about privacy and security do not

4   create an enforceable legal promise, and Plaintiffs waived all consequential damages even if proven.

5   **II.    ARGUMENT**

6      **A.    Plaintiffs Fail To Allege Facts That Support Article III Standing**

7          Plaintiffs' theories fall short of the constitutional minimum necessary for standing because

8   certain of the alleged harms do not qualify as injury-in-fact, and no facts are pled to causally tether

9   any alleged harms to actual data potentially exposed in these breaches.  The user information

10  potentially exposed in the Yahoo data breaches that allegedly affects Plaintiffs was limited to

11  "names, email addresses, telephone numbers, dates of birth, hashed passwords, and some encrypted

12  and unencrypted security questions and answers."  Yet, Plaintiffs attempt to morph this into a

13  different breach by broadening their definition of PII to include general, non-Plaintiff-specific

14  allegations of "private information contained in user's emails such as financial communications …

15  credit card [records], retail accounts, banking account passwords, IRS documents, and social security

16  numbers."  Compl. ¶ 1.  But sweeping these items into the definition of PII cannot create standing if

17  the data stolen was not the cause of the harms alleged.  Here, no Plaintiff alleges his or her email

18  account contained this data or any other data necessary to commit the specific alleged injuries.

19         "[T]o prove that a data breach caused identity theft, the pleadings must include allegations of

20  a nexus between the two instances beyond allegations of time and sequence."  *In re Anthem, Inc.*

21  *Data Breach Litig. ("Anthem I")*, 162 F. Supp. 3d 953, 987 (N.D. Cal. 2016).  Plaintiffs fall short.

22  In *Anthem*, as in *Adobe*, the nexus was the undisputed fact that the information hacked was the same

23  information used to perpetrate the complained-of financial harm, including "Social Security

24  [n]umbers" (*Anthem*) and "credit and debit cards, [and] expiration dates" (*Adobe*).  *Anthem I*, 162 F.

25  Supp. 3d at 987 (acknowledging Plaintiffs alleged "*specific aspects* of [p]laintiff's PII" were stolen

26  and used to cause complained-of harm) (emphasis added).  Instead, Plaintiffs here make general

27  allegations regarding various types of information that *hypothetically* may have been in some

28  unnamed, absent class members' emails, without once alleging that information such as a Social

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Security number or payment card (or other account information) of any particular named Plaintiff was actually transmitted in any of their emails.  Opp. at 9 (citing Compl. ¶¶ 1, 37-44, 58, 60, 68, 90-95).  Plaintiffs cannot borrow potential (or even actual) injuries from absent putative class members to establish standing.  *See, e.g.*, *Giroux v. Essex Prop. Trust, Inc.*, 2017 WL 1549477, at *2 (N.D. Cal. May 1, 2017) (finding no standing when data breach plaintiff "combined allegations describing the harm she has suffered with the harm the larger putative class has suffered").

Plaintiffs fail to plead facts showing that the data elements stolen from them were the same ones necessary to cause the complained-of harm to them.  That failure negates any potential showing of traceability—and with it, Article III standing.  *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *6 (N.D. Cal. Nov. 11, 2011) (no standing where the information necessary to cause the financial injuries, including credit card and Social Security data was not alleged to have been stolen); *see also Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (no standing when harm alleged did not align with specific data exposed); *Welborn v. IRS*, 2016 WL 6495399, at *9 (D.D.C. Nov. 2, 2016) (plaintiffs "must allege facts that indicate that the information stolen … is the same type of information used to commit their injuries").

### B.   Plaintiffs Fail To State UCL Claims

#### 1.   Plaintiffs have not pled harm caused by a UCL violation.

Plaintiffs' UCL claims are rife with generalizations, thin on supporting facts, and deficient all around.  Plaintiffs' UCL claims fail out of the gate because pleading a causally related "injury-in-fact" (*i.e.*, "lost money or property") is an essential element of the claim.  Cal. Bus. & Prof. Code § 17204.  For the reasons described above, Plaintiffs' failure to plead facts plausibly showing that the harm alleged flowed from the breaches not only defeats standing, but also defeats the UCL claims in their entirety.  Moreover, Plaintiffs effectively acknowledge that free email users are foreclosed from seeking restitution because they paid nothing for Yahoo's services.  Opp. at 16:20-22 (limiting restitution claim to "consumer[s] who paid to use Yahoo's services").  And Plaintiffs acknowledge that paying customers like Plaintiff Neff have adequate legal remedies—*i.e.*, contract damages—thus foreclosing the equitable remedy of restitution.  *See, e.g.*, *Munning v. Gap, Inc.*, 2017 WL 733104, at

*6 (N.D. Cal. Feb. 24, 2017) (dismissing UCL claim seeking restitution and injunction because plaintiff had adequate legal remedy under contract theory).

### 2. Unlawful, unfair, or fraudulent conduct cannot be inferred.

Even if Plaintiffs could get over the "harm" hurdle, they fail to meet the threshold requirement of showing "unlawful,"[2] "unfair," or "fraudulent" conduct, and the Opposition substitutes bare legal conclusions of UCL liability and assertions of resulting harm in place of these facts. With respect to "unfair" conduct, Plaintiffs cite this Court's *Anthem I* decision and proclaim victory. But once again, Plaintiffs' reliance on *Anthem* is misplaced. *Anthem* dealt with a health insurance company subject to an entirely different regulatory scheme governing sensitive medical information (*e.g.*, HIPAA, HITECH Act, etc.). Accordingly, and unlike here, the *Anthem* plaintiffs alleged facts (1) "demonstrating that Defendants' conduct violated an established public policy" or (2) showing the claim is "tethered to specific constitutional, statutory, or regulatory provisions." *Anthem I*, 162 F. Supp. 3d at 990. Here, Plaintiffs do neither, and generalized assertions that Yahoo did not provide adequate security—without identifying a specific breach of established public policy or specific constitutional, statutory, or regulatory provisions—is not enough. *See Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *5 (N.D. Cal. Aug. 31, 2010) ("[C]onclusory allegations do not support a claim that Defendants' actions offend[] an established public policy or that they are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.").

### 3. Plaintiffs fail to allege actionable fraud on which they relied.

Plaintiffs' attempt to plead "fraudulent" conduct fares not better. First, Plaintiffs attempt to convert Yahoo's aspirational statements about user privacy and a "pledge that they would implement proper safeguards to maintain the confidentiality and security of Plaintiffs' PII" into an actionable statement of fact. Opp. at 15:13-14. Plaintiffs' attempt, however, fails as puffery.[3] *See, e.g.*,

---

[2] Plaintiffs' claim that Yahoo's conduct qualifies as "illegal" rises and falls with the merits of their nonviable CLRA, CRA and OPPA claims. For the reasons discussed below, Plaintiffs have failed to adequately plead statutory violations sufficient to meet the "illegal" prong of the UCL.

[3] The Ninth Circuit has rejected Plaintiffs' suggestion that the Court sideline the puffery issue as a "question of fact." Opp. at 15:9-11; *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) (stating there is no "sound reason" for that approach).

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1135 (N.D. Cal. 2013) (CEO's "pledge[] to make the company's code of business conduct stronger" constituted puffery); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) ("pledge[] to increase transparency and conduct … business in the right way" constituted puffery). Nor have Plaintiffs pled an actionable falsity. They cite the statement that Yahoo "had physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you." Compl. ¶ 128. But beyond this bare assertion, Plaintiffs plead nothing to suggest it is false, such as the specific "safeguards" Yahoo promised to use but did not or the "federal regulations" with which Yahoo failed to comply and how. Moreover, Plaintiffs ignore Defendants' disclaimers regarding limitations in their security measures, which defeat any claim of purported misrepresentations or omissions concerning the same. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony I")*, 903 F. Supp. 2d 942, 969-70 (S.D. Cal. 2012).

Plaintiffs' claims also fail for lack of reliance. Plaintiffs make no claim that they actually *read and relied* on Defendants' TOS or Privacy Policy, much less when or which provisions. *See, e.g.*, Opp. at 14:18-19 (citing Compl. ¶¶ 100, 116, 119).[4] The fact that Plaintiffs had to accept the TOS as a condition of use does not excuse them from pleading reliance—*i.e.*, that they actually read the TOS and Privacy Policy. This failure is fatal. *See, e.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015, 1022 (N.D. Cal. 2013); *Phillips v. Apple Inc.*, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016).

**4.    Plaintiffs fail to demonstrate eligibility for injunctive relief.**

Plaintiffs' UCL injunction claim should be dismissed. Plaintiffs not only concede the availability of adequate legal remedies,[5] but also fail to address that injunctive relief does not remedy past breaches. For example, in *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL

---

[4] At most, Plaintiff Neff claims he saw "advertisements and explanations" at an indeterminate point in time. Opp. at 14:19-20:1. But even as to him, the Complaint identifies only one allegedly contemporaneous "advertisement," which merely states: "It's easy to create a professional looking website. Reassure customers with the VeriSign Verified™ Seal." Compl. ¶ 98. Neff pleads no facts showing those statements were false when made. Nor can he.

[5] Plaintiffs concede injunctive relief is improper, as they seek money damages under other claims. Opp. at 5-9; *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

5

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

6523428 (S.D. Cal. Nov. 3, 2016), the court dismissed a claim for an injunction requiring "Defendants to enhance their cybersecurity in the future" because it would "not provide any relief for past injuries or injuries incurred in the future" in connection with a breach that has already occurred. *Id.* at *8; *Beck v. McDonald*, 848 F.3d 262, 277-78 (4th Cir. 2017) (no inference of future harm from past data breaches).[6]

**C.     Plaintiffs Fail To State A CLRA Claim**

Plaintiffs' CLRA arguments ignore existing precedent and expand the statutory definition of "consumers" to include individuals who did not "purchase or lease" qualifying "services."  This invitation to rewrite the CLRA should be rejected.  First, Plaintiffs cite no case law to justify defining "consumers" to include individuals who did not "purchase or lease."  Generalized "policy arguments" are no basis to do so.  *Berry v. Am. Exp. Publ'g, Inc.*, 147 Cal. App. 4th 224, 232 (2007) (rejecting attempt to "rewrite a statute under the guise of a liberal interpretation").  Further, Plaintiffs' argument that the provision of PII alone constitutes a "purchase" with "currency" has been flatly rejected.  *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011) (rejecting argument that PII is "currency," and its transfer "in exchange for free applications, constitutes a 'purchase' or 'lease' under the CLRA").  Second, Plaintiffs argue that "internet providers" can be an "exception to the rule" that "software" is not a "good or service."  Even if Yahoo were an "internet provider" (and it is not), the case Plaintiffs cite concerned paying customers and did not even analyze whether the CLRA should cover the online service at issue—it certainly did not create an "exception to the rule."  *Doe I v. AOL LLC,* 719 F. Supp. 2d 1102 (N.D. Cal. 2010); Opp. at 17:8-9.

**D.     Plaintiffs Fail To State A CRA Claim**

**1.     Non-Californians cannot bring CRA claims.**

Statutory standing and contractual choice of law are separate concepts, which cannot be conflated to expand the universe of CRA plaintiffs.  Mot. at 18 (citing authority); *Fred Briggs Distrib. Co. v. Cal. Cooler, Inc.*, 2 F.3d 1156 (9th Cir. 1993).  On this point, there can be no

---

[6] Plaintiffs' reliance on *Adobe* does not alter this analysis.  The injunctive relief in that case was limited to plaintiffs who overspent on Adobe products.  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014).  Only Plaintiff Neff spent money on Defendants' service, and even he does not allege that he "spent more" for a specified set of security measures.  Compl. ¶ 222.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

reasonable dispute.  As the Ninth Circuit has clearly stated:  "When a law contains geographical limitations on its application, … courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply."  *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219 (9th Cir. 2003) (cited in Opp. at 21-22).  Plaintiffs cannot reasonably interpret the law otherwise.  *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. 2014) ("Even if the choice of law provision were intended to confer upon out-of-state drivers a cause of action …, it could not do so.  [One] cannot create … a cause of action that California law does not provide.").[7]  The statutory reach of the CRA cannot be extended beyond California residents by agreement, and an agreement on choice of law cannot be construed to do so.

### 2. The CRA did not mandate notice for the 2013 or Forged Cookie Breaches.

Plaintiffs have not offered a single case to support their claim that notice was required for the 2013 Breach simply because it was discovered after the CRA was amended.  Absent "express" legislative intent, there is no retroactive obligation to provide notice related to the 2013 Breach.  *See, e.g.*, *Doe v. Schwarzenegger*, 2007 WL 601977, at *1 (N.D. Cal. Feb. 22, 2007).  Even if legislative intent were overlooked, and the CRA were somehow retroactive, Plaintiffs' claim related to the 2013 Breach still fails.  The 2013 Breach was discovered, and notice promptly provided, in 2016.  Plaintiffs failed to plead delay in notice, and delay in *discovery* does not trigger a claim.

Nor have Plaintiffs cited any authority to justify expanding the CRA to cover the Forged Cookie Breach.  *First*, Plaintiffs fail to allege that any California resident specifically claims to have been affected by the Forged Cookie Breach.  Mot. at 21 n.26.  *Second*, Plaintiffs concede that hackers "used the forged cookies as a *substitute*" (Opp. at 20 (emphasis added)) for the § 1798.82(h)(2) online account data elements.  As Plaintiffs admit, hackers relied on this "substitute" in the absence of the exposure of the data elements themselves.  Here, the plain text of

---

[7]  The judicial admissions doctrine is not applicable for two reasons.  First, Yahoo stipulated only that California law would apply, not that California law would provide relief to all users for all causes of action.  *See* Compl. ¶ 118.  Second, the Ninth Circuit has limited judicial admissions "to admissions of fact," and not "questions of law."  *New Image Labs., Inc. v. Stephan Co.*, 34 F. App'x 338, 342 (9th Cir. 2002) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988)).  Whether the CRA applies to non-Californians is a question of law, not fact.

7

§ 1798.82(h)(2) is limited to statutorily-defined data elements, not broader categories of data elements Plaintiffs simply assert to be "substitutes" for online accounts.

### 3.     Plaintiffs do not allege appropriate CRA delay damages.

Plaintiffs Heines and Dugas (Compl. ¶¶ 10, 12) are the only California residents, so only their allegations of harm are relevant to the CRA.  Neither has alleged facts indicating that a notice delay, if any, harmed them in a way distinct from harm they allege due to the breaches themselves.[8] In *In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("Sony II")*, as in other data breach cases involving CRA claims, damages like those claimed by Plaintiffs—*e.g.*, credit monitoring, identity theft protection, loss of the use of PII, risk of future harm, time spent addressing the harm and associated anxiety—have not been found to be "delay-related" damages.  996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014).  Rather, "costs relating to credit monitoring, identity theft protection, and penalties," as well as the breach and disclosure of sensitive information by criminal hackers, all "fail to constitute incremental harm suffered by Plaintiffs as a result of any delay," and "the only reasonable inference is that Plaintiffs suffered the alleged economic injuries as a result of the data breach itself."  *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015); *see also In re Barnes & Noble Pin Pad Litig.*, 2016 WL 5720370, at *8 (N.D. Ill. Oct. 3, 2016) ("loss of value of … PII, the time and expense of mitigating the risk of identity theft, or anxiety" failed to show "injuries were caused by the delay between the time she was notified of the breach and the time she contends she should have been notified").  The same reasoning applies here.

### E.     Plaintiffs Fail To State An SCA Claim

Plaintiffs' Opposition ignores that an SCA claim requires a *knowing* and *voluntary* disclosure, and Plaintiffs allege no such thing.  18 U.S.C. § 2702(a)(1)-(2).  Mere "negligence," or even "reckless" conduct, is not sufficient.  *Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 797 (6th Cir. 2015).  Knowing and voluntary participation in the breach, not just a failure to act,

---

[8] To the contrary, Plaintiff Heines alleges she was aware of unauthorized Social Security and credit account activity as early as February 2015, nearly a year and a half before she received any breach notice.  Compl. ¶ 10.  Similarly, Plaintiff Dugas alleges to have been aware of purported income tax fraud since 2013, again, long before even Yahoo was aware of any potential intrusions.  *Id.* ¶ 12. Plaintiffs' actual knowledge close to the time of the breaches gave them an opportunity to take prophylactic steps to address the harm each alleged was caused by the breach itself.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

is required.  *See Muskovich v. Crowell*, 1996 WL 707008, at *5 (S.D. Iowa Aug. 30, 1996) (employer whose failure to implement safeguards had resulted in data breach did not constitute "knowing" disclosure).  Not surprisingly, Plaintiffs cite no cases in support of their bid to convert Defendants' alleged failure to prevent the breach into a knowing disclosure under the SCA.

Plaintiffs' "contents" argument misses the point.  Under the plain text of §§ 2702(a)(1)-(2), Defendants (as alleged RCS or ECS providers) "shall not knowingly divulge to any person or entity the contents of any communication."  Yet Plaintiffs contend that "**hackers** '*gained access to the email* … and thus any private information contained within those emails.'"  Opp. at 23 (bolded emphasis added).  Criminal hacking by an unauthorized third-party is not a voluntary disclosure by even a negligent or reckless RCS or ECS provider, and Plaintiffs cite no authority that allows a hacker's intent to be imputed to a defendant.  Even if Plaintiffs found such authority, they still fail to allege facts that otherwise explain how cookie information amounts to "contents," as opposed to non-actionable transactional data.  Mot. at 24.  The SCA was not intended to apply derivatively, and does not apply so, as Plaintiffs wish.  Their SCA claim should be dismissed with prejudice.

### F.  Plaintiffs Fail To State An OPPA Claim

Plaintiffs abandon their standalone OPPA claim in the Opposition, and have failed to state a viable OPPA claim as a predicate for a UCL violation.  Plaintiffs cannot bootstrap a UCL claim on OPPA because Plaintiffs are not "consumers" under OPPA, and do not qualify for its protections or stated policy objectives (*i.e.*, to protect paying "consumers").  Mot. at 24-25 (citing, among other things, Cal. Bus. & Prof. Code § 22577(d) requirement that OPPA consumer "purchase or lease" goods or services); *Fabozzi v. StubHub, Inc.*, 2012 WL 506330, at *5 (N.D. Cal. Feb. 15, 2012) (failure to state a claim under the borrowed law is fatal to an "unlawful" UCL claim).

### G.  Plaintiffs Fail To State An Express Contract Claim

Plaintiffs have failed to identify a contractual promise made and broken by Yahoo.  Plaintiffs claim Yahoo failed to:  (1) "have proper safeguards in accordance with applicable law to protect Plaintiffs' PII;" and (2) "comply with their own policies and applicable laws, regulations, and industry standards relating to data security."  Opp. at 24:7-10.  But the TOS disclaims all warranties, the "promises" Plaintiffs allege cannot be found in the TOS, and thus, those "promises" fall squarely

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

within the disclaimer.[9]  Yahoo never promised to provide "hack-free" services and specifically informed users that the system was not 100% secure and that users did so "AT [THEIR] SOLE RISK."  Compl., Exh.1, at § 19(a) & (b); RJN, Exh. 2.  In any event, Plaintiffs fail to show Yahoo breached the alleged "promises," as they fail to "plead the federal law or laws with which [Defendants] allegedly did not comply" or how.  *Anthem I*, 162 F. Supp. 3d at 982.[10]

Plaintiffs also cannot plead damages—a substantive element of their contract claim—in light of the limitation-of-liability provisions in the TOS.  Those provisions expressly bar "PUNITIVE, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES …" Compl., Exh. 1, at 91.  Plaintiffs attempt an end run around the limitation-of-liability provision by claiming that "not all of the damages Plaintiffs seek are consequential," but the only "non-consequential" damages they identify are hypothetical "benefit of the bargain damages suffered by Plaintiff Neff and other users that paid for Yahoo services" (which are never adequately pled).  Opp. at 25:12-18.  Plaintiffs thus concede that any remaining damages—*including all damages sought by the consumer classes*—fall within the scope of the limitation-of-liability provisions.  Unable to attack those provisions substantively, Plaintiffs claim enforceability issues are "beyond the scope of a motion to dismiss."  *Id.* at 25:20-22.  But numerous courts, including this one, have decided such issues on a 12(b)(6) motion.  *See, e.g.*, *Davidson v. Apple, Inc.*, 2017 WL 976048, at **12-13 (N.D. Cal. Mar. 14, 2017); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013).[11] Plaintiffs' inability to plead recoverable damages defeats their claim.

---

[9] Plaintiffs cite *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *19 (N.D. Cal. Nov. 11, 2016).  There, the Court noted that a "general disclaimer of an implied warranty cannot disclaim an express warranty provided elsewhere in the contract without clear agreement of the parties."  *Id.* Here, the alleged "promises" are not "provided elsewhere in the contract."  They are disclaimed.

[10] Plaintiffs claim in a footnote that Defendants violated the CRA and SCA.  Opp. at n.33.  But those laws do not even specify standards for data security "safeguards."

[11] Plaintiffs cite *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, at *7 (E.D. Cal. Jan. 8, 2009).  Opp. at 25:22-24.  But the *Ramos* court did not even analyze the sufficiency of the plaintiff's unconscionability allegations.  Unlike Plaintiffs here, the *Ramos* plaintiff may have pled actual facts to support his unconscionability claim.  Plaintiffs here pled no such facts, only conclusory assertions that the provisions are unconscionable and otherwise unenforceable.  That will not do.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### H.   Plaintiffs Fail To State An Implied Contract Claim

Plaintiffs admit their implied contract claim duplicates their express contract claim, which requires dismissal. *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *10 (N.D. Cal. Dec. 5, 2013). Plaintiffs respond only that the claim is pled in the alternative. Opp. at 26:6-7. As both sides agree the TOS constitutes an express contract, the implied contract claim should be dismissed. In any event, Plaintiffs must plead the formation of an implied contract. Plaintiffs claim their "opening of a Yahoo or Aabaco account" created an implied contract, under which Defendants agreed to comply with multiple, unidentified "laws, regulations, and industry standards relating to data security." *Id.* at 26:17-18; Compl. ¶ 187. Numerous courts have dismissed such vague and overly expansive implied contract claims. *Frezza v. Google Inc.*, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing claim alleging promise to comply with industry standards where plaintiffs "provid[ed] their financial data"); *Doe v. John F Kennedy Univ.*, 2013 WL 4565061, at **1, 8 (N.D. Cal. Aug. 27, 2013); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015). The Court should do the same here.

Plaintiffs' authorities do not apply. *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016) involved the "mandatory receipt of Social Security numbers or other sensitive personal information." Similarly, *Walters v. Kimpton Hotel & Rest. Grp., LLC*, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) involved the receipt of "payment card data." Finally, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1157 (D. Minn. 2014) involved the receipt of "credit- and debit-card information." By contrast, Defendants did not solicit or receive Plaintiffs' sensitive financial information—*e.g.*, credit card numbers or Social Security numbers[12]— and could not have implicitly guaranteed its security. *See Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *21 (N.D. Ga. Feb. 5, 2013) (no implied contract where plaintiffs provided payment card data "to a merchant, not directly to Defendant"). That Yahoo expressly disclaims the security of email transmissions destroys any claim of an implied contract to the contrary.

---

[12] Only Plaintiff Neff would have provided payment information to open his Aabaco account. But Plaintiffs do not claim that information was compromised in the breaches.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## I.   Plaintiffs Fail To State An Implied Covenant Claim

Plaintiffs claim they are not seeking to impose new or additional terms on Defendants through an implied covenant theory.  Opp. at 27:12.  But they are.  The Opposition fails to cite specific provisions in any agreement wherein Defendants promised to:  (1) employ specific password encryption standards; (2) employ specific protocols in cases of suspected or confirmed breaches; (3) employ a particular set of cybersecurity standards; or (4) invest a particular sum of time or money in any "cybersecurity resources."  Compl. ¶ 193.  And an implied covenant theory cannot be used to rewrite the generalized statements in the TOS and Privacy Policy regarding a commitment to user security and convert those into after-the-fact actionable "obligations" to provide specific encryption standards, resources, or protocols where no such promise exists.  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("[I]mplied terms should never be read to vary express terms."); *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (2013) (implied covenant does not "impose substantive terms and conditions beyond those to which the parties actually agreed").

## J.   Plaintiff Neff Fails To State A Fraudulent Inducement Claim

Plaintiff Neff cannot state a fraudulent inducement claim.  *First*, Neff limits the alleged "misrepresentations and omissions" to Paragraphs 98, 99 and 102 of the Complaint.  Opp. at 28:11-12.  But none of the cited advertisements or Privacy Policy excerpts contained statements of fact that were false when made.  The Privacy Policy says Defendants would use "safeguards that comply with federal regulations."  Compl. ¶ 102.  But Neff fails to identify any "safeguards" that did not "comply with federal regulations."  Instead, he insufficiently alleges "fraud-by-hindsight," claiming Defendants should have done better in light of past intrusions and alleged vulnerabilities.

*Second*, Plaintiffs claim disclaimers in the TOS cannot exculpate fraudulent conduct.  Opp. at 19-20.  But Defendants never argued otherwise.  Rather, Defendants argued those cautionary disclaimers preclude falsity and reliance.  *See, e.g.*, *Sony I*, 903 F. Supp. 2d at 968 ("Plaintiffs have failed to sufficiently allege how Sony's representations taken as a whole would be likely to deceive the reasonable consumer" in light of "clear admonitory language that Sony's security was not 'perfect'").  Plaintiffs fail to respond to *that* argument.

12

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### K.     <u>The Foreign Plaintiffs Cannot Bring A Negligence Claim</u>

The Foreign Plaintiffs should litigate their claims in the jurisdictions to which they contractually agreed, and under the laws to which they agreed. To avoid these contractual obligations, the Foreign Plaintiffs claim Yahoo cannot enforce the forum selection and choice-of-law clauses contained in the ATOS and their respective TOS because it is "not a party" to them. Opp. at 29:19-20. However, the Foreign Plaintiffs cannot avoid their agreement to litigate their claims elsewhere simply by suing a corporate parent in place of a wholly-owned subsidiary. As the Ninth Circuit has held, "where the alleged conduct of the nonparties is closely related" to the contract containing the forum selection and choice-of-law provisions, the nonparties can enforce such provisions. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007); *see also Columbus Univ. v. Tummala*, 2014 WL 12675010, at *4 (C.D. Cal. July 15, 2014); *Bugna v. Fike*, 80 Cal. App. 4th 229, 235 (2000). A "close relation" between Yahoo and the Foreign Plaintiffs plainly exists here. As an initial matter, each and every Yahoo user—foreign and domestic—is bound by the same ATOS to which Yahoo also is a party—and those ATOS contain the forum selection and choice-of-law provisions. RJN, Exh. C (ATOS). Even more fundamental, the Foreign Plaintiffs expressly agreed to "transfer" their information "to the United States and/or other countries for storage, processing and use *by Yahoo!...*" *See, e.g.*, RJN, Exh. B (Australia TOS) ¶ 4 (emphasis added). Accordingly, Yahoo's alleged duties, if any, arose solely because of the TOS to which the Foreign Plaintiffs agreed. In the end, the Foreign Plaintiffs can't have it both ways: they cannot claim Yahoo owed them contractual duties "to exercise reasonable care in safeguarding and protecting [their] PII and financial information," but then deny Yahoo's right to enforce the forum selection and choice-of-law provisions contained in those same agreements. Compl. ¶ 225. The Foreign Plaintiffs expressly agreed to a "close relationship" with Yahoo in the ATOS and TOS, and Yahoo can enforce the forum selection and choice-of-law provisions in those agreements.

But Plaintiffs' detour into privity is a red herring in any event. Even if the Foreign Plaintiffs could bring their negligence claims here under California law, the economic loss rule bars them.[13]

---

[13] The rule also bars Neff's negligent misrepresentation claim. A "majority of courts" have applied the rule to such claims, including this one. *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025,

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

The Foreign Plaintiffs claim the economic loss rule only applies if there is contractual privity with Yahoo, but "that proposition is clearly belied by California law." *Dubbs v. Glenmark Generics Ltd.*, 2014 WL 1878906, at *4 (C.D. Cal. May 9, 2014) (rejecting argument that "economic loss rule does not apply when a plaintiff lacks contractual privity with a defendant") (citing *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1454 (1995) ("privity or the absence of privity is not a controlling factor")). "In California, the only kinds of damages caused by negligence which may be recovered from a defendant not in privity with plaintiff are for bodily injury and physical damage." *Anthony v. Kelsey-Hayes Co.*, 25 Cal. App. 3d 442, 446-47 (1972). There is "no duty to prevent economic loss to third parties in negligence actions at common law" with or without privity. *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 895 (N.D. Cal. 2014) (citing *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1216 (2008)); *see also id.* at n.2 (rejecting argument that "economic loss rule does not apply when a plaintiff lacks contractual privity with a defendant" as "contrary to California law"); *Aas v. Sup. Ct.*, 24 Cal. 4th 627, 632-33 (2000); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 12, 18-19 (1965) (same). Although limited exceptions exist, none could be pleaded or have been pled here.[14]

## L.   **Plaintiffs Cannot Pursue Declaratory Relief**

Despite Plaintiffs' claims to the contrary, the Complaint still lacks sufficient facts to support declaratory relief. *First*, Plaintiffs fail to address their bare allegations (Compl. ¶ 234) that the disputed provisions are "precluded" by unspecified "federal and state law." *See, e.g.*, *Anthem I*, 162 F. Supp. 3d at 982 (claim failed based on unspecific allegations that defendants "were required to

---

1036 (N.D. Cal. 2016). This Court recently dismissed a negligent misrepresentation claim that failed to "establish an exception to the economic loss rule." *R Power Biofuels*, 2016 WL 6663002, at *14.

[14] Plaintiffs cite two cases to the contrary—*Interworld Network Int'l, Inc. v. VWR Int'l, Inc.*, 2012 WL 78738 (N.D. Cal. Jan. 10, 2012) and *Agape Family Worship Ctr., Inc. v. Gridiron*, 2016 WL 633864 (C.D. Cal. Feb. 16, 2016). With all due respect to those courts, those decisions run counter to California law and the clear majority of courts. Those courts cite no cases to support the proposition that the economic loss rule turns on contractual privity. Indeed, that is precisely why the Supreme Court of California created a narrow "special relationship" exception to the economic loss rule in *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979)—to allow, in limited circumstances, third parties to recover otherwise non-recoverable economic losses in tort. Plaintiffs do not and cannot plead a "special relationship" exists here.

Hunton & Williams LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

comply with 'federal and state laws and regulations, including HIPAA, and industry standards'"). *Second*, Plaintiffs failed to plead facts to support either procedural or substantive unconscionability (much less both), and their Opposition fails to show otherwise. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (party opposing contractual enforcement bears the burden to establish procedural and substantive unconscionability). Plaintiffs' hypothetical unconscionability example (Opp. at 35 n.45) likewise cannot cure the absence of requisite facts. *Third*, Plaintiffs' additional attempt to distinguish Defendants' cited authority makes a distinction without a difference:  whether the requested relief concerns a contract or a matter of state or federal law is immaterial.  What is relevant is that the declaratory relief merely anticipated an affirmative defense and remains redundant. *Brunette v. Humane Soc'y of Ventura Cty.*, 40 F. App'x 594, 598 (9th Cir. 2002) (declaratory relief inappropriate when it serves "no purpose beyond the remedies … sought on [the] claims at law"). *Fourth*, Plaintiffs' reliance on *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 668 (9th Cir. 2005), which applied the federal *Brillhart* abstention doctrine, is inapplicable. Plaintiffs cite nothing to suggest that *Brillhart* abstention applies to a redundant declaratory relief claim within an action for damages. *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 238 (E.D.N.Y. 2008) ("As plaintiff in this case seeks damages … in addition to declaratory relief, *Brillhart* abstention does not apply.").

## III.   <u>CONCLUSION</u>

For these reasons and for those set forth in the moving papers, the Court should dismiss Plaintiffs' Complaint in its entirety.

Dated:  August 1, 2017                           **HUNTON & WILLIAMS LLP**

                                                 By: <u>/s/ Ann Marie Mortimer</u>
                                                     Ann Marie Mortimer
                                                 Attorneys for Defendants
                                                 Yahoo! Inc. and Aabaco Small
                                                 Business, LLC