```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4

 5
                                      )  16-MD-02752 LHK
 6                                    )
                                      )  SAN JOSE, CALIFORNIA
 7      IN RE: YAHOO! CUSTOMER DATA   )
        SECURITY BREACH LITIGATION,   )  OCTOBER 13, 2017
 8                                    )
                                      )  PAGES 1-50
 9                                    )
        _____
10

11                     TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE LUCY H. KOH
12                   UNITED STATES DISTRICT JUDGE

13      A P P E A R A N C E S:

14      FOR THE PLAINTIFFS:    MORGAN & MORGAN
                               BY:  JOHN YANCHUNIS
15                             201 NORTH FRANKLIN STREET, 7TH FLOOR
                               TAMPA, FLORIDA  33602
16
                               MILBERG LLP
17                             BY:  ARIANA J. TADLER (BY PHONE)
                               ONE PENNSYLVANIA PLAZA
18                             NEW YORK, NEW YORK  10119

19                             ROBBINS, GELLER, RUDMAN & DOWD
                               BY:  STUART A. DAVIDSON (BY PHONE)
20                             120 EAST PALMETTO PARK ROAD, SUITE 500
                               BOCA RATON, FLORIDA  33432
21

22                 APPEARANCES CONTINUED ON NEXT PAGE

23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24

25             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                   TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2        APPEARANCES (CONTINUED)

3

4        FOR THE DEFENDANTS:     HUNTON & WILLIAMS
                                 BY:  ANN MARIE MORTIMER
5                                550 SOUTH HOPE STREET, SUITE 200
                                 LOS ANGELES, CALIFORNIA  90071
6
                                 BY:  JOHN J. DELIONADO (BY PHONE)
7                                     SAMUEL A. DANON (BY PHONE)
                                 111 BRICKELL AVENUE, SUITE 2500
8                                MIAMI, FLORIDA  33131

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1      SAN JOSE, CALIFORNIA                    OCTOBER 13, 2017

 2                    P R O C E E D I N G S

 3          (COURT CONVENED AT 11:02 A.M.)

 4               THE COURT:  GOOD MORNING AND WELCOME.

 5               MR. YANCHUNIS:  GOOD MORNING.

 6               MS. MORTIMER:  GOOD MORNING, YOUR HONOR.

 7               THE CLERK:  PLEASE BE SEATED.

 8          YOUR HONOR, CALLING CASE 16-MD-02752, IN RE: YAHOO! INC.,

 9      CUSTOMER DATA SECURITY BREACH LITIGATION.

10          COUNSEL, PLEASE STATE YOUR APPEARANCES.

11               MR. YANCHUNIS:  GOOD MORNING AGAIN, YOUR HONOR.

12      JOHN YANCHUNIS FOR THE PLAINTIFFS.

13               MS. MORTIMER:  GOOD MORNING, YOUR HONOR.

14      ANN MARIE MORTIMER FOR THE DEFENDANTS.

15               THE COURT:  OKAY.  AND I THINK WE HAVE SOME COUNSEL

16      ON THE PHONE; CORRECT?

17               THE CLERK:  YES, YOUR HONOR.

18          COUNSEL, PLEASE STATE YOUR APPEARANCES.

19               MR. DANON:  YOUR HONOR, THIS IS SAM DANON FROM

20      HUNTON & WILLIAMS ON BEHALF OF YAHOO!.

21               MR. DELIONADO:  AND, YOUR HONOR, THIS IS

22      JOHN DELIONADO FROM HUNTON & WILLIAMS, ALSO ON BEHALF OF

23      YAHOO!.

24               THE COURT:  OKAY.  WELCOME.

25               MS. TADLER:  YOUR HONOR, THIS IS ARIANA TADLER FROM
```

```
 1         MILBERG ON BEHALF OF PLAINTIFFS.

 2              THE COURT:  OKAY.  WELCOME.

 3         ANYONE ELSE?  IS THAT IT?

 4              THE CLERK:  YOUR HONOR, I BELIEVE THERE IS ANOTHER

 5    PARTY.

 6              MR. DAVIDSON:  YOUR HONOR, THIS IS STUART DAVIDSON.

 7    CAN YOU HEAR ME?

 8              THE COURT:  YES, I CAN.

 9              MR. DAVIDSON:  OKAY.  THEY TOLD ME -- I'M SORRY.

10    THEY TOLD ME I WAS GOING TO BE ON MUTE.

11         SO THIS IS STUART DAVIDSON ON BEHALF OF THE PLAINTIFFS,

12    ALSO ON THE PHONE.

13              THE COURT:  ALL RIGHT.  GOOD AFTERNOON -- GOOD

14    MORNING AND WELCOME.

15         OKAY.  SO THIS IS WHAT I AM GOING TO DO:  I AM GOING TO

16    GRANT LEAVE TO AMEND TODAY.  I'M GOING TO MAKE MY RULING ON THE

17    RECORD.

18         AND I AM GOING TO GRANT A 30(B)(6) DEPOSITION AND I WANT

19    TO MAKE SURE THAT THERE IS SUFFICIENT TIME THAT THIS NEXT

20    AMENDED CONSOLIDATED CLASS ACTION COMPLAINT IS AS CLOSE TO THE

21    FINAL AS WE CAN GET.

22         LET ME GO AHEAD AND MAKE MY RECORD.

23         THE FIRST DATA BREACH IN THIS CASE OCCURRED IN AUGUST OF

24    2013.  I'LL REFER TO THIS AS THE 2013 BREACH.  HACKERS GAINED

25    ACCESS TO MORE THAN 1 BILLION YAHOO! ACCOUNTS AND STOLE USERS'
```

1       YAHOO! LOG IN, COUNTRY CODE, RECOVERY E-MAIL, DATA OF BIRTH,

2       HASH PASSWORDS, CELL PHONE NUMBERS, AND ZIP CODES.

3              THE 2013 BREACH ALSO GAVE HACKERS ACCESS TO THE CONTENTS

4       OF USERS' E-MAILS --

5              NOW, THESE ARE OBVIOUSLY THE ALLEGATIONS IN THE COMPLAINT,

6       BUT FOR PURPOSES ON A MOTION TO DISMISS AND AT THESE EARLY

7       PROCEEDINGS, WE ACCEPT THEM AS CORRECT.

8              -- AND THUS EXPOSED PERSONAL IDENTIFICATION INFORMATION

9       THAT USERS INCLUDED IN THE CONTENTS OF THEIR E-MAILS.

10             YAHOO! DID NOT DISCLOSE THIS 2013 BREACH UNTIL DECEMBER 14

11      OF 2016.  SO THAT WAS AFTER THREE YEARS, MORE THAN THREE YEARS.

12      AN AUGUST 2013 BREACH WAS DISCLOSED IN DECEMBER, DECEMBER 14 OF

13      2016.

14             SO THE SECOND BREACH OCCURRED IN 2014.  I'LL REFER TO THIS

15      AS THE 2014 BREACH.  HACKERS GAINED ACCESS TO AT LEAST

16      500 MILLION YAHOO! USER ACCOUNTS.

17             YAHOO! KNEW ABOUT THE 2014 BREACH AS IT WAS HAPPENING, BUT

18      DID NOT PUBLICLY DISCLOSE THE 2014 BREACH UNTIL SEPTEMBER 22ND,

19      2016, ABOUT TWO YEARS LATER.

20             THIS DISCLOSURE CAME JUST TWO MONTHS AFTER YAHOO!

21      ANNOUNCED VERIZON'S PLAN TO ACQUIRE YAHOO! AND, ACCORDING TO

22      PLAINTIFFS, A FEW WEEKS AFTER YAHOO! TOLD THE SECURITIES AND

23      EXCHANGE COMMISSION THAT YAHOO! KNEW OF NO INCIDENTS OF

24      UNAUTHORIZED ACCESS OF PERSONAL DATA THAT MIGHT ADVERSELY

25      AFFECT THE POTENTIAL ACQUISITION.

1     THE THIRD DATA BREACH OCCURRED IN 2015 AND 2016.  THE

2   PARTIES ARE REFERRING TO THIS AS THE FORGED COOKIE BREACH.

3   PLAINTIFFS ALLEGE THAT HACKERS IN THE FORGED COOKIE BREACH ARE

4   THE SAME PARTIES INVOLVED IN THE 2014 BREACH, A GROUP THAT

5   INCLUDES TWO RUSSIAN FSB AGENTS.

6     IN A SUBSEQUENT S.E.C. FILING, YAHOO! DISCLOSED THAT ITS

7   SECURITY TEAM KNEW ABOUT THE FORGED COOKIE BREACH AS IT WAS

8   HAPPENING IN 2015 AND 2016.  HOWEVER, NO REAL ACTION WAS TAKEN.

9   YAHOO! DID NOT NOTIFY USERS OF THE FORGED COOKIE BREACH UNTIL

10   FEBRUARY OF 2017.

11     SO WE HAVE THE 2013 BREACH BEING DISCLOSED ON DECEMBER 14,

12   2016; WE HAVE THE 2014 BREACH BEING DISCLOSED IN SEPTEMBER, OR

13   ON SEPTEMBER 22ND SPECIFICALLY, 2016; AND THEN WE HAVE THE 2015

14   AND 2016 BREACH BEING DISCLOSED IN FEBRUARY OF 2017.

15     NOW, BASED ON THOSE DISCLOSURES, THIS COURT HAD APPOINTED

16   LEAD PLAINTIFFS' COUNSEL ON FEBRUARY 9TH OF 2017; THE

17   PLAINTIFFS FILED A CONSOLIDATED CLASS ACTION COMPLAINT ON

18   APRIL 12TH, 2017; AND ON AUGUST 30TH, THE COURT ISSUED AN ORDER

19   GRANTING IN PART AND DENYING IN PART YAHOO!'S MOTION TO

20   DISMISS.

21     ON OCTOBER 3RD, 2017, AFTER ALL OF THAT ACTIVITY IN THIS

22   MULTI-DISTRICT LITIGATION HAD TAKEN PLACE -- AND THIS

23   MULTI-DISTRICT LITIGATION TRANSFER ORDER WAS ISSUED FROM THE

24   JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION ON DECEMBER 7TH,

25   2016.

1          ON OCTOBER 3RD, 2017, VERIZON DISCLOSED THAT THE 2013

2     BREACH ACTUALLY AFFECTED ALL 3 BILLION OF YAHOO!'S USERS.  SO

3     THAT DISCLOSURE IS NOW COMING ABOUT FOUR YEARS LATE, AND IT IS

4     COMING AFTER I'VE ALREADY RULED ON A MOTION TO DISMISS ON THE

5     CONSOLIDATED CLASS ACTION COMPLAINT.

6          NOW, YOU KNOW, YAHOO!, IN ITS JOINT CASE MANAGEMENT

7     STATEMENT, SAYS THIS IS NOT A NEW ISSUE.

8          WELL, IT IS NEW TO 2 BILLION USERS, OF YOUR USERS.  YOU

9     SAY IT'S NOTHING NEW.

10          AND YOU SAY THAT PRESS RELEASE NOTICE IS SUFFICIENT FOR

11     THOSE 2 BILLION USERS.  WE'LL SEE.

12          ANYWAY, I DISAGREE WITH YAHOO!.  I DO THINK THIS IS A -- I

13     THINK THIS IS A NEW ISSUE.  AT LEAST FOR 2 BILLION USERS OF

14     YAHOO!'S, IT IS A NEW ISSUE.

15          AND THE FEDERAL RULES OF CIVIL PROCEDURE STATE THAT LEAVE

16     TO AMEND, QUOTE, "SHALL BE FREELY GIVEN WHEN JUSTICE SO

17     REQUIRES," END QUOTE.  FEDERAL RULE OF CIVIL PROCEDURE

18     15(A)(2).

19          THE DECISION OF WHETHER TO GRANT LEAVE TO AMEND

20     NEVERTHELESS REMAINS WITHIN THE DISCRETION OF THE DISTRICT

21     COURT, WHICH MAY DENY LEAVE TO AMEND DUE TO "UNDUE DELAY, BAD

22     FAITH OR DILATORY MOTIVE ON THE PART OF THE MOVANT, REPEATED

23     FAILURE TO CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED,

24     UNDUE PREJUDICE TO THE OPPOSING PARTY BY VIRTUE OF ALLOWANCE OF

25     THE AMENDMENT, AND FUTILITY OF AMENDMENT."  THAT IS QUOTING

1    FROM FOMAN V. DAVIS, 371 U.S. 178 AT 182 FROM 1962.

2        "OUTRIGHT REFUSAL TO GRANT LEAVE TO AMEND WITHOUT A

3    JUSTIFYING REASON IS, HOWEVER, AN ABUSE OF DISCRETION."  SAME

4    CITATION.

5        AND THIS IS ALSO CITING FROM LEADSINGER VERSUS BMG MUSIC

6    PUBLICATION, 512 F.3D 522 AT 532, NINTH CIRCUIT, 2008.

7        SO IN THIS INSTANCE, I DO NOT FIND UNDUE DELAY ON BEHALF

8    OF THE PLAINTIFFS.  I DO NOT FIND BAD FAITH OR DILATORY MOTIVE

9    ON BEHALF OF THE PLAINTIFFS.  I DON'T FIND REPEATED FAILURE TO

10   CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED.  I DO NOT

11   FIND UNDUE PREJUDICE TO THE OPPOSING PARTY BY VIRTUE OF

12   ALLOWANCE OF THE AMENDMENT OR FUTILITY OF AMENDMENT.

13       THIS IS A DISCLOSURE OF 2 BILLION USERS THAT WAS MADE ON

14   OCTOBER 3RD, 2017, AS TO A BREACH THAT OCCURRED IN AUGUST OF

15   2013, MORE THAN FOUR YEARS AGO.  AND THIS ANNOUNCEMENT CAME

16   AFTER THE PARTIES HAD ALREADY FILED A CONSOLIDATED CLASS ACTION

17   COMPLAINT AND AFTER THIS COURT HAD ALREADY RULED ON YAHOO!'S

18   FIRST MOTION TO DISMISS BACK ON AUGUST 30TH OF 2017.

19       SO LEAVE TO AMEND IS GRANTED.  THAT ALSO APPLIES TO THE

20   CAUSES OF ACTION THAT YOU WANTED TO ADD.

21       NOW, LET'S TALK ABOUT THAT IN A LITTLE MORE DETAIL.  SO I

22   WAS A LITTLE BIT BEWILDERED AT THE LAST CASE MANAGEMENT

23   CONFERENCE THAT PLAINTIFFS' COUNSEL SAID, "WELL, WE ONLY DIDN'T

24   ALLEGE ALL OF OUR CAUSES OF ACTION BECAUSE THE COURT TOLD US

25   NOT TO."

1     I'M REALLY PUZZLED.  I HAVE NEVER SAID THAT YOU SHOULDN'T

2     FILE ANY CAUSE OF ACTION THAT IS APPROPRIATE.  ALL I SAID IS

3     THAT WHEN YOU DO, WE WILL FIGURE OUT A NARROWING PROCESS.

4         AND LET ME JUST PLACE ON THE RECORD THE ANTHEM CASE, OKAY?

5     THE ANTHEM CASE HAD 80 MILLION USERS; YOU HAVE 1 TO 3 BILLION.

6     OKAY?  THEY HAD 111 NAMED PLAINTIFFS; YOU HAVE 12.  THERE WERE

7     44 ANTHEM AND BLUE CROSS DEFENDANTS; YOU HAVE EFFECTIVELY ONE

8     BECAUSE AABACO IS A WHOLLY OWNED SUBSIDIARY OF YAHOO!.  THEY

9     HAD 90 CAUSES OF ACTION, INCLUDING 82 STATE STATUTES; YOU HAVE

10    13 CAUSES OF ACTION, ONE OF WHICH WAS THE ONLINE PRIVACY

11    PROTECTION ACT FOR WHICH THERE IS NO PRIVATE RIGHT OF ACTION.

12    AND YOUR OTHER ONE IS DECLARATORY RELIEF, WHICH IS EFFECTIVELY

13    NOT EVEN A SEPARATE CAUSE OF ACTION IN SOME SENSE.

14        SO I'M -- YOU KNOW, I'M FURTHER DISAPPOINTED THAT IN YOUR

15    JOINT CASE MANAGEMENT, YOU SAY, "WELL, EVEN FOR THOSE, WE DON'T

16    REALLY WANT TO FULLY, FULLY ALLEGE THEM."

17        I'M JUST GOING TO READ FROM THE JOINT CASE MANAGEMENT

18    STATEMENT, PAGE 2, LINES 16 THROUGH 20.  "PLAINTIFFS PROPOSE

19    THAT THE SCHEDULE RELATED THERETO CAN REMAIN INTACT IF

20    PLAINTIFFS ARE PERMITTED TO LIST THE VARIOUS STATE STATUTES

21    THEY WILL BE PROCEEDING UNDER SUCH THAT THRESHOLD LEGAL ISSUES

22    SUCH AS FUTILITY AND THE CHOICE-OF-LAW ISSUE CAN BE ADDRESSED,

23    WITHOUT THE NEED FOR THE PROPOSED AMENDED PLEADING CONTAINING

24    ALL OF THE RELATED ALLEGATIONS BEING ATTACHED."

25        SO YOU'RE SAYING, YOU KNOW, IN ADDITION TO THE 13 YOU DID,

```
 1    ONE OF WHICH WAS A CAUSE OF ACTION FOR WHICH THERE'S NO PRIVATE

 2    RIGHT OF ACTION AND ANOTHER ONE IS DECLARATORY RELIEF, NOW YOU

 3    WANT TO PUT THESE IN JUST BY LISTING THE STATUTE NUMBERS

 4    WITHOUT FACTUAL ALLEGATIONS.

 5         AND I'M CONCERNED THAT ONE THING I HAVE SAID REPEATEDLY IS

 6    I WILL NOT ALLOW A CAUSE OF ACTION THAT JUST LISTS MULTIPLE

 7    STATE STATUTES.  YOU CAN'T SAY, "WELL, EVERY DATA PRIVACY

 8    STATUTE FROM THE FOLLOWING 23 STATES; EVERY CONSUMER PROTECTION

 9    STATUTE FROM THE FOLLOWING 49 STATES."

10         EVERY STATUTE HAS TO BE ITS OWN SINGLE CAUSE OF ACTION,

11    AND IF YOU HAVE MANY, THEN I WILL DO WHAT I DID IN ANTHEM,

12    WHICH IS I GAVE ANTHEM THE OPPORTUNITY TO SELECT THREE, BLUE

13    CROSS SELECTED TWO, THE PLAINTIFFS SELECTED FIVE, AND WE

14    LITIGATED THE TEN AND IT WAS NO PROBLEM THAT THERE WERE 90

15    CAUSES OF ACTION.

16         SO THAT'S -- SO LEAVE TO AMEND IS GRANTED.  ANY BRIEFING

17    IS VACATED.  I THINK IT WOULD NOT BE -- YOU KNOW, THE FEDERAL

18    RULES OF CIVIL PROCEDURE SAY LEAVE TO AMEND SHALL BE FREELY

19    GIVEN WHEN JUSTICE SO REQUIRES.  I THINK THE DISCLOSURE OF

20    2 BILLION ADDITIONAL USERS WHO WERE AFFECTED BY THE 2013 DATA

21    BREACH CERTAINLY JUSTIFIES LEAVE TO AMEND.

22         OKAY.  SO, NOW, HAVING SAID THAT, HOW MUCH TIME DO YOU

23    NEED TO FILE A SECOND CONSOLIDATED CLASS ACTION COMPLAINT?

24              MS. MORTIMER:  YOUR HONOR, IF I MAY?

25              THE COURT:  YES.
```

1          MS. MORTIMER:  FIRST, I THINK THERE MAY BE SOME

2     CONFUSION ABOUT THE RECENT ANNOUNCEMENT THAT I THINK IS WORTH

3     CLARIFICATION.

4          THE COURT:  UM-HUM.

5          MS. MORTIMER:  THE RECENT ANNOUNCEMENT ABOUT

6     3 BILLION USER ACCOUNTS CORRELATES TO ACCOUNTS, NOT USERS.

7          CONSISTENT WITH THE COURT'S ORDERS, WE HAVE PROVIDED

8     PLAINTIFFS, THE DAY AFTER THE ANNOUNCEMENT, THE ACTUAL NUMBERS

9     OF IMPACTED ACCOUNTS.

10         BUT TO PUT IT IN PERSPECTIVE, YOUR HONOR --

11             THE COURT:  UM-HUM.

12         MS. MORTIMER:  -- THERE WERE 242 MILLION ADULTS IN

13    THE U.S. IN 2013.

14         SO ALTHOUGH THESE ARE USER ACCOUNTS, MANY USERS HAVE

15    MULTIPLE ACCOUNTS; MANY ACCOUNTS ARE INACTIVE ACCOUNTS; MANY

16    ACCOUNTS ARE USED FOR TEST OR OTHER PURPOSES.

17         SO 3 BILLION USER ACCOUNTS GLOBALLY DOES NOT EQUATE TO

18    3 BILLION USERS.

19         AND CERTAINLY WITH RESPECT TO WHAT'S AT ISSUE HERE --

20             THE COURT:  SO HOW MANY USERS WERE AFFECTED?

21             MS. MORTIMER:  YOUR HONOR, WE'RE STILL IN THE --

22    WE --

23             THE COURT:  AND WHY DIDN'T -- WHY DIDN'T YAHOO! FIND

24    THIS OUT?  GIVE ME ALL THE FACTS.  IF YOU HAVE ALL THE FACTS,

25    GIVE ME ALL THE FACTS.  WHEN DID VERIZON DISCOVER THIS AND WHEN

```
 1        DID THEY DISCLOSE IT?

 2              MS. MORTIMER:  YOUR HONOR, IF I -- LET'S START FROM

 3    WHAT THE COURT ASKED WHEN WE FIRST ANNOUNCED THE 2013 BREACH IN

 4    DECEMBER.  THE COURT ASKED AT THAT TIME -- THE ANNOUNCEMENT

 5    INDICATED THAT IT WAS, QUOTE, "AT LEAST A BILLION USER

 6    ACCOUNTS."

 7          AND AT THAT TIME --

 8              THE COURT:  OKAY.  I'M NOT WORRIED ABOUT THE NUMBERS.

 9              MS. MORTIMER:  OKAY.

10              THE COURT:  TELL ME, THE ANNOUNCEMENT THAT WAS MADE

11    ON OCTOBER 3RD, 2017, WHEN DID VERIZON DISCOVER THAT IT NEEDED

12    TO MAKE THIS ANNOUNCEMENT?  THE DATE.  I DON'T WANT THE NUMBER.

13    WHAT WAS THE DATE?

14              MS. MORTIMER:  THE DATE -- THE DATA WAS CONFIRMED THE

15    DAY BEFORE THE ANNOUNCEMENT WAS MADE.

16              THE COURT:  OKAY.  AND HOW LONG HAD THEY BEEN

17    INVESTIGATING THAT BREACH?

18              MS. MORTIMER:  THE INVESTIGATION WAS LESS THAN

19    30 DAYS IN TOTAL, YOUR HONOR, AS WITH THE EARLIER PART OF THE

20    2013 BREACH.

21          AS YOU MAY RECALL, THAT INFORMATION WAS PROVIDED TO YAHOO!

22    AT THE TIME THROUGH LAW ENFORCEMENT.

23              THE COURT:  OKAY.  SO -- I'M SORRY.  LET ME -- LET ME

24    BACK UP.

25              MS. MORTIMER:  SURE.
```

```
1              THE COURT:  SO SOMETIME AROUND, WHAT, SEPTEMBER 1ST,

2       SEPTEMBER 4TH?  OR AFTER THAT DATE IS WHEN VERIZON, WHAT, HAD

3       SOME SENSE THAT THE BREACH WAS MORE EXTENSIVE THAN ORIGINALLY

4       THOUGHT?

5              MS. MORTIMER:  NOT AT ALL, YOUR HONOR.

6              THE COURT:  OKAY.

7              MS. MORTIMER:  THE QUESTION -- AS WITH THE PREVIOUS

8       BREACH, VERIZON AND YAHOO! RECEIVED INFORMATION FROM A THIRD

9       PARTY SOURCE, WHICH IS A SUBJECTIVE AND ONGOING CRIMINAL

10      INVESTIGATION.

11          AT THAT TIME, THERE WAS NO INFORMATION ONE WAY OR ANOTHER

12      AS TO WHETHER IT COULD BE VALIDATED IN A WAY THAT WOULD

13      INDICATE THAT A BROADER USER ACCOUNT BASE WAS IMPACTED THAN WAS

14      ORIGINALLY CONFIRMED.

15          AS SOON AS THE INFORMATION WAS OBTAINED, IT WAS REVIEWED

16      BY OUTSIDE FORENSIC EXPERTS, AND WORKING WITH LAW ENFORCEMENT

17      EXPERTS --

18              THE COURT:  OKAY.  SO WHEN WAS THAT THIRD PARTY

19      SOURCE NOTICE GIVEN?  YOU SAID LESS THAN 30 MONTHS -- 30 DAYS

20      BEFORE?

21              MS. MORTIMER:  LESS THAN 30 DAYS, YOUR HONOR.

22              THE COURT:  OKAY.

23              MS. MORTIMER:  AND THAT TIME WAS USED TO REVIEW AND

24      ANALYZE THE DATA.  THE DATA WAS NOT -- ACTUALLY, IT WAS MUCH

25      LESS THAN 30 DAYS THAT THEY HAD THE DATA IN THEIR POSSESSION.
```

1          THE COURT:  UM-HUM.

2          MS. MORTIMER:  THEY ANALYZED THE DATA, INCLUDING OVER

3     THE WEEKEND, UP UNTIL THE ANNOUNCEMENT, AND THEN THERE WAS ONE

4     BUSINESS DAY FROM THE TIME THE DATA WAS ANALYZED AND CONFIRMED

5     TO THE ANNOUNCEMENT.

6          BUT AS THE COURT MAY RECALL IN 2013 -- WITH RESPECT TO THE

7     2013 BREACH, IN DECEMBER WHEN THE ANNOUNCEMENT WAS PROVIDED TO

8     THE POPULATION THAT WAS IMPACTED --

9          THE COURT:  SO ARE YOU SAYING THAT WEBSITE NOTICE AND

10    PRESS RELEASE NOTICE ARE SUFFICIENT TO COMPLY WITH YOUR NOTICE

11    OBLIGATIONS?  IS THAT WHAT YOU'RE SAYING FOR THESE USERS?

12         MS. MORTIMER:  YOUR HONOR, ACCORDING TO THE STATUTE,

13    SUBSTITUTED NOTIFICATION IS ACCEPTABLE IF THERE'S MORE THAN

14    500,000 IMPACTED USERS, AND WHETHER YOU CAN'T IDENTIFY THE

15    USERS, IN WHICH YOU CAN ALSO SEND PERSONAL E-MAIL.

16         AT THAT TIME, THE SPECIFIC USER ACCOUNTS WERE NOT

17    IDENTIFIED IN A WAY IN WHICH IT ALLOWED, SO YES, THE STATUTE

18    ALLOWS SUBSTITUTED NOTIFICATION THROUGH PUBLICATION AND THROUGH

19    E-MAIL -- PARDON ME -- THROUGH WEB MAIL.

20         THE COURT:  NOW, IS THAT SUBSTITUTE OF NOTIFICATION

21    ONLY WHEN YOU DON'T HAVE OTHER FORMS OF NOTIFICATION?

22         MS. MORTIMER:  NO.  SUBSTITUTE NOTIFICATION WOULD BE

23    ACCEPTABLE IF IT'S IMPRACTICABLE TO GIVE INDIVIDUAL NOTICE.

24         THE COURT:  AND IT IS IMPRACTICABLE?  YOU HAVE ALL

25    THESE USER'S E-MAIL ACCOUNTS, DO YOU NOT?  AT LEAST THEIR

1      YAHOO! E-MAIL ACCOUNTS, DO YOU NOT?

2           MS. MORTIMER:  NO, YOUR HONOR.  IN MANY CASES USERS

3      DELETE THEIR E-MAIL ACCOUNTS, PARTICULARLY GIVEN THAT THE

4      BREACHES AT QUESTION WERE SEVERAL YEARS OLD.  SO THE BEST FORM

5      OF NOTICE WOULD BE THE PUBLIC FORM OF NOTICE THAT THE STATUTE

6      ALLOWS, THE SUBSTITUTED NOTIFICATION.

7           THE COURT:  I DISAGREE WITH THAT.

8      ALL RIGHT.  WHETHER IT'S 242 MILLION VERSUS 3 BILLION,

9      EITHER WAY, THERE ARE NEW USERS THAT HAVE BEEN AFFECTED AND

10     THAT IS A CHANGE IN CIRCUMSTANCE THAT JUSTIFIES LEAVE TO AMEND.

11     OKAY.  SO THE RULING REMAINS.

12          MS. MORTIMER:  I UNDERSTAND, YOUR HONOR.

13     MAY I MAKE ONE MORE CLARIFICATION --

14          THE COURT:  LET'S TALK ABOUT -- I'D LIKE TO GO TO THE

15     CASE SCHEDULE.

16     SO HOW MUCH TIME DO YOU NEED?  WHEN ARE YOU GOING TO TAKE

17     THE 30(B)(6) DEPOSITION?  YOU'LL GET TWO, TWO DEPOSITIONS, ONE

18     NOW BECAUSE WE NEED TO FIGURE OUT WHAT IS THE FULL EXTENT OF

19     THIS SUCH THAT YOU CAN AMEND YOUR COMPLAINT WITH WHATEVER

20     CAUSES OF ACTION ARE APPROPRIATE.

21          MR. YANCHUNIS:  I WAS LOOKING TO TAKE IT IN THE NEXT

22     TWO WEEKS, BUT IF --

23          THE COURT:  OKAY.

24          MR. YANCHUNIS:  IF THE COURT WERE TO ALLOW US UNTIL

25     NOVEMBER THE 10TH TO FILE THE SECOND AMENDED COMPLAINT, THEN --

1        THE COURT:  WELL, I WOULD GIVE YOU MORE TIME IF YOU

2   NEED TO -- I MEAN, I AM DISAPPOINTED BECAUSE MY ORDER SAID THAT

3   I WANTED YAHOO! -- I'M GOING TO JUST READ IT.  "YAHOO! SHALL

4   EXPEDITE ITS PRODUCTION OF DISCOVERY REGARDING THE RECENT DATA

5   BREACH DISCLOSURE AND INCLUDE A PROPOSAL TO DO SO IN THE

6   OCTOBER 11, 2017 JOINT CASE MANAGEMENT STATEMENT."

7        YAHOO! HAS NOT DONE THAT.  THERE IS NOTHING, OTHER THAN

8   SAYING THIS IS NO BIG DEAL --

9        MS. MORTIMER:  YOUR HONOR, IF I MAY ADDRESS THAT

10  POINT?

11       THE COURT:  THERE'S NOT ANY, ANY PROPOSAL TO EXPEDITE

12  DISCOVERY.  SO LET'S JUST FIGURE OUT THE SCHEDULE RIGHT NOW.

13       YOU'VE WAIVED YOUR OPPORTUNITY.  I TOLD YOU TO PUT IN A

14  PROPOSAL TO EXPEDITE THE DISCOVERY.  YOU CHOSE NOT TO DO SO.

15  THAT'S A WAIVER.

16       SO LET'S JUST FIGURE OUT WHAT'S THE SCHEDULE.

17       MS. MORTIMER:  YOUR HONOR, WE DID PROVIDE THE

18  DISCOVERY WITHIN THE DAY THE COURT REQUESTED IT, AND WE'VE ALSO

19  PROVIDED --

20       THE COURT:  YOU PROVIDED A LETTER.  YOU PROVIDED ONE

21  LETTER.

22       MS. MORTIMER:  WHICH HAS THE ONLY DATA WE HAVE ABOUT

23  THE USER ACCOUNTS.

24       BUT WE'VE ALSO PRODUCED OVER 8,000 --

25       THE COURT:  OKAY.  YOU SAID THAT THERE WAS ALL THIS

```
 1    VALIDATION THAT WAS DONE THE MONTH BEFORE THE ANNOUNCEMENT ON

 2    OCTOBER 3RD.  I ASSUME THAT WAS NOT ATTACHED TO THE LETTER.

 3              MS. MORTIMER:  NO, YOUR HONOR.

 4         WHAT I SAID WAS THAT THE DATA WAS OBTAINED IN THAT PERIOD

 5    OF TIME.  WE DID NOT HAVE IT THAT ENTIRE PERIOD OF TIME, AND

 6    THERE'S NO WRITTEN REPORT OF THAT YET.

 7         HOWEVER, WE HAVE PRODUCED FORENSIC REPORTS FROM 2013.

 8              THE COURT:  NO, NO.  I WANT -- I WANT THE INFORMATION

 9    THAT VERIZON USED TO MAKE ITS DISCLOSURE ON OCTOBER 3RD.

10         AND YOU'RE SAYING YOU'VE GIVEN THEM NO DOCUMENTATION,

11    YOU'VE GIVEN THEM ONE LETTER.

12         LET ME SEE IT.  CAN I SEE THE LETTER?

13              MS. MORTIMER:  YES, YOUR HONOR.

14              THE COURT:  DO YOU HAVE IT?

15              MS. MORTIMER:  I DO.

16              THE COURT:  ALL RIGHT.  SO LET'S JUST -- HOW MUCH

17    TIME DO YOU NEED TO AMEND YOUR COMPLAINT?  AND THIS -- IF YOU

18    NEED ADDITIONAL DISCOVERY, LET'S DO IT.

19              MR. YANCHUNIS:  IF --

20              MS. MORTIMER:  ARE YOU -- YOUR HONOR, BEFORE WE

21    STARTED, COUNSEL REPRESENTED THAT THEY WERE INTENDING TO

22    WITHDRAW THEIR REQUEST TO AMEND THE COMPLAINT, SO IF WE COULD

23    CONFER FOR A MOMENT ABOUT WHETHER OR NOT THEY INTEND TO STILL

24    AMEND TO ADD ADDITIONAL CLAIMS, THAT MIGHT BE HELPFUL.

25              MR. YANCHUNIS:  I -- I THINK, IN LIGHT OF THE COURT'S
```

1    RULING, WE'RE GOING TO PROCEED FORWARD WITH AMENDING THE

2    COMPLAINT, AND WE CAN DO THAT BY NOVEMBER THE 10TH, ASSUMING

3    THAT WE CAN GET THE DISCOVERY THAT THE COURT HAS ALLOWED US IN

4    TERMS OF THE PRODUCTION OF THE MATERIAL THAT THE COURT HAS

5    INDICATED HAS NOT BEEN PRODUCED, AS WELL AS A DEPOSITION OF A

6    CORPORATE REPRESENTATIVE.

7         SO, YOU KNOW, I'M VERY SENSITIVE TO YOUR SCHEDULE,

8    OBVIOUSLY, AND I'LL DO EVERYTHING I CAN TO ACCOMMODATE THAT.

9         THE COURT:  SO IN YOUR JOINT CASE MANAGEMENT

10   STATEMENT, YOU THOUGHT -- I'M JUST GOING TO READ IT,

11   "PLAINTIFFS BELIEVE THE INCREASED SCOPE IMPACTS HOW EXISTING

12   CLAIMS WILL BE PURSUED, THEIR ABILITY TO ALLEGE FRAUD-BASED OR

13   OTHER INTENTIONAL TORTS, THE MATERIALITY OF ANY OMISSIONS

14   REGARDING DATA SECURITY, AS WELL AS THE AVAILABILITY OF

15   ADDITIONAL TYPES OF DAMAGES, SUCH AS PUNITIVE DAMAGES."

16        SO YOU'RE SAYING NOW YOU'RE NOT INTERESTED IN PURSUING

17   THAT?

18        MR. YANCHUNIS:  NO, NO.

19        THE COURT:  THEN WHAT ARE YOU SAYING?  YOU'RE GOING

20   TO AMEND YOUR COMPLAINT?

21        MR. YANCHUNIS:  THAT'S MS. MORTIMER'S

22   MISCOMMUNICATION, OR MISUNDERSTANDING.

23        WHAT I RELATED TO HER WAS IN CONNECTION WITH OTHER STATE

24   DATA BREACH STATUTES.

25        MS. MORTIMER:  YES, YOUR HONOR.

```
 1              MR. YANCHUNIS:  NOT A FRAUD-BASED CLAIM, NOT A CLAIM

 2    FOR PUNITIVE DAMAGES, WHICH WE BELIEVE WE WOULD LIKE TO EXPLORE

 3    THE OPPORTUNITY.

 4              THE COURT:  ALL RIGHT.  SO YOU WANT TO EXPLORE

 5    WHETHER YOU WOULD AMEND THE COMPLAINT IN LIGHT OF THE

 6    OCTOBER 3RD ANNOUNCEMENT?

 7              MR. YANCHUNIS:  ABSOLUTELY.

 8              THE COURT:  BUT YOU ARE NOT GOING TO PURSUE WHAT YOU

 9    RAISED AT THE LAST CMC, WHICH WAS SUBSTITUTING IN OTHER STATE

10    STATUTES FOR THE -- REMIND ME WHICH.  WHICH STATUTE WERE YOU

11    SUBSTITUTING IN FOR?

12              MR. YANCHUNIS:  THESE WERE --

13              MS. MORTIMER:  THE CRA.

14              THE COURT:  NON-CALIFORNIA STATUTES.

15              MR. YANCHUNIS:  OTHER STATE BREACH NOTIFICATION

16    STATUTES.

17              THE COURT:  OKAY.  THAT'S FINE.

18        I MEAN, YOU JUST HAVE AN OPPORTUNITY TO AMEND YOUR

19    COMPLAINT.  YOU DECIDE WHAT GOES IN OR NOT.  IF YOU WANTED TO

20    ADD THOSE, ESPECIALLY BASED ON THERE MAY BE POTENTIAL

21    ADDITIONAL USERS FROM OTHER NON-CALIFORNIA STATES --

22              MR. YANCHUNIS:  YES, MA'AM.

23              THE COURT:  -- I'VE GIVEN YOU LEAVE TO AMEND.  BUT

24    YOU CAN ALWAYS CHOOSE NOT TO DO THAT.

25              MR. YANCHUNIS:  YES, MA'AM.  THANK YOU.
```

```
 1              THE COURT:  YES.  OKAY, SO WHEN ARE YOU GOING TO

 2   AMEND?  CAN YOU -- I JUST DON'T WANT TO HAVE TO BE IN A

 3   SITUATION WHERE WE ARE CONTINUALLY SORT OF GOING BACK TO SQUARE

 4   ONE.

 5              MR. YANCHUNIS:  ABSOLUTELY.

 6              THE COURT:  I -- I HOPE THERE AREN'T ANY FURTHER

 7   DISCLOSURES.

 8              MS. MORTIMER:  YOUR HONOR, THE SCHEDULE THAT WE

 9   PROPOSED WAS IN LIGHT OF -- IT WAS MADE AFTER THE OCTOBER 3RD

10   DISCLOSURE IN COOPERATION WITH THE PLAINTIFFS' COUNSEL.  WE

11   TRIED TO TAKE EXACTLY THESE ISSUES INTO ACCOUNT AND, OF COURSE,

12   THIS COURT'S SCHEDULE SO THAT IT WOULD NOT UNDULY DELAY OR

13   IMPOSE ON THE SCHEDULE.

14              THE COURT:  SO LET ME -- LET ME HEAR FROM

15   MR. YANCHUNIS.

16       I -- I HOPE THERE ARE NO FURTHER DISCLOSURES WHICH MAKE US

17   HAVE TO GO BACK TO STEP ONE, BUT WE ARE CURRENTLY BACK AT STEP

18   ONE.

19              MR. YANCHUNIS:  YES, MA'AM.

20              THE COURT:  AND I WOULD LIKE THIS TO BE THE

21   DEFINITIVE COMPLAINT, OKAY?  SO WHEN -- I'M TELLING YOU, IF YOU

22   NEEDED MORE TIME THAN NOVEMBER 10TH, SO BE IT.  YOU WOULD GET

23   IT.  HOW MUCH TIME DO YOU NEED TO MAKE THIS HOPEFULLY --

24   HOPEFULLY, IF THERE'S NO FURTHER DISCLOSURES, THE SORT OF

25   DEFINITIVE COMPLAINT?  AND THEN WE CAN OPERATE FROM THERE.
```

1          MR. YANCHUNIS:  YOUR HONOR, I AM FINE WITH

2    NOVEMBER THE 10TH ON THE BASIS THAT THE COURT HAS ORDERED THAT

3    EXPEDITED DISCOVERY.  I HAVE NO REASON TO DOUBT THAT

4    MS. MORTIMER AND HER TEAM WILL BE RESPONSIVE --

5          THE COURT:  NOW --

6          MR. YANCHUNIS:  -- AND COOPERATIVE.

7          THE COURT:  -- YOU SHOULD ALSO -- I WANT TO SET A

8    SCHEDULE FOR YOU TO -- WHETHER YOU NEED TO SERVE ANY ADDITIONAL

9    DISCOVERY REQUESTS WRITTEN AND TO GET RESPONSES BACK ON AN

10   EXPEDITED BASIS, SO LET'S SET THAT RIGHT NOW.

11         WHEN ARE YOU GOING TO BE ABLE TO SERVE -- HAVE YOU SERVED

12   ANY ADDITIONAL DISCOVERY REQUESTS SINCE THE OCTOBER 3RD

13   ANNOUNCEMENT?

14         MR. YANCHUNIS:  NO, OTHER THAN THE OUTLINED 30(B)(6).

15   WE WOULD FILE THAT ON MONDAY.  WE'D SERVE THAT ON MONDAY.

16         MS. MORTIMER:  YOUR HONOR, THE EXISTING DISCOVERY

17   REQUESTS ARE CRAFTED BROAD ENOUGH TO INCLUDE, AND WE PRODUCED

18   DOCUMENTS RELATED TO, THE 2013 BREACH.

19         THE COURT:  WELL, WHAT CONCERNS ME IS YOU'RE SAYING

20   "WE'RE NOT GOING TO GIVE HIM ANY DOCUMENTS ABOUT THE

21   INVESTIGATION OF 30 DAYS THAT LED TO THE OCTOBER 3RD

22   ANNOUNCEMENT UNTIL A REPORT IS READY."  AND --

23         MS. MORTIMER:  THAT'S NOT --

24         THE COURT:  YOU KNOW HOW A REPORT GOES.

25         MS. MORTIMER:  YEAH, THAT'S NOT --

1        THE COURT:  THAT COULD BE SOME TIME.  SO WHEN ARE YOU

2   GOING TO PRODUCE ANY DOCUMENTS?  CERTAINLY THERE'S SOME -- I

3   CAN'T IMAGINE EVERYONE IS DOING EVERYTHING ORALLY AT VERIZON

4   AND YAHOO! RIGHT NOW ABOUT THE OCTOBER 3RD DISCLOSURE.

5        MS. MORTIMER:  IT WAS A FORENSIC EXAMINATION OF FILES

6   PROVIDED TO US.

7        THE COURT:  OKAY.  SO CAN YOU --

8        MS. MORTIMER:  THAT'S PART OF AN ACTIVE LAW

9   ENFORCEMENT INVESTIGATION, WHICH PUTS SOME LIMITATIONS, YOUR

10  HONOR.

11       HOWEVER, WHAT WE HAVE PROVIDED IS WHAT WE HAVE, WHICH IS

12  THE IMPACTED POPULATION.

13       WE'VE ALSO PROVIDED THE FORENSIC REPORTS THAT WE HAVE

14  WHICH REFLECT MOST --

15       THE COURT:  OKAY.  SO WHAT I'M HEARING IS YOU ARE NOT

16  GOING TO PRODUCE ANYTHING ELSE.  YOU'VE PRODUCED THE USER

17  INFORMATION IN THE LETTER OF OCTOBER 6TH, AND THERE'S NOTHING

18  ELSE THAT YOU'RE GOING TO PROVIDE FOR THEM.

19       MS. MORTIMER:  YOUR HONOR, I WILL CERTAINLY

20  INVESTIGATE WHETHER THERE'S ANY OTHER DISCOVERABLE MATERIAL

21  THAT WE CAN PRODUCE, AND WE WILL DO SO ON AN EXPEDITED BASIS IF

22  THERE IS.

23       HOWEVER, WE HAVE PRODUCED THE FORENSIC REPORTS THAT WE

24  HAVE THAT WERE GENERATED ON OR NEAR THE TIME OF THE 2013

25  BREACH, AS WELL AS DOCUMENTS RELATED TO SECURITY AT THAT TIME.

```
 1              THE COURT:  BUT NONE OF THAT ALERTED VERIZON AND

 2      YAHOO! AS TO POTENTIALLY AN ADDITIONAL 2 BILLION ACCOUNTS BEING

 3      AFFECTED.

 4              MS. MORTIMER:  AND THE REASON FOR THAT, YOUR HONOR,

 5      IS BECAUSE THERE ARE NO ARTIFACTS ON THE NETWORK SYSTEM ON THE

 6      2013 BREACH, AND YAHOO! WAS ONLY ALERTED TO THE BREACH THROUGH

 7      LAW ENFORCEMENT.

 8              THE COURT:  OKAY.  WHAT I -- WHAT I -- WE DO A LOT OF

 9      CRIMINAL CASES HERE AS WELL, RIGHT?  I DON'T UNDERSTAND, YOU'RE

10      SAYING, "ANY EVIDENCE THAT WE'VE BEEN BREACHED, WE CANNOT TURN

11      OVER."

12              MS. MORTIMER:  THAT'S NOT WHAT I'M SAYING, YOUR

13      HONOR.

14              THE COURT:  OKAY.  WHAT ARE YOU SAYING?  BECAUSE I

15      DON'T THINK A CRIMINAL INVESTIGATION GIVES YOU FULL

16      PRIVILEGE --

17              MS. MORTIMER:  AND THAT'S NOT WHAT I'M SAYING.

18              THE COURT:  -- NOT TO COMPLY WITH CIVIL DISCOVERY.

19              MS. MORTIMER:  I APOLOGIZE IF I MISCOMMUNICATED THAT.

20              THE COURT:  OKAY.

21              MS. MORTIMER:  WHAT I'M SAYING IS IN THIS INSTANCE,

22      WE'VE PRODUCED THE DOCUMENTS IN OUR POSSESSION OF FORENSIC

23      REPORTS THAT ARE CONTEMPORANEOUS WITH THE BREACH AND --

24              THE COURT:  BUT YOU'RE SAYING -- BUT THAT DID NOT

25      GIVE YAHOO! AND VERIZON -- IT DIDN'T MAKE THEM AWARE OF
```

1      THESE --

2               MS. MORTIMER:  IT DID NOT, YOUR HONOR.

3               THE COURT:  -- WHAT DO YOU WANT TO CALL THEM,

4      2 BILLION ACCOUNTS?

5               MS. MORTIMER:  USER ACCOUNTS, YOUR HONOR.

6               THE COURT:  USER ACCOUNTS, OKAY.

7           SO IT DIDN'T ALERT VERIZON AND YAHOO! TO THESE 2 BILLION

8      USER ACCOUNTS, SO I JUST DON'T SEE -- YOU UNDERSTAND WHAT I'M

9      TRYING TO DO, RIGHT?

10              MS. MORTIMER:  ABSOLUTELY, YOUR HONOR.

11              THE COURT:  WE HAVE ALREADY GONE THROUGH A

12     CONSOLIDATED CLASS ACTION COMPLAINT; I HAVE ALREADY DONE, WHAT,

13     A, LIKE, 92-PAGE ORDER -- 93-PAGE ORDER ON A MOTION TO DISMISS.

14          SO IT'S JUST DISAPPOINTING NOW TO HAVE TO GO BACK TO

15     SQUARE ONE AND GET ANOTHER COMPLAINT.

16          AND THEN WHAT I'M HEARING FROM YOU IS, "WELL, YOU'RE NOT

17     GOING TO GET ANYTHING ELSE FROM US BECAUSE WE GAVE IT TO YOU.

18     WE GAVE YOU EVERYTHING WE HAD IN AUGUST 2013, EVEN THOUGH IT

19     DIDN'T ALERT VERIZON OR YAHOO! TO THE FACT THAT 2 BILLION USER

20     ACCOUNTS WERE AFFECTED.  AND THEN EVERYTHING ELSE IS SUBJECT TO

21     CRIMINAL INVESTIGATION, SO WE'RE ONLY GOING TO GIVE THEM THE

22     USER INFORMATION WHICH I ALREADY PROVIDED IN A LETTER OF

23     OCTOBER 6 TH."

24              MS. MORTIMER:  NO, YOUR HONOR.  LET ME CLARIFY.

25              THE COURT:  SO LET ME JUST SET SOME DATES, OKAY, AND

1      I WILL HAVE YOU GUYS COME IN EVERY TWO WEEKS BECAUSE I'M GOING

2      TO MONITOR THIS.

3              MS. MORTIMER:  IF WE HAVE INFORMATION --

4              THE COURT:  SO LET'S COME IN EVERY TWO WEEKS.  LET ME

5      HEAR, WHEN ARE YOU GOING TO SERVE DISCOVERY REQUESTS AND WHEN

6      ARE THE RESPONSES GOING TO BE SERVED?

7          AND THEN I WILL MAKE YOU COME IN EVERY TWO WEEKS, OR AT

8      LEAST FILE A JOINT DISCOVERY STATUS REPORT EVERY TWO WEEKS,

9      BECAUSE THIS ALREADY IS BRINGING US BACK TO SQUARE ONE.  I'D

10     LIKE TO PREVENT FURTHER DELAYS IN THE CASE.  ALL RIGHT?

11         SO WHEN ARE YOU -- I'D LIKE YOU TO VERY PROMPTLY SERVE

12     WHAT -- I MEAN, I'M HEARING YOU WANT TO AMEND IN, WHAT --

13             MR. YANCHUNIS:  BY THE 10TH OF NOVEMBER.

14             THE COURT:  -- FOUR WEEKS.

15             MR. YANCHUNIS:  YES, MA'AM.

16             THE COURT:  SO I'M DISAPPOINTED TO HEAR THAT YOU

17     HAVEN'T SERVED ANY DISCOVERY.  YOU HAVEN'T EVEN -- IT SOUNDS

18     LIKE YOU HAVEN'T EVEN DRAFTED YOUR 30(B)(6) NOTICE.  IS IT

19     DRAFTED?

20             MR. YANCHUNIS:  WELL, NO.  BUT THE AREAS ARE

21     ARTICULATED IN THE REPORT THAT WE SUBMITTED TO THE COURT, WHICH

22     I GAVE TO THE OTHER SIDE.

23             THE COURT:  WHAT'S IN THERE?  I'M SORRY, I DON'T

24     UNDERSTAND THAT.

25             MR. YANCHUNIS:  THE AREAS OF INQUIRY REQUIRED BY

1      30(B)(6) ARE ACTUALLY ARTICULATED IN THE STATEMENT ITSELF.

2              THE COURT:  WELL, THEN WHY DO YOU NEED UNTIL MONDAY

3      TO SERVE THE 30(B)(6) NOTICE --

4              MR. YANCHUNIS:  NO, I CAN SERVE THAT --

5              THE COURT:  -- IF IT'S ALREADY READY TO GO?

6              MR. YANCHUNIS:  I CAN SERVE THAT NOW.

7          IT'S THE QUESTION OF THE REQUEST TO PRODUCE.  I'LL SERVE

8      THAT ON MONDAY.

9              THE COURT:  ALL RIGHT.  SO THE 30(B)(6) NOTICE -- I

10     MEAN, YOU'VE GOT FOUR WEEKS.  YOU NEED TO GET THIS DISCOVERY SO

11     THAT YOU CAN AMEND THIS COMPLAINT IN TIME.

12             MR. YANCHUNIS:  ABSOLUTELY, YOUR HONOR.

13             THE COURT:  SO, YOU KNOW, THE FIRST CASE THAT WAS

14     FILED BEFORE ME WAS FILED SEPTEMBER 22ND OF 2016, SO WE ARE

15     ALREADY WELL OVER A YEAR AND WE'RE TALKING ABOUT NOW AMENDING

16     THE COMPLAINT.

17         SO --

18             MS. MORTIMER:  AND A NUMBER -- A LOT OF DISCOVERY HAS

19     BEEN PRODUCED, YOUR HONOR.  AND TO CLARIFY, IF THERE IS

20     DISCOVERABLE MATERIAL, WHICH IS LIMITED BECAUSE THERE AREN'T

21     ARTIFACTS ON THE YAHOO! SYSTEM, WE WILL ABSOLUTELY PRODUCE IT

22     ON AN EXPEDITED BASIS.

23             THE COURT:  ALL RIGHT.  NOW, IF THEY MAKE A CRIMINAL

24     INVESTIGATION PRIVILEGE OBJECTION, THEN I WANT YOU TO LITIGATE

25     THAT BEFORE THE DISCOVERY JUDGE IN THIS CASE, WHO'S

1          JUDGE COUSINS.  OKAY?

2              ALL RIGHT.  SO THE 30(B)(6) NOTICE WILL BE -- IT SHOULD BE

3      SERVED TODAY.

4              MR. YANCHUNIS:  IT'LL BE SERVED TODAY.

5              THE COURT:  SERVE IT TODAY.

6              SO ANY OTHER DOCUMENT REQUESTS OR OTHER DISCOVERY REQUESTS

7      NEED TO BE SERVED WHEN?  WHEN ARE YOU GOING TO DO THAT?

8              MR. YANCHUNIS:  I'LL DO IT BY MONDAY.  BUT IF THE

9      COURT WANTS ME TO DO IT THIS WEEKEND, SATURDAY OR SUNDAY --

10             THE COURT:  MONDAY IS FINE.  MONDAY IS OCTOBER 16TH.

11             MR. YANCHUNIS:  OKAY.

12             THE COURT:  OKAY.  NOW, LET'S SET A DATE BY WHICH --

13     I MEAN, THIS -- THAT'S WHY I'M WONDERING HOW YOU'RE FIGURING

14     NOVEMBER 10TH IS A DOABLE DATE.  I WOULD EXPECT THAT YAHOO!

15     NEEDS AT LEAST TWO WEEKS FOR DISCOVERY RESPONSES, SO I'D SAY

16     OCTOBER 30TH.

17             MS. MORTIMER:  AND, YOUR HONOR, ARE WE TALKING ABOUT

18     DISCOVERY RESPONSES THAT ARE SPECIFIC TO THE OCTOBER 3RD

19     DISCLOSURE?

20             THE COURT:  I WOULD SAY WHATEVER IS NEEDED TO AMEND

21     THE COMPLAINT AT THIS POINT.  IF WE'RE GOING TO HAVE A

22     NOVEMBER 10TH DEADLINE FOR AMENDMENT OF THE COMPLAINT, WE NEED

23     THAT DISCOVERY.

24             MS. MORTIMER:  YOUR HONOR, THE PARTIES HAVE NOT --

25     ALTHOUGH DISCOVERY HAS BEEN ONGOING AND WE HAVE PRODUCED OVER

1    8,000 PAGES OF DOCUMENTS, INCLUDING THE MOST TAILORED TO THE

2    SPECIFIC QUESTIONS OF THE BREACH, THE PARTIES HAVE NOT

3    FINALIZED THE SEARCH TERMS, SO IT WOULD BE DIFFICULT TO PRODUCE

4    EVERYTHING THAT MAY BE RESPONSIVE BY THAT DATE.

5         THE COURT:  SO LET'S MOVE THE NOVEMBER 10TH DATE OUT.

6         MR. YANCHUNIS:  YES, YOUR HONOR.

7         THE COURT:  IT'S LOOKING LIKE THAT'S GOING TO BE NOT

8    FEASIBLE.

9         MR. YANCHUNIS:  YES, YOUR HONOR.

10         THE COURT:  ALL RIGHT.  SO TELL ME WHEN IT'S GOING TO

11    BE -- SO NO SEARCH TERMS HAVE BEEN AGREED TO YET?

12         MS. MORTIMER:  SEARCH TERMS HAVE BEEN AGREED TO, YOUR

13    HONOR, BUT THEY HAVEN'T BEEN FINALIZED YET.  SO I BELIEVE

14    THERE'S STILL A FEW OUTSTANDING --

15         THE COURT:  SO WHAT'S THE DIFFERENCE BETWEEN "AGREED

16    TO" AND "FINALIZED"?  WHY CAN'T YOU PRODUCE WITH WHAT'S BEEN

17    AGREED TO?  HAS ANYTHING BEEN PRODUCED WITH REGARD TO WHAT

18    SETTLEMENT TERMS HAVE BEEN -- OR SEARCH TERMS HAVE BEEN AGREED

19    TO?

20         MS. MORTIMER:  YES, YOUR HONOR.

21         MR. YANCHUNIS:  WE RECEIVED 10,000 PAGES OF

22    DOCUMENTS, APPROXIMATELY, INCLUDING THE REPORTS THAT SHE

23    INDICATED.

24         THE COURT:  UM-HUM.

25         MS. MORTIMER:  WHICH ARE ALL THE FORENSIC REPORTS

```
 1        THAT ARE CONTEMPORANEOUS, YOUR HONOR, AS WELL AS THE REPORT

 2        RELATED TO THE 2014 BREACH.

 3               THE COURT:  OKAY.  10,000 PAGES FOR A CASE OF THIS

 4        COMPLEXITY AND MAGNITUDE IS NOT A LARGE NUMBER.

 5               MR. YANCHUNIS:  AND THERE'S -- I DO NOT DISPUTE THAT.

 6           AND I WILL TELL YOU THAT THEY DON'T POINT TO THE PROBLEM

 7        THAT WE'RE HERE TODAY ABOUT, AND THAT IS WHY THIS WASN'T

 8        DISCOVERED IN 2013, '14, '15, '16.

 9           I MEAN, I BEAR YOUR FRUSTRATION AND I'M --

10               THE COURT:  WELL, ALL RIGHT.  I'M SORRY.  I'M GOING

11        TO HAVE TO MANAGE THIS CASE MORE CLOSELY THAN I THOUGHT.  I

12        DIDN'T REALIZE SEARCH TERMS HAVE NOT BEEN AGREED TO YET.

13           ALL RIGHT.  SO GIVE ME A DEADLINE BY WHICH YOU'RE GOING TO

14        FINALIZE YOUR SEARCH TERMS.

15               MR. YANCHUNIS:  NEXT --

16               MS. MORTIMER:  I THINK MOST SEARCH TERMS --

17               THE COURT:  AND I'M GOING TO HAVE YOU FILE THEM.

18        FILE THEM WITH THE COURT.

19               MR. YANCHUNIS:  YES, MA'AM.

20               THE COURT:  I WANT THEM PART OF THE RECORD.

21           SO WHEN ARE YOU GOING TO FILE YOUR FINALIZED SEARCH TERMS?

22        IS THIS A MS. TADLER CONVERSATION?

23               MR. YANCHUNIS:  BY NEXT FRIDAY.

24               THE COURT:  OKAY.  THAT IS OCTOBER 20TH.

25               MR. YANCHUNIS:  YES, MA'AM.
```

1          THE COURT:  ALL RIGHT.  WHAT ELSE IS OUTSTANDING THAT

2    WE NEED TO GET SO THAT WE CAN HAVE, HOPEFULLY, A DEFINITIVE

3    CONSOLIDATED AMENDED COMPLAINT SO WE CAN MOVE FORWARD FROM

4    THERE?  WHAT ELSE?

5          SO IF YOU FINALIZE THE TERMS ON THE 20TH, THEN WHEN CAN WE

6    GET THIS DISCOVERY?  HOW MUCH OF THE DISCOVERY WITH REGARD TO

7    AGREED TO SEARCH TERMS IS STILL OUTSTANDING?

8          MS. MORTIMER:  YOUR HONOR, WE SPECIFICALLY AND

9    INTENTIONALLY PRIORITIZED THE PRODUCTION, EVEN THOUGH WE HADN'T

10   FINALIZED THE TERMS, TO THE INFORMATION WE HAD THAT'S MOST

11   RELEVANT TO THE BREACHES.

12         THE COURT:  SO IS THE ANSWER NONE?

13         MS. MORTIMER:  NO, YOUR HONOR.

14         THE COURT:  THE ANSWER IS NONE?

15         MS. MORTIMER:  NO, YOUR HONOR.

16         THE COURT:  HOW MUCH IS -- I JUST WANT SPECIFIC

17   ANSWERS.

18         MS. MORTIMER:  THE 10,000 PAGES, YOUR HONOR, IS ALL

19   RESPONSIVE TO WHAT WE ANTICIPATE TO BE THE MAIN SEARCH TERMS.

20         AND WE DON'T ANTICIPATE THAT COMPLETION OF DISCOVERY, NOR

21   WOULD IT BE TYPICAL TO COMPLETE DISCOVERY, PRIOR TO FINALIZING

22   THE COMPLAINT.

23         IF THE COURT'S CONCERNED THAT THERE'S ADDITIONAL

24   INFORMATION --

25         THE COURT:  10,000 PAGES OF DISCOVERY IN A CASE OF

1    THIS MAGNITUDE IS WOEFULLY SMALL.  10,000 PAGES?

2                MS. TADLER:  YOUR HONOR, THIS IS --

3                THE COURT:  YEAH.

4                MS. TADLER:  THIS IS ARIANA TADLER.  IF I MAY?

5        WE ARE EAGER TO RESOLVE THE DISCUSSIONS ABOUT THE SEARCH

6    TERMS AND CERTAINLY WILL COMPLETE THAT BY THE DATE THAT

7    MR. YANCHUNIS HAS INDICATED.

8        WE HAVE EVERY EXPECTATION, AND I HOPE THAT WE'RE RIGHT,

9    THAT ONCE THOSE SEARCH TERMS ARE APPLIED, THERE'S AN

10   EXPECTATION THAT THE VOLUME OF DATA TO BE PRODUCED IN THIS CASE

11   IS EXTREMELY LARGE.

12               THE COURT:  ALL RIGHT.  TELL ME WHEN THAT'S GOING TO

13   BE PRODUCED.

14               MS. TADLER:  WE'RE READY TO GO.

15               MS. MORTIMER:  BUT, YOUR HONOR, AGAIN, WE THINK WE

16   CAN, AND HAVE, AND WILL EXPEDITE INFORMATION RELATED TO THE

17   2013 BREACH.

18               THE COURT:  NO.  I WANT A DATE.

19               MS. MORTIMER:  BUT DISCOVERY SHOULDN'T BE FINALIZED

20   BEFORE THE AMENDMENT OF THE COMPLAINT GIVEN THE VOLUME AND THE

21   SIZE AND THE COMPLEXITY.  IS IT IMPORTANT THAT THE PLAINTIFF --

22               THE COURT:  YOU'VE ONLY PRODUCED 10,000 PAGES?  THE

23   MDL PANEL TRANSFERRED THIS CASE LAST YEAR.  IT IS OCTOBER

24   THE 13TH.

25               MS. MORTIMER:  YOUR HONOR, WE HAVE BEEN WORKING

```
 1      COOPERATIVELY --

 2              THE COURT:  ALL RIGHT.  LET ME -- LET ME -- ALL

 3      DOCUMENTS RESPONSIVE TO THE DISCOVERY REQUESTS THAT WILL BE

 4      SERVED ON OCTOBER 16TH MUST BE PRODUCED BY NOVEMBER THE 13TH.

 5      AND THAT INCLUDES INTERROGATORIES, THAT INCLUDES REQUESTS FOR

 6      ADMISSIONS.

 7              SO ALL -- I WOULD SAY ALL DISCOVERY RESPONSIVE TO

 8      DISCOVERY REQUESTS SERVED ON OCTOBER 16TH.  SO THAT WILL NOT BE

 9      THE FULL UNIVERSE, BUT IT SHOULD BE RESPONSIVE TO THIS LATEST

10      DISCLOSURE.

11              AND I DON'T WANT TO HEAR, "WELL, BUT WE ALREADY GAVE THEM

12      WHAT WE HAD FROM AUGUST OF 2013," BECAUSE THAT OBVIOUSLY WASN'T

13      SUFFICIENT.

14              MS. MORTIMER:  YOUR HONOR, WE WILL --

15              THE COURT:  IT DIDN'T PUT YOUR CLIENT ON NOTICE OF

16      2 BILLION USER ACCOUNTS, OKAY?

17              MS. MORTIMER:  YOUR HONOR, WE WILL PRODUCE ANY

18      DISCOVERY WE HAVE RESPONSIVE AND RELATED TO THE RECENT

19      ANNOUNCEMENT BY THE DEADLINE SET AND RESPONSIVE TO THE REQUESTS

20      MADE.

21              THE COURT:  NO, YOU'RE NOT GOING TO NARROW IT.  ALL

22      DISCOVERY RESPONSIVE TO THE DISCOVERY REQUESTS SERVED ON

23      OCTOBER 16, 2017, IS DUE ON NOVEMBER 13TH.

24              MS. MORTIMER:  YOUR HONOR, WITHOUT SEEING THE BREADTH

25      OF THE REQUEST, I CAN'T GUARANTEE THAT WE CAN PRODUCE IT IN
```

```
 1        THAT TIMEFRAME.  PRESUMABLY COUNSEL WILL NARROW IT TO WHAT IS

 2        NECESSARY RELATED TO THE MOST RECENT BREACH.

 3                 THE COURT:  WELL, THAT'S ACTUALLY GIVING MORE TIME

 4        THAN YOU WOULD NORMALLY HAVE.  UNDER THE FEDERAL RULES OF CIVIL

 5        PROCEDURE, YOU'D HAVE 30 DAYS.

 6                 MS. MORTIMER:  AGAIN, YOUR HONOR, WE'VE BEEN WORKING

 7        COOPERATIVELY.  BUT THERE IS A LARGE VOLUME OF DOCUMENTS, AND

 8        TRYING TO TAILOR IT AND REVIEW IT IN A PRACTICABLE WAY, WE'LL

 9        DO OUR BEST TO BE RESPONSIVE.

10        HAVING SEEN THE REQUESTS, IF THERE'S A PROBLEM, THEN WE'LL

11        IMMEDIATELY RAISE IT WITH THE COURT.

12        BUT I UNDERSTAND THE COURT'S CONCERN ABOUT NOT CAUSING

13        ADDITIONAL DELAY.

14                 THE COURT:  OKAY.  SO 30(B)(6) -- THE 30(B)(6) NOTICE

15        WILL BE SERVED ON OCTOBER 13TH; DISCOVERY REQUESTS WILL BE

16        SERVED ON OCTOBER 16TH; THAT DISCOVERY WILL BE RESPONDED TO --

17        AND I DON'T WANT JUST BOILERPLATE OBJECTIONS, THIS SHOULD BE

18        DOCUMENT PRODUCTION -- THAT IS DUE ON NOVEMBER 13TH OF 2017.

19        NOW, HOW MUCH -- WHEN DO YOU NEED -- DO YOU WANT TO TAKE

20        THE DEPOSITION AFTER YOU GET THE DOCUMENTS AND THE DISCOVERY

21        REQUESTS?

22                 MR. YANCHUNIS:  IT PROBABLY WOULD BE MORE MEANINGFUL

23        IF I COULD DO THAT.  BUT THERE AGAIN, I'M -- I'LL WORK WITH

24        WHATEVER -- I'LL DO WHATEVER YOU WANT ME TO DO.

25                 THE COURT:  OKAY.  THAT'S NOVEMBER 13TH.  WELL, TELL
```

```
 1        ME WHAT YOU NEED.  I --
 2               MR. YANCHUNIS:  SO I CAN TAKE THAT 30(B)(6) WITHOUT A
 3        DOCUMENT.
 4               THE COURT:  OKAY.  SO JUST TELL ME WHEN YOU WANT TO
 5        TAKE THE DEPOSITION.  YOU TELL ME WHEN YOU WANT TO TAKE THE
 6        DEPOSITION.
 7               MR. YANCHUNIS:  I WOULD LIKE TO TAKE IT WITHIN THE
 8        TIMEFRAME THAT THE COURT HAS GIVEN THEM TO RESPOND TO THE
 9        DISCOVERY, SO BETWEEN NOW AND THE 17TH OF NOVEMBER.  THAT OUGHT
10        TO GIVE THEM AN OPPORTUNITY TO PREPARE A WITNESS, EDUCATE -- OR
11        WITNESSES TO RESPOND TO THOSE AREAS OF INQUIRY THAT'LL BE
12        SERVED TODAY.
13               THE COURT:  OKAY.  SO THEN A 30(B)(6) DEPOSITION WILL
14        TAKE PLACE BY NOVEMBER 17TH.  ALL RIGHT?
15           NOW, WHEN CAN YOU AMEND YOUR COMPLAINT?  AND HOPEFULLY
16        THIS WILL BE THE DEFINITIVE COMPLAINT AND WE CAN JUST NARROW
17        FROM THAT POINT FORWARD.  WHAT'S YOUR REALISTIC DATE?
18               MR. YANCHUNIS:  MID-DECEMBER.
19               THE COURT:  OKAY.  SO DECEMBER 15TH?
20               MR. YANCHUNIS:  YES, MA'AM.
21               THE COURT:  THAT WILL BE THE FILING OF THE SECOND
22        CONSOLIDATED CLASS ACTION COMPLAINT.
23           OKAY.  NOW, I UNDERSTAND THERE ARE THE HOLIDAYS.  I ASSUME
24        THERE WILL BE A MOTION TO DISMISS.  WHEN WOULD YOU LIKE TO FILE
25        THAT?
```

```
 1              (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

 2              MS. MORTIMER:  YOUR HONOR, IF WE COULD FILE THE

 3     MOTION TO DISMISS ON JANUARY 20TH?

 4              THE COURT:  OKAY.  THAT'S A SATURDAY.  WHAT ABOUT THE

 5     19TH?

 6              MS. MORTIMER:  AH, MAKES MORE SENSE.

 7              THE COURT:  OKAY.  SO FILE THE MOTION TO DISMISS,

 8     PLEASE, ON JANUARY 19TH OF 2018, PLEASE.

 9          ALL RIGHT.  HOW MUCH TIME DO YOU NEED FOR OPPOSITION?

10              MR. YANCHUNIS:  THREE WEEKS?

11              THE COURT:  OKAY.  FEBRUARY 9 IS THE OPPOSITION.

12     THAT IS 2-9-2018.

13          WHAT ABOUT FEBRUARY 19 FOR THE REPLY?

14              MS. MORTIMER:  I'M SORRY?  FEBRUARY?

15              THE COURT:  19.  THAT GIVES YOU TEN DAYS.

16              MS. MORTIMER:  YOUR HONOR, WOULD IT BE POSSIBLE TO

17     GET 15?

18              THE COURT:  WELL, THEY'RE ONLY GETTING THREE WEEKS

19     FOR A REPLY.

20              MS. MORTIMER:  THAT DATE IS FINE, YOUR HONOR.

21              THE COURT:  OKAY.  SO OCTOBER 19 -- I'M SORRY --

22     FEBRUARY 19 OF 2018.

23              MS. MORTIMER:  YOUR HONOR, WOULD THE SAME PAGE LIMITS

24     STAY IN PLACE?

25              THE COURT:  LET ME JUST DOUBLE-CHECK.  WHAT WERE
```

1    THOSE LIMITS?

2            MR. YANCHUNIS:  32, 32, AND 15.

3            THE COURT:  THAT'S FINE.  THAT'S FINE.

4        ALL RIGHT.  THEN THE HEARING, LET'S SEE.  SO IF WE HAVE IT

5    THE 19TH, THEN WE CAN --

6        LET ME ASK, WHAT DOES APRIL 5TH LOOK LIKE?

7            (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

8    CLERK.)

9            THE COURT:  OKAY.  WHAT IF WE SPECIALLY SET THIS THEN

10    ON TUESDAY, APRIL THE 3RD?  NOW, THAT ONLY GIVES US -- OH, THAT

11    ONLY GIVES US TWO WEEKS TO WORK ON A -- WHAT ABOUT FRIDAY,

12    THE 6TH, APRIL 6TH?

13            THE CLERK:  YOUR HONOR, THERE ARE NO MATTERS

14    PRESENTLY SET ON THAT DATE.

15            THE COURT:  I WOULD -- I CAN'T DO IT THE WEEK OF THE

16    12TH.  ALTHOUGH I -- ACTUALLY, THAT DATE CAN MOVE UP.  THAT

17    COULD BE ADVANCED.

18        DO WE HAVE OTHER LAW AND MOTION SET ON THE 5TH?

19            (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

20    CLERK.)

21            THE COURT:  OKAY.  LET'S SPECIALLY SET THIS, THEN,

22    PLEASE, FOR APRIL 6TH.  I JUST DON'T WANT TO DELAY IT FURTHER.

23    THAT WILL GIVE US LESS THAN THREE WEEKS, BUT THAT WILL

24    HOPEFULLY BE ENOUGH.  SO THE HEARING WILL BE APRIL THE 6TH OF

25    2018.  AND CAN WE PLEASE SET THAT FOR 2:00?  I KNOW YOU PREFER

```
 1        MORNING, BUT I'M GOING TO BE TRAVELLING ON THE 5TH, SO --

 2              MS. MORTIMER:  YES, YOUR HONOR.

 3              THE COURT:  OKAY.

 4              MR. YANCHUNIS:  THAT'S FINE, YOUR HONOR.

 5              THE COURT:  THAT'S AT 2:00.

 6         OKAY.  NOW, ASSUMING THAT WE CAN GET THE ORDER OUT,

 7    HOPEFULLY, DEPENDING ON THE COMPLEXITY, WITHIN TWO WEEKS OF THE

 8    HEARING DATE, THEN HOW MUCH TIME WOULD YOU NEED FOR THE REST OF

 9    DISCOVERY?

10              MR. YANCHUNIS:  LET ME ASK YOU --

11              THE COURT:  UM-HUM.  OR ACTUALLY, FOR THE NEXT CLASS

12    CERT MOTION WOULD BE THE NEXT DEADLINE.

13              MR. YANCHUNIS:  SO THE SCHEDULE, ON PAGE 4, WOULD THE

14    REST OF THAT SCHEDULE WORK WITH THE COURT?

15              THE COURT:  GIVE ME ONE SECOND.

16              MR. YANCHUNIS:  IT'S ON PAGE 4, YOUR HONOR.

17              THE COURT:  ALL RIGHT.  JUST GIVE ME ONE SECOND,

18    PLEASE.

19              MR. YANCHUNIS:  YES, MA'AM.  DOCKET 143.

20              THE COURT:  NOW, YOU HAVE -- LET'S SEE.  YOU HAVE

21    CLASS CERT BEING FILED ON JULY 13TH.

22              MR. YANCHUNIS:  YES, MA'AM.

23              MS. MORTIMER:  WE THINK THE REMAINDER OF THE DATES

24    COULD STAY IN PLACE, YOUR HONOR, NOTWITHSTANDING THE CHANGES TO

25    THE MOTION TO DISMISS DATES.
```

1    THE COURT:  WELL, THIS IS MY ONE CONCERN.  IF I GRANT

2    THE MOTION TO DISMISS ON CAUSES OF ACTION FOR WHICH I'VE

3    ALREADY GRANTED WITH LEAVE TO AMEND, THEN I DON'T WANT TO

4    PRE-JUDGE IT, BUT THE LIKELIHOOD THAT I WILL DISMISS WITH

5    PREJUDICE IS HIGH.

6        THE PROBLEM IS, IF THERE ARE NEW CAUSES OF ACTION, I WILL

7    LIKELY HAVE TO DISMISS WITH LEAVE TO AMEND, WHICH WOULD THEN

8    GENERATE A THIRD MOTION TO DISMISS.  THAT'S MY CONCERN, THAT IF

9    WE HAVE CLASS CERT ON JULY 13TH, YOU MAY NOT KNOW WHAT'S STILL

10   IN THE CASE, IF THAT MAKES ANY SENSE.

11       MS. MORTIMER:  I UNDERSTAND, YOUR HONOR.  BUT I --

12   UNLESS I'M MISUNDERSTANDING MR. YANCHUNIS, HE WAS THINKING OF

13   AMENDING WITH RESPECT TO ADDING OTHER STATE LAW CLAIMS, WHICH

14   MIGHT BE DECIDED AS A MATTER OF LAW BASED ON THE CHOICE OF LAW

15   PROVISION.

16       MR. YANCHUNIS:  NO.  I THOUGHT WE TALKED ABOUT THIS.

17     NO.  WE'RE SAYING WE'RE GOING TO EXPLORE THE -- OUR

18   AMENDMENT TO ADD FRAUD -- WE HAVE NOT YET -- JUST COMMON LAW

19   FRAUD.

20       MS. MORTIMER:  OH, YOU HAVE A UCL FRAUD NOW.  THAT'S

21   WHAT I MEANT.

22       MR. YANCHUNIS:  YES, COMMON LAW FRAUD, AS WELL AS,

23   YOU KNOW, THE POSSIBILITY OF INJECTING PUNITIVE DAMAGES.

24     SO THERE -- SO THERE WILL BE NEW THINGS THAT WE SEEK TO

25   EXPLORE, WHICH I THINK THE COURT GRANTED.

```
 1              THE COURT:  WELL, MY CONCERN THEN IS THAT WHATEVER IS
 2     NEW, IF I DISMISS AND GRANT YAHOO!'S MOTION, I WOULD LIKELY
 3     HAVE TO GIVE LEAVE TO AMEND, WHICH WOULD THEN SET US UP FOR A
 4     THIRD ROUND.
 5              MR. YANCHUNIS:  YES, MA'AM.
 6              THE COURT:  NOW, WE COULD KEEP THIS SCHEDULE AND --
 7     OH, WAIT.  OH, OKAY.  I MISWROTE THAT.
 8          THE -- WAIT A MINUTE.  I'M SORRY.  I MISSPOKE HERE.
 9          SO IF YOU'RE FILING ON THE 19TH OF JANUARY AND YOU'RE
10     OPPOSING ON THE 9TH AND YOU'RE REPLYING ON THE 19TH, I
11     MISSPOKE.  WHY IS THIS GOING INTO APRIL?  THAT'S MY MISTAKE.
12          MARCH 8TH WOULD BE -- LET ME ASK, I'M NOT -- THAT WAS MY
13     MISTAKE.  I JUMPED -- I SKIPPED A MONTH.
14          LET ME ASK MS. MASON HOW -- IF WE HAVE THE WEEK OF THE
15     19TH, THE WEEK OF THE 26TH, AND THREE DAYS THE WEEK OF
16     MARCH 5TH, CAN YOU TAKE A LOOK AT MARCH 8TH?  HOW DOES THAT
17     LOOK?
18          (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE
19     CLERK.)
20              MS. MORTIMER:  I COULD DO THAT.
21              MR. YANCHUNIS:  THAT'S FINE, YOUR HONOR.
22              THE COURT:  SO MARCH 8TH, ARE YOU AVAILABLE
23     MARCH 8TH?
24              MS. MORTIMER:  YES, YOUR HONOR.
25              THE COURT:  OKAY.  THEN I WOULD JUST SAY THAT SHOULD
```

1        BE OUR REGULAR 1:30 LAW AND MOTION CALENDAR.

2            OKAY.  SO IF YOU CAN GET -- SO IF YOU'RE TELLING ME THAT

3    YOU THINK YOU CAN KEEP THE CLASS CERT SCHEDULE IF, LET'S SAY

4    YOU GET AN ORDER HOPEFULLY BY MARCH 23RD, WITHIN TWO WEEKS,

5    THEN THAT'S FINE.

6            THE ONLY PROBLEM IS, IF I GRANT YAHOO!'S MOTION, THEN I

7    WILL LIKELY HAVE TO GIVE YOU LEAVE TO AMEND AND THEN WE'LL DO A

8    THIRD ROUND AND I'M NOT SURE THAT WE COULD FIT THAT IN BY THE

9    JULY 13TH DATE.

10            MR. YANCHUNIS:  COULD PERHAPS WE COME BACK IN -- OR

11    AT LEAST LEAVE THE POSSIBILITY THAT THIS REMAINS THE SAME?  IF

12    YOU HAPPEN TO GIVE US LEAVE TO AMEND AND THERE'S SOMETHING WE

13    WANT LEAVE TO AMEND, WE CAN COMMUNICATE THAT TO YOU AND PERHAPS

14    WE CAN TALK ABOUT A READJUSTMENT?

15            THE COURT:  YEAH.

16            MR. YANCHUNIS:  OTHERWISE I'LL MARCH FORWARD WITH

17    WHAT YOU HAVE IN THIS ORDER.

18            THE COURT:  YOU KNOW WHAT WE COULD ALSO DO, WHICH

19    WOULD BE TIGHT, BUT IF I WERE TO GRANT YAHOO!'S MOTION AND GIVE

20    YOU LEAVE TO AMEND, AND IT SOUNDS LIKE IT'S GOING TO BE ON A

21    PERHAPS NARROWER ISSUES THAT YOU'LL HAVE GUIDANCE ON AND YOU'LL

22    KNOW WHETHER YOU CAN EITHER ALLEGE IT OR NOT.  PERHAPS IF WE'VE

23    GOT TO DO A THIRD ROUND, WE CAN DO IT IN AN EXPEDITED TIMEFRAME

24    SO WE COULD STILL KEEP THE REST OF THE SCHEDULE.

25            THAT -- I MEAN, THAT WOULD BE THE OTHER OPTION OF TRYING

1    TO SQUEEZE THAT IN, AND I'LL PRIORITIZE IT SO WE CAN KEEP THE

2    REST OF THE SCHEDULE.

3              MR. YANCHUNIS:  YES, JUDGE.

4              THE COURT:  SO MAYBE TRY TO DO THAT IN MAY OR EARLY

5    JUNE.

6              MR. YANCHUNIS:  THAT WOULD BE FINE.

7              THE COURT:  IT SOUNDS LIKE THAT PROBABLY WOULDN'T

8    AFFECT YOUR CLASS CERT MOTION.

9              MS. MORTIMER:  IT SHOULDN'T, YOUR HONOR.

10             THE COURT:  DAMAGES CERTAINLY WOULDN'T, RIGHT?

11             MR. YANCHUNIS:  NO, IT WOULD NOT.

12             MS. MORTIMER:  YOUR HONOR, TO THE EXTENT THE FRAUD

13   CLAIM HAS BEEN SOMEWHAT EXPLORED AS A PREDICATE TO UCL, IF IT'S

14   RELATIVELY FOCUSSED, I THINK WE SHOULD BE ABLE TO STAY WITHIN

15   THE SAME TIMEFRAME.

16             THE COURT:  OKAY.  LET'S DO THAT.

17        THEN I'M LOOKING AT THE REST OF YOUR SCHEDULE.  SO YOU

18   HAVE JULY, AUGUST, SEPTEMBER, AND THEN OCTOBER.

19        NOW, I DON'T DO HEARINGS ON WEDNESDAYS, SO LET ME ASK --

20   LET ME ASK MS. MASON WHETHER NOVEMBER 1 IS OPEN FOR US.

21        (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

22   CLERK.)

23             THE COURT:  OH, GREAT.  SO I CAN AT LEAST ADVANCE

24   YOUR HEARING BY A WEEK.  ALL RIGHT.

25        YOU WANT TO KEEP YOUR MEDIATION DEADLINE?

1          MR. YANCHUNIS:  YES, MA'AM.

2          THE COURT:  YOU KNOW, I WOULD PREFER THAT YOU ADVANCE

3     IT, AND THIS IS WHY:  THAT IS JUST ONE DAY BEFORE THE HEARING,

4     SO IF YOU COULD ADVANCE IT, PERHAPS -- WHAT ABOUT THE END OF

5     SEPTEMBER?  YOU'LL HAVE THE CLASS CERT REPLY BRIEF AND

6     EVERYTHING EXCEPT THE DEFENDANTS' OPPOSITIONS TO THE

7     PLAINTIFFS' DAUBERT MOTIONS BY SEPTEMBER 21.

8          MR. YANCHUNIS:  YES, MA'AM.

9          THE COURT:  SO COULD WE ADVANCE IT?

10         MS. MORTIMER:  YES, YOUR HONOR.

11         THE COURT:  OKAY.  WHAT -- WHAT DATE WOULD WORK?  I'D

12    LIKE TO DO IT AS SOON AS POSSIBLE.  I WOULD PREFER EVEN THAT

13    YOU MAY DO ONE SESSION BEFORE CLASS CERT BRIEFING, OR AT LEAST

14    ONE SESSION AFTER THE MOTION OR AFTER THE OPPOSITION, AND ONE

15    AFTER THE REPLY.  I MEAN, YOU'LL BE ABLE TO ASSESS FOR SURE --

16         MR. YANCHUNIS:  YES, MA'AM.

17         THE COURT:  -- WITH THAT.  SO CAN WE ADVANCE THE

18    DEADLINE?

19         MR. YANCHUNIS:  YES, YOUR HONOR.

20         MS. MORTIMER:  SEPTEMBER 30TH?

21         MR. YANCHUNIS:  SEPTEMBER 30TH IS FINE.  YOU GAVE US

22    DIRECTION THAT, IN CONNECTION WITH MEDIATION, YOU WOULD LIKE

23    THREE SESSIONS.

24         THE COURT:  WELL, I --

25         MR. YANCHUNIS:  AND --

```
1              THE COURT:  I DON'T MIND HOW MANY YOU HAVE.  I JUST
2    WANT TO ENCOURAGE YOU TO START EARLY IN CASE YOU NEED MORE.
3              MR. YANCHUNIS:  NO, NO.  I TOOK IT TO HEART.  WE'RE
4    GOING TO DO THAT.
5              THE COURT:  OKAY.
6              MR. YANCHUNIS:  SO WE'RE JUST TALKING ABOUT A
7    DEADLINE.
8              THE COURT:  THIS IS A DEADLINE.
9              MR. YANCHUNIS:  YES.
10             THE COURT:  RIGHT.  BUT I DON'T THINK IT MAKES
11   SENSE -- IF YOU SETTLE THE DAY BEFORE, WE WILL HAVE ALREADY
12   DONE ALL THE WORK ON THOSE MOTIONS.
13             MS. MORTIMER:  SURE.
14             MR. YANCHUNIS:  AND I CLERKED FOR A DISTRICT JUDGE.
15   I KNOW WHAT YOU DO.
16             THE COURT:  YEAH.
17             MR. YANCHUNIS:  AND I WILL NOT DO THAT TO YOU.
18             THE COURT:  YEAH.  SO THAT'S WHY I'D LIKE TO SET THAT
19   MEDIATION DEADLINE, SEPTEMBER 30TH WOULD BE GREAT.
20             MS. MORTIMER:  WE'LL DO THAT, YOUR HONOR.
21             MR. YANCHUNIS:  THANK YOU, JUDGE.
22             THE COURT:  OKAY.  THANK YOU.  YOU KNOW, THE 30TH IS
23   A SUNDAY.  LET'S SAY SEPTEMBER 28.
24             MS. MORTIMER:  I KEEP PICKING THE WRONG DAYS, YOUR
25   HONOR, BUT THE 28TH.
```

```
1              THE COURT:  OKAY.  SO THE 28TH IS A FRIDAY.
2       ACTUALLY, WE SHOULD CHECK TO MAKE SURE YOUR OTHER DAYS -- THE
3       13TH IS A FRIDAY, THAT'S GOOD; THE 31ST IS A FRIDAY, THAT'S
4       GOOD; THE 21ST IS A FRIDAY, THAT'S GOOD.  OKAY, NOVEMBER 1 IS A
5       THURSDAY, THAT'S GOOD.
6              OKAY.  SO IF WE HAVE YOUR HEARING, THEN WE CAN KEEP THE
7       REST OF THIS SCHEDULE.
8              DOES THE REST OF THE SCHEDULE WORK FOR THE PARTIES?  SO IT
9       WOULD BE A MARCH 1 FACT DISCOVERY CUTOFF; AND THEN EXPERT
10      REPORTS A WEEK LATER; THEN YOU'LL TAKE THE DEPOSITION; AND THEN
11      THE DEFENSE REPORTS; AND THEN CLOSE OF EXPERT DISCOVERY IS THE
12      26TH OF APRIL.
13             AND LET ME JUST ASK MS. MASON, AUGUST 1, 2019, ARE WE
14      AVAILABLE ON THAT DATE?
15             THE CLERK:  YES, YOUR HONOR.  THERE ARE NO MATTERS
16      PRESENTLY SET.
17             THE COURT:  OKAY, GREAT.
18             COULD YOU ALSO PLEASE CHECK SEPTEMBER 5, 2019?
19             THE CLERK:  THE SAME, YOUR HONOR, NO MATTERS
20      PRESENTLY SET.
21             THE COURT:  OKAY.  AND THEN WHAT ABOUT
22      SEPTEMBER 23RD?
23             THE CLERK:  THERE ARE NO MATTERS PRESENTLY SET.
24             THE COURT:  OKAY, GOOD.  SO ALL THAT IS GOOD.
25             AND THEN CAN YOU PLEASE CHECK NOVEMBER 21 OF 2019?
```

1    THE CLERK:  NO MATTERS PRESENTLY SET, YOUR HONOR.

2    THE COURT:  OKAY.  ALL RIGHT, GOOD.

3   SO THE REST OF THIS SCHEDULE SEEMS TO WORK, SO THANK YOU.

4 THAT'S GOOD.

5   SO WHAT WE'LL DO IS JUST ISSUE A CASE MANAGEMENT ORDER

6 WITH THE NEW DATES WE AGREED UPON, BUT THAT INCORPORATE ALL OF

7 YOUR DATES FROM CLASS CERT TO THE END, WITH ONLY THE

8 MODIFICATION OF THE HEARING BY LESS THAN A WEEK ON CLASS CERT,

9 AND THE MEDIATION DEADLINE.

10   NOW, LET'S SET A FURTHER CMC, AND I'M HAPPY FOR IT TO BE

11 SOON JUST TO MAKE SURE THAT THIS PROCESS GOES SMOOTHLY.  SO

12 WHEN WOULD YOU LIKE TO COME BACK?  AND, YOU KNOW, IF IT TURNS

13 OUT YOU HAVE NO ISSUES, I WILL JUST VACATE IT, OR AT LEAST I'LL

14 CONTINUE IT TO ANOTHER DATE AND I WILL NOT REQUIRE THAT YOU

15 COME IN.

16   SO WHAT WOULD YOU LIKE?

17    MR. YANCHUNIS:  DO YOU WANT IT THREE WEEKS OUT?

18    THE COURT:  THAT'S FINE.

19    MR. YANCHUNIS:  SO THAT WOULD BE THE --

20    THE COURT:  LET'S SEE WHAT THAT IS.  TODAY IS THE

21 13TH.  SO NOVEMBER 3RD?  AND IF THERE ARE NO ISSUES, LIKE I

22 SAID, I'LL VACATE IT.

23    THE CLERK:  YOUR HONOR, YOU'RE UNAVAILABLE ON

24 NOVEMBER THE 3RD.

25    THE COURT:  OH, THANK YOU.

1      OH, I THINK WE'RE IN TRIAL, RIGHT, ON DOCTORS BELCHER AND

2  GANESH IN NOVEMBER?

3          THE CLERK:  I BELIEVE WE HAVE THAT WEEK OFF.

4          THE COURT:  SO I THINK I'M GOING TO HAVE TO DO IT ON

5  A WEDNESDAY OR A THURSDAY IN NOVEMBER.

6          MR. YANCHUNIS:  WOULD THE 1ST WORK, KEEPING THAT SAME

7  WEEK?

8          THE COURT:  WHICH ONE?

9          MR. YANCHUNIS:  THE 1ST?

10         THE COURT:  THAT'S FINE.  NOW, YOU'RE NOT GOING TO

11 GET ANY OF THEIR DISCOVERY UNTIL THE 13TH AND YOU WON'T GET

12 THEIR 30(B)(6) UNTIL THE 17TH.  OR DO YOU THINK YOU'LL GET --

13 WELL, YOU -- LET ME ASK IF YAHOO! WOULD, INSTEAD OF WAITING AND

14 JUST DUMPING EVERYTHING ON THE 13TH, IF YOU'D BE WILLING TO

15 SORT OF INCREMENTALLY PRODUCE WHAT YOU HAVE AVAILABLE?

16         MS. MORTIMER:  ABSOLUTELY, YOUR HONOR.

17         THE COURT:  OKAY.

18         MS. MORTIMER:  WE HAD INTENDED TO PRODUCE ON A

19 ROLLING BASIS.

20         THE COURT:  OKAY.  THANK YOU.

21     SO WHEN --

22         MR. YANCHUNIS:  WELL, LET ME MAKE SURE I UNDERSTAND.

23 YOU WANT TO KNOW IF WE'RE MOVING ALONG WITH WHAT WE'RE -- WHAT

24 YOU'VE CHARGED US TO DO, WHICH WOULD MEAN THAT WOULD INDICATE

25 YOU WANT US TO COME BEFORE YOU BEFORE THE DISCOVERY RESPONSE IS

```
 1        DUE.  NO?

 2                THE COURT:  NO.

 3                MR. YANCHUNIS:  OKAY.

 4                THE COURT:  I JUST WANT TO CHECK IN AND MAKE SURE

 5        EVERYTHING IS RUNNING SMOOTHLY.

 6            SO I CAN, YOU KNOW, SET IT ANY DAY YOU WANT.  AND IF YOU

 7        NEED LESS THAN SEVEN DAYS TO FILE THE JOINT CASE MANAGEMENT

 8        STATEMENT, THAT'S OKAY, TOO.  WE'LL JUST SET THE DATE FOR THAT

 9        AS WELL.  SO WHAT --

10                MR. YANCHUNIS:  WELL, HOW ABOUT -- SINCE -- HOW ABOUT

11        THE 16TH?  AND WE'LL BE -- WE'LL FILE A STATUS REPORT EARLIER

12        THAN WE NORMALLY WOULD, MAYBE THE 9TH.

13                MS. MORTIMER:  WHAT DATE IS THAT?

14                MR. YANCHUNIS:  THAT'S A THURSDAY.

15                THE COURT:  NOW, YOU MIGHT BE TAKING THAT DEPOSITION.

16        YOU'LL HAVE THE DOCUMENTS ON THE 13TH, THAT'S THE DEADLINE.

17        YOU HAVE THE DEADLINE FOR THE DEPOSITION OF THE 17TH.  YOU WANT

18        TO DO IT, LIKE, THE 10TH OR THE 9TH?

19                MR. YANCHUNIS:  THAT'S FINE.

20                THE COURT:  AND JUST MAKE SURE THAT -- I WILL WANT TO

21        KNOW HOW MUCH DISCOVERY HAS BEEN PRODUCED BY THAT POINT.

22                MR. YANCHUNIS:  WHY DON'T WE DO THAT?  WE CAN GIVE

23        YOU AN UPDATE ON WHERE WE ARE IN CONNECTION WITH EVERYTHING

24        THAT WE'VE TALKED ABOUT HERE TODAY.

25                THE COURT:  AND I'LL WANT TO KNOW THE DEPOSITION IS
```

1    SET FOR THE NEXT WEEK AND, YOU KNOW, JUST THAT YOU THINK THINGS

2    ARE READY TO GO.

3         I APPRECIATE YOU ALL WORKING WITH ME ON THIS.  I JUST WANT

4    TO -- YOU KNOW, WE'RE A BIT DELAYED NOW AND I JUST WANT TO MAKE

5    SURE THINGS ARE ON TRACK FOR US TO BE ABLE TO SORT OF HOPEFULLY

6    RECOUP SOME OF THE TIME THAT WE'VE LOST.

7         SO LET'S SAY NOVEMBER THE 9TH, WE HAVE OTHER THINGS ON

8    CALENDAR, BUT I THINK THAT'S FINE FOR A CMC.

9         DO YOU AGREE, MS. MASON?  I THINK IT LOOKS FINE.

10        THE CLERK:  YES, YOUR HONOR.

11        THE COURT:  OKAY.  SO WE'LL HAVE A CMC ON

12   NOVEMBER THE 9TH.  AND WHEN DO YOU WANT TO FILE YOUR JOINT CASE

13   MANAGEMENT STATEMENT?  ON THE 6TH?  ON THE 3RD?  IT --

14        MS. MORTIMER:  THE 6TH, YOUR HONOR.

15        THE COURT:  OKAY.  AND IN THAT, I WILL WANT TO KNOW

16   DETAILS, HOW MUCH DISCOVERY HAS BEEN PRODUCED AT THAT POINT;

17   WHAT'S OUTSTANDING TO BE PRODUCED; WHAT'S THE DATE OF THAT

18   DEPOSITION; WHO IS THE PERSON THAT'S GOING TO BE DEPOSED.  I'D

19   LIKE SOME DETAILED UPDATES, OKAY?

20        MR. YANCHUNIS:  YES, MA'AM.

21        THE COURT:  ALL RIGHT.  SO NOVEMBER THE 9TH, THAT'LL

22   BE AT 1:30, PLEASE.

23        OKAY.  WHAT ELSE?  I'LL ISSUE A CASE MANAGEMENT ORDER WITH

24   ALL THESE DATES IN IT SINCE WE'VE MOVED SOME AROUND JUST SO

25   WE'RE ALL ON THE SAME PAGE.

```
 1          WHAT ELSE?  ANYTHING ELSE?

 2               MR. YANCHUNIS:  I DON'T THINK SO, YOUR HONOR.

 3               MS. MORTIMER:  NO, YOUR HONOR.

 4               MR. YANCHUNIS:  THANK YOU.

 5               THE COURT:  ALL RIGHT.  THANK YOU ALL VERY MUCH.  I

 6     REALLY APPRECIATE YOUR COOPERATION.

 7               MR. YANCHUNIS:  THANK YOU FOR YOUR TIME.

 8               THE COURT:  AND I'LL TRY TO GET THE CASE BACK ON

 9     TRACK.  THANK YOU.

10               MS. MORTIMER:  THANK YOU, YOUR HONOR.

11               THE WITNESS:  THANK YOU, YOUR HONOR.

12               THE COURT:  THANK YOU.

13          OH, CAN WE PUT ONE THING ON THE RECORD?  AND THAT IS IF IT

14     TURNS OUT -- IT DOESN'T SOUND LIKE THE NEXT COMPLAINT IS GOING

15     TO BE SIGNIFICANTLY LARGER, BUT IF IT IS, THEN I WILL EXPECT

16     THAT WE WILL DO NARROWING.

17               MR. YANCHUNIS:  OKAY.

18               THE COURT:  MAYBE THAT'S SOMETHING WE CAN TALK ABOUT

19     AT A FUTURE CASE MANAGEMENT CONFERENCE WHEN YOU HAVE A BETTER

20     SENSE OF EXACTLY WHAT YOU THINK YOU'RE GOING TO BE -- IT SOUNDS

21     LIKE YOU'RE NOT AMENDING AS YOU THOUGHT AT THE LAST CASE

22     MANAGEMENT CONFERENCE.  IS THAT CORRECT?

23               MR. YANCHUNIS:  I -- LOOKING -- YES.  I'M TRYING TO

24     LOOK AT EVERYTHING, INCLUDING THE ADMONITION YOU -- YES, MA'AM.

25     SO --
```

1          THE COURT:  IF YOU DO, IT'S COMPLETELY YOUR CALL --

2          MR. YANCHUNIS:  I UNDERSTAND THAT.

3          THE COURT:  -- WHAT'S IN YOUR COMPLAINT.

4       BUT IF IT IS LARGER, THEN WE MAY NEED TO DO SOME

5    NARROWING.

6          MR. YANCHUNIS:  YES, MA'AM.

7          THE COURT:  AND AT THAT POINT, I'D PROBABLY PREFER

8    TEN CLAIMS AND I'D PROBABLY GIVE YAHOO! FIVE AND PLAINTIFFS

9    FIVE.

10          MR. YANCHUNIS:  YES, MA'AM.

11          THE COURT:  YOU GET TO SELECT WHAT WE LITIGATE.

12          MR. YANCHUNIS:  OKAY.

13          THE COURT:  OKAY?

14          MR. YANCHUNIS:  YES, MA'AM.

15          THE COURT:  BUT ANYWAY.  ALL RIGHT.  THANK YOU.

16          MS. MORTIMER:  THANK YOU, YOUR HONOR.

17          MR. YANCHUNIS:  THANK YOU, YOUR HONOR.

18       (THE PROCEEDINGS WERE CONCLUDED AT 12:05 P.M.)

19

20

21

22

23

24

25

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR

17    CERTIFICATE NUMBER 9595

18         DATED:  NOVEMBER 3, 2017

19

20

21

22

23

24

25