MORGAN & MORGAN
    COMPLEX LITIGATION GROUP
John A. Yanchunis
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813/223-5505
813/223-5402 (fax)
jyanchunis@ForThePeople.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: YAHOO! CUSTOMER DATA SECURITY BREACH LITIGATION | ) Case No. 16-MD-02752-LHK<br>)<br>) DECLARATION OF JOHN YANCHUNIS IN<br>) SUPPORT OF PLAINTIFFS' MOTION FOR<br>) PRELIMINARY APPROVAL<br>)<br>) |

I, John A. Yanchunis, declare pursuant to 28 U.S.C. § 1746 as follows:

1. Following the transfer and consolidation of a number of cases before this Court by the Judicial Panel on Multidistrict Litigation, I was appointed by this Court as Plaintiffs' Lead Counsel in this matter.

2. Attached as **Exhibit 1** to this declaration is the Settlement Agreement entered into in this matter along with each of its exhibits ("Settlement Agreement" or "Settlement").[1]

3. The settlement memorialized in the attached Settlement Agreement is the product of two years of hard-fought litigation and equally zealous, and arms-length, settlement negotiations.

4. On September 24, 2016, following the announcement of a breach occurring in 2014 and involving some 500 million user accounts ("2014 Breach"), I filed one of the first class

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is being filed concurrently herewith.

DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL
- 1 -

action cases against Yahoo arising out of the breach, *McMahon v. Yahoo! Inc.*, 5:16-cv-05466 (N.D. Cal.).

5. On September 28, 2016, I filed a Motion to Consolidate and Transfer before the Judicial Panel on Multidistrict Litigation ("JPML"), seeking to centralize the various actions that had been filed around the country regarding the data breach. *See In Re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. MDL No. 2752, ECF No. 1 (JPML) ("JPML Docket"). On December 7, 2016, that motion was granted, and all actions related to the Data Breaches were transferred to this Court, (JPML Docket at ECF No. 62), resulting in the creation of this case, *In re: Yahoo! Inc. Customer Data Breach Security Litigation*, Case No. 16-md-02752-LHK (N.D. Cal.) ("MDL Case").[2]

6. Pursuant to this Court's December 13th Order (ECF No. 2), motions for lead plaintiffs' counsel were due January 5, 2017. I, along with Gayle Blatt, Stuart Davidson, Karen Hanson Riebel, and Ariana Tadler, jointly applied to lead this matter. ECF No. 19. On February 9, 2017, this Court granted that motion, appointing me as Lead Counsel, and creating a Plaintiffs' Executive Committee ("PEC") consisting of Mr. Davidson, and Mesdames Blatt, Riebel, and Tadler. ECF No. 58.

7. Shortly thereafter, months of negotiations commenced between Plaintiffs and Defendants regarding a Protective Order (ECF No. 73), ESI protocol (ECF No. 74), Rule 502 Order (ECF No. 76), ESI Search Protocol (ECF No. 104), and multiple rounds of negotiations to reach agreement on hundreds of ESI search terms, (ECF Nos. 151, 153, 163, 167, 170, 171).

8. Initially, the parties negotiated for Yahoo to produce certain documents prior to the start of formal discovery, including certain investigative reports of malicious activity.

---

[2] In November 2016, December 2016, and October 2017, Yahoo announced additional breaches, and/or broadened the scope of those already announced, including the 2013 Breach and Forged Cookie Breach. Collectively, all breaches are referred to here as the Data Breaches.

DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL - 2 -

Following completion of search terms negotiations, Yahoo produced, and Plaintiffs reviewed, over 9 million pages of documents.

9. During and after document production, Plaintiffs deposed the critical information security personnel who worked at Yahoo during the relevant time periods, including:

- November 10 and November 20, 2017 and February 22, 2018: Deposition of Yahoo's Rule 30(b)(6) corporate representative, Sean Zadig, Director of Threat Investigations;
- April 13 and June 8, 2018: Deposition of Robert Lord, former Yahoo Chief Information Security Officer ("CISO");
- May 14 and 15, 2018: Deposition of Ramses Martinez, former Incident Response Team leader and Yahoo Interim CISO;
- May 29, 2018: Deposition of Justin Somaini, former Yahoo CISO;
- June 26, 2018: Deposition of Christopher P. Rohlf, former Yahoo Director of Penetration Testing and Offensive Engineering Team;
- June 28, 2018: Deposition of Alexander C. Stamos, former Yahoo CISO; and
- August 16, 2018: Deposition of Jay Rossiter, former Yahoo Senior Vice President and Chief Information Officer ("CIO").

10. At the time the Settlement Agreement was reached, Plaintiffs had also set deposition dates for former Yahoo Chief Executive Officer ("CEO") Marisa Mayer and former General Counsel Ronald Bell, and were seeking dates for Yahoo co-founder and former Board of Directors member David Filo.

11. Each of these depositions was coordinated in conjunction with attorneys in the California state court coordinated proceedings, *Yahoo! Inc. Private Information Disclosure Cases*, JCCP No. 4895 (Orange County Superior Court) ("JCCP Case").

12. Given the importance of these depositions—involving the critical information security employees immediately prior to, during, and after the Data Breaches—substantial time was spent reviewing the deponents' custodial files, preparing "hot doc" document review memoranda and deposition outlines, exchanging documents and deposition strategy with the JCCP attorneys, traveling for, and examining the witnesses.

13. Moreover, in conjunction with the document review and depositions, Plaintiffs have utilized the services of cybersecurity expert Mary Frantz, and her team at Enterprise Knowledge Partners, to assist with the review of highly technical documents and with the depositions of information security professionals.

14. Plaintiffs also propounded interrogatories, to which Defendants responded.

15. These discovery efforts provided Plaintiffs with a thorough understanding of Yahoo's complex IT systems, and the deficiencies within them and its information security department, that Plaintiffs allege contributed to the Data Breaches and must be remedied.

16. Likewise, Yahoo engaged in significant discovery efforts: eight of the nine named Plaintiffs in the MDL Case had their devices forensically imaged, they each responded to document requests and interrogatories, and they were each deposed.

17. In connection with Plaintiffs' Motion for Class Certification, Plaintiffs submitted four expert reports, those of James Van Dyke, Mary Frantz, Ian Ratner, and Gary Parilis. Thereafter, Defendants deposed each of these experts, and then sought their exclusion via *Daubert* motions.  Thereafter, Plaintiffs began the preparation of responses to these motions, the preparation of a reply to Defendants' opposition to Plaintiffs' motion for class certification, and the preparation for depositions of the experts retained by Defendants who had filed declarations and reports in opposition to the motion for class certification.

18. The parties mediated this case with the assistance of the Honorable Daniel Weinstein, and also with the assistance of additional mediators Jed Melnik and Simone Lelchuk, (all of JAMS), on August 14, 2018, and September 7, 2018. The mediation sessions were held in San Francisco, California. Plaintiffs also engaged in a pre-mediation session with Mr. Melnick on August 10, 2018, in New York City, New York.

19. As a result of these mediation sessions, on September 7th the parties reached an agreement in principle to resolve this action and the parallel JCCP Case.

20. During the last session, the parties agreed to terms forming the substance of the Settlement. Negotiations of attorneys' fees, costs, and expenses did not commence until agreement on behalf of the Settlement Class had been reached.

21. On September 14, 2018, the parties finalized and agreed to a written term sheet containing all material terms of their agreement to settle the case and provide substantial relief to the class.

22. Negotiation of the $50 million Settlement Fund, at least two years of Credit Services for the entire class to be paid for outside of the Fund, the costs of notice and administration to also be paid separately by Defendants, and the Business Practice Changes was hard fought and at arms-length.

23. Due to the extensive discovery efforts which occurred during this litigation, I, along with the other members of the PEC, know the strengths and weaknesses of the claims in this matter. We have worked extensively with experts to best understand those claims, as well as to value those claims.

24. I believe the proposed settlement is extremely beneficial for Settlement Class Members and is a fair, adequate, and reasonable settlement of their claims.

25. Based on my knowledge of this case, knowledge gathered from working with the experts in this matter, and my knowledge of claims rates in other data breach cases, I believe the $50 million fund will be more than ample to accommodate the amounts drawn from it—consisting of Out-of-Pocket Costs, Alternative Compensation, Paid User Costs, and Small Business User Costs—but, in the event it is not, all claims drawn from it will be reduced *pro rata*. *See* Settlement Agreement § 6.9.

26. The Alternative Compensation payment—for those class members who already have credit monitoring services—will be $100.00. Depending on participation, however, the amount could rise to as much as $358.80; the full, two-year retail value of the Credit Monitoring Services being offered.

27. By settling now, the Settlement Class will be able to take advantage of remedies, particularly the Credit Monitoring Services, that as a practical matter will be unavailable or worth substantially less by the time this case could be litigated to a final judgment. Similarly, changes to Yahoo's data security practices will be most effective the sooner they are implemented.

28. The MDL Case class representatives have been integral to litigating this matter. All nine have been significantly and personally involved in the case. Eight had their devices forensically imaged and the ninth engaged in prolonged document collection from his devices due to confidentiality concerns related to his business. All nine responded to interrogatories and document requests, and all nine were deposed.

29. Importantly, each proposed Settlement Class Representative—both those from the MDL Case and those from the JCCP Case—strongly supports the Settlement reached here.

30. I have carefully examined the facts of each of the Settlement Class Representatives to ensure that none of them have any conflicts with the Settlement Class.

DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
- 6 -

31. Plaintiffs have built a very strong liability case, compiling copious evidence concerning the shortcomings in Yahoo's information security environment at the time of the Data Breaches, including the understaffing and underfunding of Yahoo's information security team (the Paranoids), inadequate security logs, and the failure to give notice of the 2014 Breach despite contemporaneous knowledge thereof.

32. While I believe that Plaintiffs had a reasonably good chance of proving that Yahoo's data security was inadequate, I am also cognizant of the risks Plaintiffs faced in further litigation.

33. Likewise, Plaintiffs put forth three sound damages models, supported by experts Van Dyke, Parilis, and Ratner. These models are premised upon three separate theories: benefit of the bargain and restitution, lost value of Personally Identifiable Information ("PII"), and identity theft losses. Plaintiffs' firmly believe in these models and the results they potentially produce here. Nonetheless, each of these theories is untested beyond the motion to dismiss setting, especially in a data breach case of this scope, and unproven before a jury.

34. Plaintiffs' benefit of the bargain theory was proposed by Plaintiffs' experts James Van Dyke and Gary Parilis, and was supported by a conjoint analysis to determine the amount Paid Users and Small Business Users overpaid for Yahoo's services because of the concealed security inadequacies.

35. Plaintiffs proposed two methods of identifying lost value of PII. In the first, statistical sampling would determine the PII in an average users' account and its value in order to calculate aggregate damages. In the second, a market-based approach—analyzing the value of PII in comparable transactions—would be utilized to determine damages resulting from the diminution in value of class members' PII as a result of the Data Breaches.

36. Finally, identity theft losses were proposed to be established through a claims process, where: (1) temporally, the identity theft followed the Breach(es) in which the PII was taken, and (2) the PII taken must have been the same kind needed to commit the identity theft suffered.

37. Thus, while the legal theory behind the largest potential outcomes may be sound, it is untested, and, as a practical matter, Plaintiffs' counsel recognize that taking such large numbers to a jury presents substantial strategic risks. Understanding these risks after over three decades in the courtroom allowed me to make the assessments necessary to negotiate the Settlement achieved in this case. Certainly compromise was required here but the relief provided by this Settlement does address the types of damages that I have seen in my experience litigating privacy rights since 1999.

38. This Court appointed the PSC more than a year-and-a-half ago. ECF No. 58. This group of attorneys has substantial experience litigating complex class cases of various natures, and extensive exposure to the highest profile data breach cases in the country. Incorporated by this reference is Joint Application for Appointment of Plaintiffs' Executive Committee, as well as its referenced exhibits (ECF No. 19), filed by the PEC in this matter and granted by this Court, which establishes proposed Class Counsel's credentials and adequacy in this matter.

39. Also, submitted simultaneously herewith, is the declaration of Mr. Daniel Robinson. Mr. Robinson was appointed by the JCCP Court as co-lead counsel in that matter and has similarly impressive credentials. I have worked closely and personally with Mr. Robinson throughout this litigation for purposes of coordinating discovery, especially deposition discovery, and during settlement negotiations. He, along with his co-counsel, have agreed to resolve their case in concert with this litigation, and have agreed to seek their fees, costs, and expenses, and

Service Awards for their named plaintiffs, solely within the context of this Agreement and before this Court.  Should the Settlement Agreement be given Final Approval, and reach its Effective Date, the JCCP Case will be voluntarily dismissed with prejudice by Mr. Robinson and his co-counsel.

40. Accordingly, Plaintiffs seek the appointment of:

   a. Lead Settlement Class Counsel: John Yanchunis of Morgan & Morgan Complex Litigation Group
   b. Executive Settlement Class Counsel: Stuart Davidson of Robins Geller Rudman & Dowd LLP, Gayle Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield LLP, Karen Hanson Riebel of Lockridge Grindal Nauen PLLP, and Ariana Tadler of Milberg Tadler Phillips Grossman LLP; and,
   c. Additional Settlement Class Counsel: Daniel Robinson of Robinson Calcagnie, Inc.

Collectively, "Class Counsel."

41. The motion for an award of attorneys' fees, costs, and expenses will be supported with detailed lodestar information and an accounting of expenses.  As directed by the Court, I have implemented efficiency protocols and ensured that work performed in this matter was non-duplicative and contemporaneously recorded.

42. Having worked on behalf of the putative class since the Data Breaches were first announced, and having dedicated thousands of hours to the case, proposed Class Counsel endorse the Settlement without reservation.  I wholeheartedly endorse the resolution reached here on behalf of the Settlement Class, and believe it to be the best, most fulsome resolution of a data breach to date, and an excellent outcome within the context of the facts here, specifically.

43. The parties solicited confidential bids from companies to provide notice and administration services in conjunction with the proposed settlement. These companies were

provided the material terms of the settlement and asked to formulate a notice and media plan that would provide the best notice practical to reach the Settlement Class.

44. The parties ultimately chose Heffler Claims Group to propose to the Court to serve as the Settlement Administrator. It is our belief that Heffler Claims Group's proposed notice and administration plan will allow for the effective dissemination of notice to the Settlement Class, efficient administration of Class claims, and will do so in an economical matter.

45. I have reviewed the proposed Long Form Notice, Short Form Notice, and Publication Notice (the "Notices"). The Notices clearly explain the background of the case, the terms of the settlement, the process and deadlines for filing claims, the deadlines for objecting or opting out and how to do so, and how to obtain additional information. Thus, the Notices provide all the information necessary for Settlement Class Members to make informed decisions with respect to whether they remain in or opt-out of the Settlement Class, or object to the proposed Settlement.

46. I have also reviewed the Notice Plan and believe it will be effective in meeting and exceeding the requirements of Due Process for notifying Settlement Class Members. The Notice Plan was developed by a provider with significant experience in designing notice plans in large and national class actions similar to this one, Jeanne C. Finegan. I have utilized Jeanne Finegan's services in the past and believe her to be one of the best, most knowledge, class notice professionals in the world.

47. Ms. Finegan has reviewed the proposed Notices and offered her input as to tailoring them to clearly and effectively notify the Settlement Class Members of their rights under the Settlement.

DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL - 10 -

48. The $500 per year cap on the amounts Small Business Users can receive in reimbursements impacts, if any, only those receiving the highest level of small business services from Yahoo—described as Merchant Solutions—and includes a suite of offerings far above and beyond email services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed October 22, 2018 in Tampa, Florida.

By: /s/ *John A. Yanchunis*
John A. Yanchunis

DECLARATION OF JOHN YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

- 11 -