UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: YAHOO! INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Case No. 16-MD-02752-LHK <br><br> **ORDER DENYING MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD** <br><br> Re: Dkt. No. 505 |

On August 5, 2020, Objector James McCain ("McCain") filed a motion for attorneys' fees and an incentive award. ECF No. 505 ("Mot. for Attys. Fees"). For the reasons outlined below, the Court DENIES McCain's motion for attorneys' fees and incentive award.

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012). Objectors must show that they increased the fund or "substantially enhanced the benefits to the class" under the settlement in order to receive an award of attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). Objectors who "do not add any new legal argument or expertise, and do not participate constructively in the litigation" are generally not entitled to attorneys' fees. *Rodriguez*, 688 F.3d at 659.

McCain seeks an attorneys' fee award of $260,000 and an incentive award of $2,500. Mot. for Attys. Fees at 2. McCain contends that these awards are appropriate because McCain "benefitted the class by $7.2 million" when the Court reduced Plaintiffs' attorneys' fee award from the requested $30 million to roughly $22.7 million. *Id.* at 6. McCain makes three arguments in support of this claim. First, McCain argues that McCain drew the Court's attention to the low per capita recovery of class members in the instant case. Second, McCain claims that McCain "exposed Professor Miller's opinions in his declaration as unreliable." Third, McCain asserts that McCain clarified the size of the *Equifax* attorneys' fee award relative to the settlement. *Id.* at 4. The Court considers these arguments in turn.

As to the first argument, McCain contends that "McCain was the only [objector] to provide a breakdown and analysis of per capita recovery in the two most comparable data breach settlements, *Anthem* and *Yahoo*." Mot. for Attys. Fees at 8. McCain contends that the relatively low per capita recovery in the instant case was critical to the Court's determination that the lodestar multiplier should be modest. *Id.* However, in July 2018, long before McCain filed his March 6, 2020 objection, one of Plaintiffs' experts, Ian Ratner, submitted a report in connection with Plaintiffs' motion for class certification. ECF No. 254-9. In that report, Ratner "performed research on settlements related to data breaches of web-based U.S. companies that took place between 2004 and 2018." *Id.* at 17. Ratner calculated the per capita recovery and other salient characteristics of each of these settlements in order to provide a metric for the value of the compromised data in the instant case. *Id.* Ratner specifically stated that "[o]f the available settlements, the Anthem and Vtech settlements related to PII that is [*sic*] the most comparable to the Yahoo Data Breaches and indicate a range of $1.02 to $1.46" is proper for class members' per capita recovery. *Id.* The per capita recovery in the instant case ultimately fell well below that range.

This Court presided over both the *Anthem* data breach settlement and the *Yahoo* data breach settlement, so the Court was aware of the comparative recovery in the two cases. However, it was Ratner's analysis that drew the Court's attention to the comparative per capita

2

United States District Court
Northern District of California

recovery in the two cases.

It is true that McCain eventually applied Ratner's calculation to the *Equifax* settlement, which postdated Ratner's report, but that work was essentially duplicative of the work already performed by Ratner. *See Rodriguez*, 688 F.3d at 659 (explaining that attorneys' fees need not be awarded for work that is "duplicative"). Indeed, Ratner himself specifically noted that "settlements continue to occur," and that Ratner's analysis could be updated to include more recent data breach settlements. ECF No. 254-9 at 18. McCain was plainly aware of Ratner's report because McCain specifically cited that report in the course of arguing against Plaintiffs' class damages estimate. *See* ECF No. 429 at 16 ("According to damages expert Ian Ratner, '[a]n individual's entire portfolio of PII has been valued as high as $1,200 per person.'"); *see also* ECF No. 477 at 5 (noting that Ratner's "discussion of $1 (or $1.02 and $1.46) was in relation to the value of other settlements per class member").

As to the second argument, McCain "was [] the only objector to identify contradictions in Professor Miller's opinions relative to his academic studies." Mot. for Attys. Fees at 9. McCain refers to four sentences in Professor Miller's declaration in which Professor Miller revisited data from a previous academic article and "specifically examine[d] fees in the range between $75 million and $150 million" in order to justify the attorneys' fee request from Plaintiffs. ECF No. 416-1 ¶ 37. In a paragraph at the end of the Court's attorneys' fees analysis, the Court deemed Professor Miller's new analysis to be less reliable than the analyses contained within Professor Miller's academic articles. ECF No. 497 at 76–77.

McCain's efforts to poke holes in Professor Miller's declaration did not increase the settlement fund or provide a substantial benefit to the class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 647 (S.D. Cal. 2011), *aff'd in part*, 473 Fed. Appx. 716 (9th Cir. 2012) (noting that an objector's benefit must be "actual and concrete not conceptual or doctrinal"). The Court's brief discussion of Professor Miller's declaration in the context of a percentage-of-recovery cross-check found the declaration unreliable for reasons that McCain did not identify. The Court noted that Professor Miller's new analysis accounted "for fewer than half of the cases in the decile analyzed"

3

in Professor Miller's previous academic study. ECF No. 497 at 76. The Court explained that "the $117.5 million Settlement Fund does not actually sit at the center of the new range," and instead sat "closer to the top, which would likely skew the percentage-of-recovery upward." *Id.* at 77. The Court noted that Professor Miller failed to identify the number of Ninth Circuit cases that were captured by the new range. *Id.* None of these arguments are found in McCain's objection. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-CV-05634 CRB, 2015 WL 4776946, at *1 n.1 (N.D. Cal. Aug. 13, 2015) (explaining that courts "generally do not award objectors attorneys' fees where the 'court did not rely on the Objectors' arguments in issuing its decision'").

As to the third argument, McCain simply asserts that McCain "clarified that the Court awarded 20.3% of $380.5 million, not 25% of that amount" as attorneys' fees in *Equifax*. Mot. for Attys. Fees at 12. The Ninth Circuit has not yet ruled on the question of whether objectors may be entitled to attorneys' fees when they raise issues that the Court would have considered even in the absence of an objection. McCain nonetheless cites two district courts that opined that attorneys' fees "may sometimes be appropriate to award fees where an objector advances a point not previously made by other parties or objectors even if the Court would have *sua sponte* reached the same conclusion." *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2014 WL 806072, at *2 (N.D. Cal. Feb. 27, 2014), *aff'd sub nom. Fraley v. Batman*, 638 Fed. Appx. 594 (9th Cir. 2016); *see also Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 4581926, at *1–3 (N.D. Cal. Sept. 13, 2017) ("In this case, the Court's own review would likely have resulted in a fee award to class counsel that was lower than the amount sought. The Objectors could not have been certain of this, however, much less of the specific issues that would weigh with the Court."). Even under the reasoning of these courts, the instant case does not present a situation in which attorneys' fees are appropriate. The fact that the *Equifax* court awarded 20.3% of the recovery in attorneys' fees is repeated constantly throughout the final approval order in that case, which Plaintiffs specifically cited in their motion for final approval. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *31 (N.D. Ga.

4

Mar. 17, 2020) ("The $77.5 million requested fee is 20.36% of the $380.5 million minimum settlement fund."). The Court would have learned this information with or without McCain's objection, which McCain plainly knew.

Moreover, McCain failed to identify two significant facts about the *Equifax* settlement on which the Court relied. First, because up to an additional $125 million was available for consumer out-of-pocket claims, "the *Equifax* court noted that the attorneys' fees, depending on the total amount of consumer out-of-pocket claims, could constitute 15.3% of the total settlement fund." ECF No. 497 at 75. Second, "the *Equifax* consumer settlement was separate from a pending settlement with financial institutions, which contemplates an additional payment of $5.5 million to the financial institutions." *Id.* at 59. The Court also paid no heed to the fact that Professor Miller used the 25% figure instead of the 20% figure in assessing Professor Miller's declaration. *Id.* at 76–77.

The Court previously noted that McCain shifted positions on Plaintiffs' attorneys' fees from McCain's March 6, 2020 objection to McCain's June 29, 2020 objection. ECF No. 497 at 79 ("McCain provides no explanation for this shift in position."). McCain now contends that McCain's position never shifted. Mot. for Attys. Fees at 12–13. However, in McCain's March 6, 2020 objection, McCain declared that 16.5% of the settlement fund would be a "reasonable fee," but concluded that Plaintiffs' attorneys' fees "should be *limited* to 16.5% - 19.9% of the $117.5 million fund." ECF No. 429 at 20 (emphasis added). In McCain's June 29, 2020 objection, McCain "urge[d] the Court to *limit* class counsel to 16.5%." ECF No. 477 at 4 (emphasis added). A recommendation to limit fees to 16.5%-19.9% of the $117.5 million fund to a recommendation to limit fees to 16.5% of the $117.5 million fund is a shift.

Finally, the Court overruled all of McCain's objections, most of which did not concern Plaintiffs' attorneys' fees at all. ECF No. 497 at 7–11, 78–80. In sum, the Court has closely scrutinized McCain's request and concludes that McCain did not increase the fund or "substantially enhance[] the benefits to the class." *Vizcaino*, 290 F.3d at 1052. McCain is therefore not entitled to attorneys' fees. Further, because McCain did not increase the fund or

5

Case No. 16-MD-02752-LHK
ORDER DENYING MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD

substantially enhance the benefits to the class, McCain is not entitled to an incentive award. *See, e.g.*, *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-01811-YGR, 2019 WL 5536333, at *1 (N.D. Cal. Oct. 25, 2019) (providing incentive award to objector "in recognition of the benefits her efforts have conferred upon the class"); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1334 (D. Nev. 2014) (providing incentive award because "objections did contribute to the value of the resulting settlement"). Accordingly, the Court DENIES McCain's motion for attorneys' fees and incentive award.

**IT IS SO ORDERED.**

Dated: August 11, 2020

_____
LUCY H. KOH
United States District Judge